THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| ANTHONY SWAIN; ALEN BLANCO; BAYARDO CRUZ; RONNIEL FLORES; WINFRED HILL; DEONDRE WILLIS; PETER BERNAL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL JUNIOR, in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department; MIAMI-DADE COUNTY, FLORIDA, <br><br> Defendants. | Case No. 1:20-cv-21457 <br><br> (Class Action) |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Anthony Swain, Alen Blanco, Bayardo Cruz, Ronniel Flores, Winfred Hill, Deondre Willis, and Peter Bernal, hereby move the Court to certify this action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

### INTRODUCTION

This case is about Defendants' failure to act to protect the lives of people jailed in Miami's Metro West Detention Center ("Metro West") from novel coronavirus and its resulting disease, COVID-19. Defendants have failed to respond to the urgent threat posed to people confined in the jail by this growing pandemic, making it impossible for these individuals to observe the precautionary steps necessary to keep themselves safe, such as social distancing, increased personal hygiene, sanitizing one's environment, access to testing, and wearing protective clothing.

1

Defendants' disregard of the known risks of illness and death exposes jail detainees to a highly fatal, infectious disease in violation of their rights under the Eighth and Fourteenth Amendments. Named Plaintiffs challenge these unconstitutional conditions and now move for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2). Named Plaintiffs also move for appointment of the undersigned as class counsel under Rule 23(g).

## CLASS DEFINITION

This class action seeks to require Defendants to implement procedures that provide reasonable medical care for Plaintiffs and keep them reasonably safe from contracting communicable disease while in custody. But some people are so vulnerable to COVID-19 that no procedures could be implemented fast enough to protect them; these people must be released, and therefore seek a writ of habeas corpus.

Plaintiffs, therefore, seek to certify one class with one subclass as follows:

- The Class ("Metro West Class") is defined as: "All current and future persons detained at Metro West during the course of the COVID-19 pandemic."

- The Subclass ("Medically-Vulnerable Subclass") is defined as: "All current and future persons held at Metro West over the age of fifty, as well as all current and future persons held at Metro West of any age who experience an underlying medical condition that places them at particular risk of serious illness or death from COVID-19, including but not limited to (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g. bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) epilepsy;

(f) hypertension; (g) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (h) blood disorders (including sickle cell disease); (i) inherited metabolic disorders; (j) history of stroke; (k) a developmental disability; (l) a current or recent (within the last two weeks) pregnancy; and/or (m) any other condition identified either now or in the future as being a particular risk for severe illness and/or death caused by COVID-19."

## MEMORANDUM OF LAW

Plaintiffs' suit for injunctive relief under the Fourteenth Amendment, and the Medically Vulnerable Subclass's petition for habeas corpus, arise from Defendants' failure to protect them from the severe risk of death or serious physical harm. Those risks affect each Class and Subclass member identically. This Court should, therefore, certify the Metro West Class and the Medically-Vulnerable Subclass.

The claims of the class and subclass are ideally suited to proceed as a class action under Federal Rule of Civil Procedure 23(b)(2) and as an analogous class habeas proceeding. *See, e.g.* *Ibrahim v. Acosta*, 326 F.R.D. 696, 699 (S.D. Fla. 2018) (certifying class of plaintiffs seeking habeas relief). Rule 23(c)(5) further allows for a class to be divided into subclasses, where the subclasses are treated as a class under Rule 23. Defendants are subjecting Named Plaintiffs and putative Class and Subclass members to the same injury: confinement in conditions that they know present a high risk of infection of a deadly disease in violation of Class members' rights under the Eighth and Fourteenth Amendments. The Named Plaintiffs and the proposed Class and Subclass meet Rule 23(a)'s prerequisites for class certification: joinder of all proposed class members in this numerous and transient class is impracticable; the questions of law and fact necessary for

3

resolution of this claim are common to all members of the proposed class; the Named Plaintiffs' claims are typical of the class; and the Named Plaintiffs and their counsel are dedicated to vindicating the constitutional rights of the proposed class. Additionally, as Rule 23(b)(2) requires, Defendants' unconstitutional acts apply to every member of the Class and Subclass, such that the requested final declaratory and injunctive relief is appropriate for the class as a whole.

### I. The Requirements of Rule 23(a) Are Satisfied

Plaintiffs seeking class certification must meet four factors under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These class action prerequisites, known respectively as numerosity, commonality, typicality, and adequacy, are each met in this case.

#### a. Numerosity

The numerosity requirement of Rule 23(a) is satisfied where the number of potential plaintiffs is "so numerous that joinder of all members" of the class would be "impracticable." Fed. R. Civ. P. 23(a)(1). "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Boman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). Assessing impracticability requires a "common-sense approach which takes into account the objectives of judicial economy and access to the legal system." *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993).

There is no fixed size requirement to demonstrate numerosity, but "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citations

4

omitted); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed. 1992) for the proposition that a class of more than forty members "should raise a presumption that joinder is impracticable"). "A plaintiff need not show the precise number of members in the class," *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983), and "[e]stimates as to the size of the proposed class are sufficient for a class action to proceed," *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 666 (M.D. Fla. 2000). The Court may also "make common sense assumptions in order to find support for numerosity." *Evans*, 696 F.2d at 930. Finally, "where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Id.*

Joinder of the proposed members of the Metro West Class is impracticable. The Miami-Dade Corrections and Rehabilitation Department's Daily Jail Population Statistics show that on April 3, 2020, 1,820 people were detained in the jail, all of whom are members of the proposed Class. This number will likely increase as additional people are arrested in the future and detained in the jail. Because the proposed Class contains well over forty members, it satisfies the numerosity requirement.

Moreover, because the proposed Class includes future members, traditional joinder is not practicable. Future Class Members will suffer the same injury absent injunctive relief from Defendants' deliberate indifference to the unsafe conditions in the jail. Class relief targeting these unconstitutional conditions is therefore appropriate because, regardless of the size of the Class, traditional joinder is not practicable. *See Phillips v. Joint Legislative Comm. on Performance &*

*Expenditure Review of State of Miss.*, 637 F.2d 1014, 1022 (5th Cir. 1981)[1] ([T]he alleged class includes future and deterred applicants, necessarily unidentifiable. In such a case the requirement of Rule 23(a)(1) is clearly met, for 'joinder of unknown individuals is certainly impracticable.'") (citation omitted); Moore's Federal Practice—Civil § 23.22(f) ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future. Courts in these cases often find that joinder of separate suits would be impracticable because those who have not yet been injured, or who do not know that they have been injured, are unlikely to join a lawsuit."); Newberg on Class Actions § 25:4 (4th ed.) ("Even a small class of fewer than 10 actual members may be upheld if an indeterminate number of individuals are likely to become class members in the future or if the identity or location of many class members is unknown for good cause."); *see also Kilgo*, 789 F.2d at 878 (finding impracticability of non-class joinder for a class including future members, who necessarily could not yet be identified). In such cases, the numerosity requirement is satisfied because the putative class seeks declaratory and injunctive relief against an ongoing policy, a resolution will affect numerous people in the future, and the composition of the class is fluid and unknown. *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) (granting liberal construction of numerosity prong in a case seeking injunctive relief on behalf of future class members because "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)."); *see also, e.g.*, *Walker v. City of Calhoun*, No. 4:15-cv-170-HLM, 2016 WL 361580, at *6 (N.D. Ga. Jan. 28, 2016) ("[T]here is a future stream of class members who would suffer the same injury absent injunctive relief. Under those

---

[1] The Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

circumstances, the Court agrees with Plaintiff that joinder is impracticable.").

The proposed subclass also easily meets the numerosity threshold. The Medically-Vulnerable Subclass is comprised of people who are medically vulnerable to COVID-19 because of underlying medical conditions—including people who live with diabetes and asthma, among other conditions. People of any age who suffer from certain underlying medical conditions, including lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, epilepsy, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorder (including sickle cell disease), inherited metabolic disorders, stroke, developmental delay, and asthma, are at elevated risk as well. The WHO-China Joint Mission Report indicates that the mortality rate from COVID-19 for those with cardiovascular disease was 13.2%, 9.2% for diabetes, 8.4% for hypertension, 8.0% for chronic respiratory disease, and 7.6% for cancer.[2]

According to one study, "asthma prevalence is 30%–60% higher among individuals with a history of incarceration as compared with the general population."[3] One study estimates that up to 15% of people who are in custody have asthma, 10% of people in custody live with a heart condition that requires medical care, 10% live with diabetes, and 30% have hypertension.[4] Based on these estimates and assuming some overlap in these diagnoses, a fair estimate of the number of people who live with one or more of these medical vulnerabilities exceeds one thousand.

---

[2] Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), World Health Organization (Feb. 28, 2020), at 12, *available at* https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (last visited Apr. 1, 2020).

[3] Elizabth M. Vigilanto et al., *Mass Incarceration and Pulmonary Health: Guidance for Clinicians*, 15 Ann. Am. Thoracic Soc. 409, 409 (2019).

[4] Laura M. Marushack et al., *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Dept. of Justice (2014).

The number of potential and future class members, the difficulty in immediately identifying these potential class members, and the addition of future, unknown class members make joinder impracticable. Additionally, judicial economy will be significantly better served by resolving the central factual and legal issues concerning the unconstitutional conditions of confinement, as opposed to requiring multiple proceedings as Defendants continue to detain individuals in unsafe conditions. Rule 23(a)(1) is thus satisfied.

### b. Commonality

This case also satisfies Rule 23(a)(2)'s requirement that "there are questions of law or fact common to the class." To meet the commonality requirement, there must "be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982) (quotations removed)). The threshold for satisfying the commonality requirement is "not high." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Traditionally, the Rule asks whether the disputed questions are capable of class-wide proof or resolution. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Claims need not be identical to satisfy this requirement, and variations within the class are permissible. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000). By their nature, civil rights cases often easily demonstrate commonality because the defendants' actions are "central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (citing 7A Charles A Wright, et al., Fed. Prac. & Proc. § 1763 at 219 (1986)).

Although there need only be common issues of law *or* fact under Rule 23(a), this case presents numerous issues of both law and fact that are common to the Class and Subclass. Among the most important common questions of fact are:

- what measures Defendants implemented in Metro West in response to the COVID-19 crisis;

- whether the conditions in Metro West comply with the Centers for Disease Control and Prevention's guidelines for preventing the spread of COVID-19;

- whether Defendants' practices during the COVID-19 pandemic exposed people jailed at Metro West to a substantial risk of serious harm;

- whether Defendants knew of and disregarded a substantial risk of serious harm to the safety and health of the class; and

- whether COVID-19 presents a risk of harm so severe to some people that the only constitutionally permissible way to protect them is to release them from custody immediately.

Among the most important common questions of law are:

- whether Defendants are liable under the Eighth and Fourteenth Amendments for their deliberate indifference to conditions of confinement that are very likely to cause serious illness and needless suffering.

This case exemplifies the Supreme Court's explanation of commonality in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The Court clarified that it is not just the existence of hypothetical common questions that justify class treatment. *Id.* at 349–50. Rather, there must be common answers that resolve the factual or legal claims presented by the plaintiffs. *Id.* at 350. In this case, the answers to the fundamental common questions of fact and law listed above are

dispositive in determining Defendants' liability to all Class and Subclass members. If the conditions in Metro West expose people jailed therein to a substantial risk of serious harm, then this litigation turns on whether Defendants knew of and disregarded such a risk.

Although there may be factual variations in some details of Class and Subclass Members' cases, such as whether they are pretrial or sentenced, these differences are immaterial to the merits and "will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003); *see also Dukes*, 564 U.S. at 350 (commonality satisfied if one can resolve an issue central to Plaintiffs' claims "in one stroke."). The claims raised by the Class Members are independent of issues like specific arrest charges; instead, the claims are based solely on the conditions to which each and every person detained in the jail are subjected.

   c. **Typicality**

Because the Named Plaintiffs' claims are identical to the claims of the Class and Subclass Members, Rule 23(a)(3)'s "typicality" requirement is met. Under Rule 23(a)(3), "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 431 U.S. 395, 403 (1974)). "Typicality, however, does not require identical claims or defenses." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Rather, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Prado-Steiman*, 221 F.3d at 1279. "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg*, 741 F.2d at 1337; *see also* Moore's Federal Practice - Civil

§ 23.24 ("Because the claims need only share the same essential characteristics and need not be identical, courts have concluded that the typicality requirement is not highly demanding.").

Here, the Named Plaintiffs' legal claims are the same as the legal claims of the other members of the proposed Class and Subclass. The Named Plaintiffs and Class Members are all injured in the same way: Defendants are keeping them in conditions of confinement that put them at substantial risk of serious harm. For the Subclass, each person claims that she must be released because her health is at imminent and immediate risk from the same virus and same policy failures as each other person in the Subclass. Thus, the ongoing and future injury of the Class and the Class representatives arise from the same policy and practice. *See* Newberg on Class Actions § 23:4 (4th ed.) ("[T]he typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members."). The claims of the Named Plaintiffs also rely on the same legal theories as the claims of all other Class members concerning whether Defendants' deliberate indifference to the risk of serious harm is unconstitutional. *See Auslander*, 244 F.3d at 811 ("The typicality requirement may be satisfied despite substantial factual differences . . . when there is a 'strong similarity of legal theories.'" (citation omitted). The proof concerning whether Defendants have acted with deliberate indifference in the face of the COVID-19 pandemic and the legal argument about whether this inaction is unlawful are critical for each Class member in this case to establish the liability of Defendants.

Thus, if the Named Plaintiffs succeed in proving that Defendants' deliberate indifference to the risk of severe harm as alleged in the Complaint is unlawful, then that ruling will necessarily benefit every other member of the Class. That is the essence of Rule 23(a)'s typicality requirement.

    **d.    Adequacy**

The Class representatives will "fairly and adequately protect the interests of the class." Fed.

R. Civ. P. 23(a)(4). Adequacy means "that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). The adequacy analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted).

Regarding the first inquiry, the Named Plaintiffs are adequate representatives of the Class because their interests in the vindication of the legal claims that they raise are completely aligned with, and are not antagonistic to, the interests of the other Class Members. The Named Plaintiffs, like other Class Members, have a strong interest in no longer being detained in unsafe conditions. The Named Plaintiffs who represent the Medically-Vulnerable Subclass share the Subclass's interest in release because of the particular danger that the virus presents for them. There are no known conflicts of interest among Members of the proposed Class and Subclass, all of whom have a similar interest in vindicating their constitutional rights in the face of their unlawful treatment by Defendants. Moreover, the declaratory and injunctive relief sought by Named Plaintiffs will benefit the entire class equally.

Regarding the second inquiry, the Named Plaintiffs also meet the requirement that they will adequately prosecute the action. They are represented in this case by highly qualified and experienced civil rights attorneys who are able and willing to conduct this litigation on behalf of the class. Plaintiffs' counsel from Community Justice Project, GST, Advancement Project, and Civil Rights Corps collectively have extensive experience litigating complex class action cases and civil rights cases. As discussed in greater detail below, *infra* Part III, Plaintiffs' counsel are

qualified and experienced counsel with a history of zealous advocacy on behalf of their clients, and Rule 23(a)(4)'s adequacy requirement is thus met.

## II. The Requirements of Rule 23(b)(2) Are Met.

In addition to satisfying the requirements of Rule 23(a), the proposed class satisfies Rule 23(b)(2). A putative class action must meet the requirements of either Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "'Generally applicable' means the party opposing the class has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity directed to all members." *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 541 (S.D. Fla. 2015) (quotations and alterations omitted).

As the Supreme Court has recognized, "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases in which class certification is proper under Rule 23(b)(2). *Amchem*, 521 U.S. at 614; *see also Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1152 (11th Cir. 1983) ("Civil rights class actions . . . are generally treated under subsection (b)(2) of Rule 23."); *Newberg on Class Actions*, *supra*, § 1:3 ("Rule 23(b)(2) . . . . is typically employed in civil rights cases and other actions not primarily seeking money damages. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit."). This is because "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes,* 564 U.S. at 360 (citation

omitted). Thus, "Rule 23(b)(2) has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities." *Braggs v. Dunn*, 317 F.R.D. 634, 667 (M.D. Ala. 2016) (citation omitted).

This case falls squarely within this requirement of the appropriateness of declaratory or injunctive relief to the class as a whole, because Defendants have acted with deliberate indifference to the health and safety of all members of the Class by failing to take the necessary action to avoid an outbreak of COVID-19 in the jail. The only way to remedy the injury to the Class is to enjoin Defendants' conduct as to all of the class members.

The Class and Subclass therefore seek declaratory and injunctive relief to require Defendants to take the necessary steps to prevent an outbreak of COVID-19 in the jail. The relief sought—a declaration that Defendants violate Class Members' constitutional rights by failing to adequately safeguard their health and safety in the midst of a potential outbreak of a deadly infectious disease and an injunction requiring them to release the Subclass and take the steps necessary to prevent such an outbreak—would apply equally to the entire Class and Subclass. *See Holmes*, 706 F.2d at 1155 (Rule 23(b)(2) applies to "claims resting on the same grounds and applying more or less equally to all members of the class."). Therefore, certification under Rule 23(b)(2) is appropriate.

### III.    Undersigned Counsel Should Be Appointed Class Counsel Under Rule 23(g).

Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In determining whether this requirement is met, courts must consider: (1) "the work counsel has done in identifying or investigating potential claims in the actions;" (2) "counsel's experience in handling class actions, other complex litigation,

and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Undersigned Counsel satisfy these four requirements. The Plaintiffs and proposed Class are represented by attorneys from GST LLP, Community Justice Project, Dream Defenders, Advancement Project, and Civil Rights Corps, who have experience litigating complex civil rights matters and class action lawsuits in federal court and extensive knowledge of both the conditions in the jail and the relevant constitutional law. *See* Declaration of Quinn Smith (Ex. 1), Declaration of Maya Ragsdale (Ex. 2), Declaration of Katherine Hubbard (Ex. 3), Declaration of Thomas Harvey (Ex. 4), Declaration of Tiffany Yang (Ex. 5), Declaration of Meena Jagannath (Ex. 6). Class Counsel have conducted an extensive investigation into the conditions in Metro West and the sanitation and social distancing requirements that are necessary to prevent an outbreak of COVID-19. In addition, Class counsel has sufficient financial and human resources to litigate this matter. In sum, Plaintiffs' attorneys are experienced advocates; possess "sufficient vigor" along with sufficient resources, to adequately represent the Class and prosecute this action; and are appropriate counsel for the matter. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (citations omitted).

## CONCLUSION

For the reasons stated above, the Named Plaintiffs respectfully asks this Court to certify the Metro West Class and Medically-Vulnerable Subclass described in this Motion.

Dated: April 5, 2020.                    Respectfully submitted,

*/s/ Quinn Smith*
R. Quinn Smith, Fla. Bar No. 59523
e-mail: quinn.smith@gstllp.com
Katherine Alena Sanoja, Fla. Bar No. 99137
e-mail: katherine.sanoja@gstllp.com
**GST LLP**
1111 Brickell Avenue, Suite 2715
Miami, Florida 33131
Telephone: (305) 856-7723

*/s/ Meena Jagannath*
Meena Jagannath, Fla. Bar No. 102684
meena@communityjusticeproject.com
**COMMUNITY JUSTICE PROJECT**
3000 Biscayne Blvd. Ste 106
Miami, Florida 33137
Telephone: (305) 907-7697

*/s/ Maya Ragsdale*
Maya Ragsdale, Fla. Bar No.: 1015395
maya@dreamdefenders.org
**DREAM DEFENDERS**
6161 NW 9th Ave.
Miami, Florida 33127
Tel: 786-309-2217

*/s/ Alexandria Twinem*
Alexandria Twinem, D.C. Bar No. 1644851
*Pro Hac Vice Admission Pending*
alexandria@civilrightscorps.org
Katherine Hubbard, DC Bar No. 1500503
*Pro Hac Vice Admission Pending*
katherine@civilrightscorps.org
**CIVIL RIGHTS CORPS**
1601 Connecticut Ave. NW, Ste. 800
Washington, DC 2009
Telephone: (202) 894-6126

        */s/ Tiffany Yang*
Tiffany Yang, DC Bar. No. 230836
tyang@advancementproject.org
*Pro Hac Vice Admission Pending*
Thomas B. Harvey, MO Bar. No. 61734
*Pro Hac Vice Admission Pending*
tharvey@advacementproject.org
**ADVANCEMENT PROJECT**
1220 L Street NW, Ste 850
Washington, DC 20005
Telephone: (202) 728-9557

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2020 I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Florida, using the electronic case filing system of the Court. This Motion for Class Certification will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Katherine A. Sanoja*
Katherine A. Sanoja, Fla. Bar. 99137
