**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 20-cv-21457 Williams**

Swain et al.

    Plaintiffs,

vs.

Junior et al.

    Defendants.

_____/

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF**
**HABEAS RELIEF FOR NAMED PLAINTIFFS**

Currently, hundreds of medically vulnerable individuals sit detained pretrial in Metro West Detention Center as the COVID-19 disease sweeps across Miami and its jails.[1] Among those people at Metro West are the seven named plaintiffs in this case: Anthony Swain, Alen Blanco, Bayardo Cruz, Ronniel Flores, Winfred Hill, Deondre Willis, and Peter Bernal. These men suffer from chronic conditions that worsen the effects of COVID-19, including cystic myelomalacia, asthma, chronic bronchitis, diabetes, epilepsy, and HIV. For them, exposure to the novel coronavirus does not just mean contracting a painful, weeks-long disease. It also means they may suffer permanent organ damage, and ultimately, that each faces an approximately one in five chance of succumbing to the disease and dying from complications. These men are entitled to release under 28 U.S.C. § 2241 to prevent exposure to this fatal disease.

---

[1] As of April 10, 2020, Miami Dade Corrections & Rehabilitation had confirmed that one inmate and at least forty employees have tested positive for COVID-19. The jails in which these people work or are detained, as well as how many others they may have exposed to the virus, have not been disclosed. *See* Tweet, @MDCCorrections (Apr. 10, 2020 7:58 p.m.) ("As of 4/10, #MDCR can confirm a total of 291 employees have been tested; 40 have tested positive, 155 have tested negative and 96 are pending results."); Amanda Batchelor & Christina Vazquez, *Miami-Dade inmate tests positive for coronavirus; state attorney says violent offenders won't be released* (Apr. 10, 2020), https://www.local10.com/news/local/2020/04/10/miami-dade-inmate-tests-positive-for-coronavirus-state-attorney-says-violent-offenders-wont-be-released/.

1

**I.      Release under 28 U.S.C. § 2241 is appropriate.**

An individual detained pretrial who seeks to challenge her confinement does so under 28 U.S.C. § 2241. *See, e.g.*, *Medberry v. Crosby*, 351 F.3d 1049, 1060 (11th Cir. 2003). A petition under section 2241 challenges "the fact," the "duration," or "the execution" of an individual's detention, and the remedy is release. *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000); *see also Gomez v. United States*, 899 F.2d 1124, 1126-27 (11th Cir. 1990). The Plaintiffs do exactly that: they challenge the continued fact of their detention during the COVID-19 pandemic because Defendants cannot make Metro West safe enough for them so as not to expose them to an unreasonable risk to their lives. Under these conditions, immediate release is the appropriate remedy. And federal courts have agreed, granting habeas relief under section 2241 on the basis. *See, e.g.*, Order, *Rafael L.O. v. Tsoukaris*, No. 20-cv-3481 (D.N.J. Apr. 9, 2020), DE 24; Order, *Hope v. Doll*, No. 20-cv-562 (M.D. Pa. Apr. 7, 2020), DE 11; Order, *Malam v. Adducci*, No. 20-cv-10829 (E.D. Mich. Apr. 6, 2020), DE 23; Order, *Fracisco Hernandez v. Wolf*, No. 20-cv-617 (C.D. Cal. Apr. 1, 2020), DE 17; Order, *Avendano Hernandez v. Decker*, 2020 WL 1547459 (S.D.N.Y. Mar. 31, 2020); Order, *Fraihat v. Wolf*, No. 20-cv-590 (C.D. Cal. Mar. 31, 2020); Order, *Thakker v. Doll*, No. 20-cv-480 (M.D. Pa. Mar. 31, 2020), DE 47; *Coronel v. Decker*, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020); Order, *Basank v. Decker*, No. 20-cv-2518 (S.D.N.Y. Mar. 26, 2020), DE 11; Order, *Calderon Jimenez v. Wolf*, No. 18-cv-10225 (D. Mass. Mar. 26, 2020), DE 507-1; Order, *Ronal Umana Jovel v. Decker*, No. 12-cv-308 (S.D.N.Y. Mar. 26, 2020), DE 27.

The Supreme Court has explicitly left open the question whether habeas may be appropriate as a means to challenge conditions of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). And the Courts of Appeals are split on that question. Under Eleventh Circuit law, petitioners may proceed via habeas corpus when they seek to challenge the fact or duration of their confinement. *Gomez*, 899 F.2d at 1126-27. Where a prisoner's constitutional challenge "goes directly to the constitutionality of

his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration," the prisoner must proceed under habeas. *Preiser*, 411 U.S. at 489; *see also Edwards v. Balisok*, 520 U.S. 641 (1997). By contrast, where a prisoner challenges the conditions under which he is confined, or some other aspect of the process by which he was confined, he may proceed under 42 U.S.C. § 1983. "For most purposes, the line between the domain of collateral review and that of § 1983 is simple." *Moran v. Sondalle*, 218 F.3d 647, 650 (7th Cir. 2000). And in such simple situations, courts have occasionally characterized claims for deprivations of adequate medical care under the Eighth Amendment as ineligible for habeas treatment. See *Gomez*, 899 F.2d at 1126-27.

But this is not a simple situation: here, Petitioners' medical condition renders the otherwise "appropriate Eleventh Circuit relief . . . [of an order] requir[ing] correction of any condition causing cruel and unusual punishment" impossible. *Id.* at 1126. Where, as here, Petitioners' medical condition renders confining them in constitutional conditions impossible in the extreme circumstances of a local and global pandemic, they may ask for nothing other than release. Therefore their claims would necessarily result in immediate release, which means they may – and, indeed, must – seek a writ of habeas corpus.

The Eleventh Circuit's precedent has acknowledged that habeas relief may be appropriate in such a case. In *Gomez*, the Eleventh Circuit considered the argument that a petitioner suffering from AIDS was entitled to habeas relief because the prison in which he was detained could not provide him adequate treatment. *Id.* at 1125. The Court stated that the relevant question for habeas relief was "not whether [the prison] can provide adequate treatment under court order, but whether the Bureau of Prisons can give adequate medical treatment any place in its system." *Id.* at 1126. Concluding that the BOP could provide adequate treatment at a "federal facility at Springfield, Missouri," the Court concluded that the most relief to which the petitioner was entitled was transfer to that facility or "a mandatory injunction to bring his treatment up to constitutional standards." *Id.* at 1127. The implication is clear: had *no* facility been able to treat the *Gomez* petitioner as constitutionally required, he would have been entitled to habeas relief. The Supreme Court has

3

also suggested the same: in *Nelson v. Campbell*, 541 U.S. 637, 644-45 (2004), the Court suggested that an individual on death row would likely have a remedy in habeas if he alleged that there was *no* set of constitutional conditions under which he could be executed rather than challenging only the one specific condition that applied to him.

The named Plaintiffs-Petitioners face just such a situation: there is no way to keep them safe in a congregate environment in the middle of an unprecedented pandemic. As medical experts have concluded, the *only* adequate way to protect them from illness is release. Rottnek Decl. ¶¶ 30, 38; Greer Decl. ¶ 38. This has been the basis for other courts to grant habeas relief in the context of COVID. *Malam* Order at 8-9 (concluding that Sixth Circuit precedent precluding habeas relief for conditions cases was inapplicable where petitioner "seeks immediate release from confinement as a result of there being no conditions of confinement sufficient to prevent irreparable constitutional injury" from COVID-19); *Hernandez* Order at 12 (concluding that petitioner challenged the validity of his confinement during COVID pandemic); *Fraihat* Order at 11 ("Fraihat has not been protected. He is not kept at least 6 feet apart from others at all times. He has been put into a situation where he has been forced to touch surfaces touched by other detainees, such as with common sinks, toilets, and showers."); *Thakker* Order at 8 ("Public health officials now acknowledge that there is little that can be done to stop the spread of COVID-19 absent effective quarantines and social distancing procedures. But Petitioners are unable to keep socially distant while detained by ICE and cannot keep the detention facilities sufficiently clean to combat the spread of the virus."). It cannot be that the Eleventh Circuit, in making a general statement about how conditions cases should *typically* be litigated, intended to create a rule that would deny a remedy to the detainees facing the most immediate and serious risks to safety that could *only* be remedied by their immediate release. This Court should not implicitly read such a counterintuitive

standard into the Eleventh Circuit's precedents, particularly when it is in tension with the Supreme Court's decisions in *Preiser* and *Nelson*.[2]

Put another way, Petitioners' claim is not actually a conditions claim. Instead, Petitioners argue that there is "no set of conditions [that] would be sufficient to protect [their] constitutional rights," and as a result, their claims "should be construed as challenging the fact, not conditions, of [their] confinement." *Malam* Order at 8 (collecting cases, including *Nelson*, 541 U.S. at 644-45, and *Preiser*, 411 U.S. 475). Petitioners' medical experts agree. Rottnek Decl. ¶¶ 30, 38; Greer Decl. ¶ 38. Such a claim cannot be said to challenge conditions of confinement because it alleges that release, even if temporary, is the only way to remedy the violation.

And the Eleventh Circuit's case law on this question is inapplicable for another reason. Unlike the petitioner in *Gomez*, 899 F.2d at 1126, Petitioners are detained pretrial with no imposed sentence. As a result, there is a much lower government interest in detaining them and thus a lower threshold for granting release to vindicate their constitutional rights: there is no government interest in detaining Petitioners as punishment for a crime. "Typically, conditions of confinement claims are raised by criminal detainees while serving their criminal sentences. Consequently, immediate release based on the conditions of confinement would not be appropriate, as that would circumvent their criminal sentences." *Hernandez* Order at 12. But where, as here, the habeas

---

[2] If the Court is disinclined to grant habeas relief, it should allow Plaintiffs-Petitioners to amend their complaint to include a claim based on the same facts and constitutional amendments, and seeking an injunction pursuant to 18 U.S.C. § 1983 requiring the Defendants to transfer them to home confinement. The Court should consider the claim on an expedited basis. Such a transfer would place the Plaintiffs-Petitioners in the only set of conditions that offers a realistic possibility of staying safe from the coronavirus. The Court would have jurisdiction to grant this relief because such an order would not be a "prisoner release order" under the Prison Litigation Reform Act. *See Reaves v. Dep't of Correction*, 404 F. Supp. 3d 520, 522 (D. Mass. 2019); *Reaves v. Dep't of Correction*, 392 F. Supp. 3d 195, 210 (D. Mass. 2019); *Plata v. Brown*, 2013 WL 3200587, *8-*9 (N.D. Cal. June 24, 2013); Opinion & Order at 10-12, *Doe v. Younger*, Civ. Action No. 91-187, (E.D. Ky. Sept. 4, 1996), https://www.clearinghouse.net/chDocs/public/JI-KY-0002-0010.pdf.

petitioners are presumptively innocent and have not had a sentence imposed, the *only* government interest in detaining them pretrial would be to ensure their appearance or protect the public from a specific security risk. *See Schultz v. State*, 330 F. Supp. 3d 1344, 1358 (N.D. Ala. 2018) ("Absent extenuating circumstances like flight risks or dangers to the community, the State may not incarcerate a defendant pretrial."); *United States v. Salerno*, 481 U.S. 739, 742, 750 (1987). These interests are insufficient to allow the government to detain people under incurable conditions that threaten permanent injury and death. Therefore, the Petitioners may appropriately "proceed by way of a *habeas* petition because he challenges the validity of his confinement and seeks his immediate release." *Hernandez* Order at 12.

## II.     The Court has the ability to deny release as to certain medically vulnerable people.

The Petitioners-Plaintiffs currently seek release on a temporary basis. In deciding whether to grant this emergency release, the Court follows the standard that governs preliminary relief: 1) the likelihood of success on the merits, 2) the risk of irreparable injury to the movant absent relief, 3) the harm to the defendant if emergency relief is granted, and 4) the public interest. *See Malam* Order at 20; *Fraihat* Order at 6; *Thakker* Order at 6; *Hernandez* Order at 7. The public interest includes the promotion of public safety. *See, e.g.*, *Burger King Corp. v. Duckrey*, 851 F. Supp. 2d 1325, 1331 (S.D. Fla. 2011); *Sun-Sentinel Co. v. City of Hollywood*, 274 F. Supp. 2d 1323, 1334 (S.D. Fla. 2003). As a result, this Court must determine whether the public's interest is best served by granting temporary release to the members of the Medically Vulnerable Subclass. If the Court concludes that it would be a significant risk to public safety to grant temporary release, and that that risk outweighs the remaining factors and the public's interest in avoiding an outbreak in the jail that would worsen the pandemic for the broader community, the Court would be entitled to deny the emergency relief sought.

**III.     Petitioners Plaintiffs have exhausted state remedies and/or additional exhaustion would be futile.**

A prisoner seeking emergency release based on an unprecedented and fast-moving viral pandemic does not have to exhaust remedies before seeking federal habeas relief under § 2241. Section 2241 contains no exhaustion requirement conceivably applicable to people in petitioners' emergency situation. Federal courts apply a judge-made exhaustion doctrine in § 2241 cases. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490 (1973). Unlike the statutory exhaustion requirement in § 2254, though, the judge-made exhaustion requirement for § 2241 petitions is prudential, flexible, and non-jurisdictional. *Santiago-Lugo v. Warden*, 785 F.3d 467, 474 (11th Cir. 2015). The Supreme Court has described the exhaustion doctrine in § 2241 cases as a "judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a '*swift* and imperative remedy in all cases of illegal restraint or confinement.'" *Braden*, 410 U.S. at 490 (emphasis added) (citation omitted). And the exhaustion requirement does not apply if "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Blevins v. Warden*, 2018 WL 8139119, at *2 (N.D. Fla. Oct. 17, 2018) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). In emergency situations, the exhaustion doctrine does not bar claims that could not be vindicated in state court quickly enough. *See, e.g.*, *Granberry v. Greer*, 481 U.S. 129, 134 (1987) (acknowledging that courts may dispense with exhaustion in "rare cases where exceptional circumstances of peculiar urgency are shown to exist" (quoting *Ex Parte Hawk*, 321 U.S. 114, 117 (1944)); 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 23.4[a][ii], pp. 1322-26 (7th ed. 2015) (collecting cases in which federal courts have consistently found state corrective process to be ineffective when "requiring exhaustion would cause irreparable damage

7

to the petitioner's federal rights," for reasons "including that undue delay in the state courts risks mooting the petitioner's federal rights before he reaches the federal courts").

Although exhaustion is not required in this context, the Petitioners-Plaintiffs have all attempted to exhaust their state remedies. Pursuant to Florida Rule of Criminal Procedure 3.131(d), a person detained pending trial may file a motion for reconsideration of the denial of bail or for the modification of bail. There is no appeal from this process. Instead, someone whose motion is rejected may either file a new motion or "institute habeas corpus proceedings seeking reduction of bail." Fla. R. Crim. P. 3.131(d)(3). The question that will be considered as part of the habeas proceedings is narrow: whether the trial court abused its discretion when deciding the bond amount in light of numerous factors.[3] Florida law considers a writ of habeas corpus a form of "extraordinary relief." *See, e.g.*, *Herndon v. State*, 796 So.2d 534 (Fla. 2001); Fla. R. App. Proc. 9.100.

The Petitioners have exhausted their claims in state court or, alternatively, exhaustion should be excused on the ground that it is futile. All of the named Petitioner-Plaintiffs except for one have moved at least once for reconsideration of bond and have been denied.[4] Mr. Cruz did not

---

[3] Factors include "the nature of the offense and the penalty for it, the character and strength of the evidence or probability of guilt, the probability of the accused appearing at trial, his accessibility to means of flight, his family ties and employment, the length and stability of his residence in the community, the prior record of the accused in responding to process, whether the accused was a fugitive from justice when arrested, whether the accused is under bond for appearance at trial in other cases, his respect for the law, the accused's character and reputation, and the state of his health." *Good v. Willie*, 382 So.2d 408, 410 (Fla. Ct. App. 1980); *see also* Fla. R. Crim. P. 3.131(b)(2).

[4] Mr. Blanco moved for a bond rehearing on March 16, 2020 and March 19, 2020 and was denied. *See* Declaration of Maya Ragsdale attached hereto (Ragsdale Decl.) at ¶¶ 1-18, Exs. A-I. Mr. Flores moved for bond rehearing on April 3, 2020 and was denied the same day. Ragsdale Decl. ¶¶ 27-28, Ex. N. Mr. Hill moved for release on his own recognizance on March 18, 2020. Ragsdale Decl. ¶¶ 31-34, Exs. P-Q. While the public docket does not reflect that it was denied, this appears to be an oversight in entering court proceedings. Mr. Hill has represented that his motion was denied, and he continues to be held at Metro West. Mr. Willis filed an emergency motion for

8

move for reconsideration because he must, pursuant to statute, be detained without bond.[5] No further action was required. In particular, Petitioners were not obligated to seek state habeas relief. To exhaust state remedies, a petitioner need only invoke "one complete round" of the "normal, simple, and established part[s] of the State's appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); he need not resort to "extraordinary procedures," *id.* What's more, for three of the Petitioners, the writ was statutorily unavailable. Because Mr. Cruz could not seek reconsideration, he was also prohibited from seeking the writ based on a denial of reconsideration. *See* Fla. R. Crim. P. 3.131(d)(3). And because Mr. Flores has an ICE hold, the state courts have no jurisdiction to order him released until the federal government lifts that hold. Likewise, the state appellate courts would be precluded from reconsidering bond because of his Nebbia "source of income" hold. And even for the remaining Petitioners, the narrow question on review was whether they were a danger or flight risk, not whether the conditions of their confinement were unconstitutional. As a result, the proceeding would not have satisfied the purpose of exhaustion – allowing state courts the ability to correct the constitutional error in the first instance.

Should this Court nevertheless conclude that state habeas writ was available, Petitioners should be excused from going through the potentially long and uncertain process of having bond

---

release on April 7, 2020, which has not yet been decided by the state court. Ragsdale Decl. ¶¶ 33-34, Ex. R. Mr. Bernal filed a motion to modify his bond on March 13, 2020 and was denied on March 17, 2020. Ragsdale Decl. ¶¶ 23-26, Exs. L-M. And Mr. Swain, who has been detained since 2016, has moved for bond rehearings three times, resulting in eight hearings, one granted motion for reduced bond in 2016, and two denials, most recently in January 2017. Ragsdale Decl. ¶¶ 29-30, Ex. O. In light of this drawn out process, the court's repeated denials, and the court's denial of emergency petitions filed by the other five Petitioner Plaintiffs, any further filings by Mr. Swain would have been futile.

[5] Mr. Cruz is designated as a Violent Offender of Special Concern because of his underlying charges for robbery and carjacking. *See* Fla. Stat. § 948.06(c)(6). Because he was arrested for allegedly driving without a valid driver's license while on probation for those underlying charges, he "shall remain in custody pending resolution of the probation . . . violation." *Id.* § 948.06(d). Mr. Cruz's hearing on that probation violation has been continued several times.

reconsidered in light of the pressing need for their release as COVID-19 moves through Miami and Metro West. Every day that they remain detained risks their very life. Under these conditions, exhaustion of the rarely-used habeas mechanism should be excused. *See, e.g.*, *United States v. Perez*, 17-cr-513-3 (S.D.N.Y. Apr. 1, 2020), DE 98 (excusing failure to exhaust administrative remedies before granting compassionate release due to emergency nature of COVID).

The habeas claims of Petitioners-Plaintiffs are therefore appropriately before this Court.

**IV.     This Court should release Petitioners-Plaintiffs while it considers the habeas claim.**

The federal district court "has inherent authority to release an inmate on bail or surety pending the court's decision on a petition for writ of habeas corpus." *Wilson v. Secretary*, 2016 WL 10891523, at *2 (M.D. Fla. Dec. 15, 2016) (citation omitted). This power has been well-recognized in the context of petitioners who have been convicted of crimes, *see, e.g.*, *Gomez*, 899 F.2d at 1125, and applies with all the more force to those who are detained pretrial and are presumptively innocent. Release pending a district court's ruling on habeas is appropriate where the petitioner "demonstrate[s] a likelihood of success on the merits of a substantial constitutional claim," and "extraordinary and exceptional circumstances must exist which make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought." *Id.* Here, both criteria are met. The COVID-19 pandemic constitutes an extraordinary circumstance: the United States has not seen anything like it. It is devastating every community in America and in particular is infecting and killing those who are incarcerated at a shocking and unprecedented rate.Accordingly, while this Court considers whether to grant the Petitioners-Plaintiffs release, it should order them to be temporarily released on bail.

For all of the above-stated reasons, the Court should grant temporary habeas relief to the Petitioners-Plaintiffs.

Dated: April 12, 2020					Respectfully submitted,

/s/ Katherine Hubbard
Alexandria Twinem, D.C. Bar No. 1644851
(Admitted Pro Hac Vice 4/6/2020)
alexandria@civilrightscorps.org
Katherine Hubbard, DC Bar No. 1500503
(Admitted Pro Hac Vice 4/6/2020)
katherine@civilrightscorps.org
Alec Karakatsanis
alec@civilrightscorps.org
(Pro Hac Vice Admission Pending)
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Ste. 800
Washington, DC 2009
Tel: (202) 894-6126

Maya Ragsdale, Fla. Bar No.: 1015395
maya@dreamdefenders.org
DREAM DEFENDERS
6161 NW 9thAve.
Miami, Florida 33127
Tel: 786-309-2217

R. Quinn Smith, Fla. Bar No. 59523
quinn.smith@gstllp.com
Katherine Alena Sanoja, Fla. Bar No. 99137
katherine.sanoja@gstllp.com
GST LLP
1111 Brickell Avenue, Suite 2715
Miami, Florida 33131
Tel: (305) 856-7723

Meena Jagannath, Fla. Bar No. 102684
meena@communityjusticeproject.com
COMMUNITY JUSTICE PROJECT
3000 Biscayne Blvd. Ste 106
Miami, Florida 33137
Tel: (305) 907-7697

Tiffany Yang, DC Bar. No. 230836
tyang@advancementproject.org
*(Admitted Pro Hac Vice 4/6/2020)*
Thomas B. Harvey, MO Bar. No. 61734
*(Admitted Pro Hac Vice 4/6/2020)*
tharvey@advacementproject.org

11

ADVANCEMENT PROJECT
1220 L Street NW, Ste 850
Washington, DC 20005
Tel: (202) 728-9557

Lida Rodriguez-Taseff, Fla. Bar No. 39111
lida.rodriguez-taseff@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Blvd., Ste 2500
Miami, Florida 33131
Tel.: (305) 423.8525

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of April, 2020 a true and correct copy of the foregoing with its attachments was electronically filed with the Clerk of the Court U.S. District Court, Southern District of Florida, using the CM/ECF system which will send notification of such filing to counsel of record.

CIVIL RIGHTS CORPS

*/s/ Katherine Hubbard*
Katherine Hubbard