UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-21457-KMW

ANTHONY SWAIN, *et al.*,
    **Plaintiffs**,

v.

DANIEL JUNIOR, *in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department*, and
MIAMI-DADE COUNTY,
    **Defendants**.

_____/

### DEFENDANTS' MOTION TO DISMISS COUNT I OF THE COMPLAINT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Daniel Junior, in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department (MDCR), and Miami-Dade County move under Federal Rule of Civil Procedure 12(b) to dismiss Count I of the Complaint [ECF No. 1] for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA).

### BACKGROUND

The Plaintiffs are seven pretrial detainees who are currently confined in three units at MDCR's Metro West Detention Center. Compl. ¶¶ 9-15. They bring this prospective class action on behalf of inmates housed at Metro West, alleging unrealized health risks posed by the COVID-19 pandemic. They seek two remedies: (1) declaratory and injunctive relief under 42 U.S.C. § 1983 for violations of their Eighth and Fourteenth Amendment rights (Count I); and (2) entry of a writ of habeas corpus under 28 U.S.C. § 2241[1] effecting the immediate release of all members of what they have called the "Medically Vulnerable Subclass" of detainees (Count II). *Id.* ¶¶ 82-83, 112-26.

Because this suit concerns prison life, because the suit asserts a claim pursuant to

---

[1] Section 2241 has its own requirement that a habeas petitioner first exhaust all available state court remedies for consideration of his constitutional claim. *See Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 489-92 (1973); *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004). As the Defendants discuss in their supplemental brief on habeas relief [ECF No. 35] and the response to the motion for preliminary injunction filed contemporaneously with this motion, the Plaintiffs have not exhausted those remedies.

1

federal statute, and because each of the seven Plaintiffs was confined at Metro West when it was filed, it is subject to the limitations and restrictions of the PLRA. The relevant limitation is the PLRA's requirement that an inmate exhaust available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Not one of the seven Plaintiffs has satisfied that requirement, so Count I must be dismissed with prejudice.

## ARGUMENT

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA's exhaustion requirement reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, [] and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and regardless of the relief sought, *Booth v. Churner*, 532 U.S. 731, 741 (2001). *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (advising that in cases seeking injunctive relief to address "current" prison conditions, inmates are not "free to bypass adequate internal prison procedures and bring their health and safety concerns directly to court").

"[T]he PLRA's text suggests no limits on an inmate's obligation to exhaust," except that he need only exhaust those remedies that are "available" to him. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). A court has no discretion to excuse an inmate's failure to exhaust, "even to take special circumstances into account." *Id.* at 1856-57 (cleaned up); *see Nellson v. Barnhart*, No. 20-0756, 2020 WL 1890670, at *3-5 (D. Colo. Apr. 16, 2020) (denying motion for temporary restraining order alleging COVID-19 concerns because inmate failed to exhaust under the PLRA before filing suit).

Failure to exhaust is an affirmative defense that the Eleventh Circuit explicitly directs defendants to raise in a motion to dismiss. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015); *see Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." (cleaned up)). Once the defense is raised, it "should be treated as a matter in abatement," meaning that "procedurally the defense is treated 'like a defense

for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Critically, "[t]he question of exhaustion is a threshold matter," *Oliver v. Warden*, 761 F. App'x 960, 963 (11th Cir. 2019), that a court "must address" before it may consider the merits of a case, *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).

A two-step framework governs the analysis of a motion to dismiss for failure to exhaust administrative remedies. *See Turner*, 541 F.3d at 1082-83. At step one, a district court accepts as true the plaintiff's alleged facts relating to his exhaustion of administrative remedies. *Id.* at 1082. If the plaintiff's version of the facts entitles the defendant to dismissal, the court may dismiss the complaint at that step. *Id.* If it doesn't, the court proceeds to step two, where it must consider the evidence presented and make specific factual findings on the exhaustion question, resolving any factual disputes between the parties' versions. *Id.* The court must then decide, based on the specific factual findings it made, whether the plaintiff exhausted his available administrative remedies. *Id.* at 1083.[2]

### A.   To exhaust MDCR's available administrative procedures under the PLRA, an inmate must timely file a grievance and timely appeal that grievance if it is rejected.

"The PLRA 'requires proper exhaustion' of 'critical procedural rules' governing the grievance process," *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)), and demands that "prisoners must 'properly take each step within the [prison's] administrative process,'" *Bryant*, 530 F.3d at 1372 (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005))). MDCR's "critical procedural rules" take the form of an "established[,] multi-step grievance procedure—applicable to all inmates, regardless of their status—that allows inmates to complain about the conditions of confinement." *Myles v. Green*, 557 F. App'x 901, 903 (11th Cir. 2014). The procedure is outlined in the Department's Standard Operating Procedure No. 15-001, attached as **Exhibit 1**. The section dealing with inmate access to the grievance process provides:

> Inmate Grievance forms shall be accessible to inmates in all housing areas. The forms are available in English, Spanish, and Creole. Inmates seeking to grieve an issue shall:

---

[2]   Considering that this is a proposed class action, the County notes Eleventh Circuit law that "a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through 'vicarious exhaustion.'" *Chandler*, 379 F.3d at 1287. In other words, "when one or more class members has exhausted his administrative remedies with respect to each claim raised by the class," that exhaustion is imputed to the entire class. *Id.* (cleaned up). That said, no class has been certified. What's more, the County will show that no Plaintiff has exhausted, meaning there's nothing to impute.

> A. Complete the Inmate Grievance form;
>
> B. Place the completed Inmate Grievance form into any inmate request drop box within 10 calendar days from the date of the incident.

DSOP 15-001 § V, at 2.

Staff are required to provide an inmate with a grievance form upon request and assist the inmate with filling it out, if needed. *Id.* § VII(A), at 3. Once submitted, a grievance is forwarded to a counselor for review who must input it into MDCR's system. *Id.* § VII(B), at 3-4. After the facility responds to a grievance, a dissatisfied inmate may appeal within two days of his receipt of the response:

> Inmates have the right to appeal a grievance response; however, an inmate that has signed and accepted a grievance resolution cannot appeal the response at a later date.
>
> Inmate Grievance Response Appeal forms are accessible to inmates in all housing units. Inmates shall complete an Inmate Grievance Response Appeal form and place it into an inmate request drop box within two calendar days from receipt of the grievance response. Assistance shall be provided to inmates in preparing the appeal . . . .
>
> The respective Division Chief or the IMP [Inmate Medical Provider] Director shall provide a response to the inmate grievance appeal within seven calendar days of receiving the Inmate Grievance Response Appeal form.
>
> The decision of the Division Chief or IMP Director is final and there shall be no further appeal.

*Id.* § XIII, at 6-7. The MDCR Inmate Handbook outlines these procedures, as well:

> You can file a general grievance without filing a complaint. To file a general grievance, you must fill out an Inmate Grievance Form. The forms are available in all housing areas. If you need help writing your grievance, ask a counselor, officer, or any staff for. Give the completed grievance form to a counselor, officer, or staff within 10 workdays from when the situation/incident happened. If your complaint is about a staff member, give the form to any other staff member or your counselor. . . .
>
> If you do not agree with the result [of a grievance], you may reject it and/or request an appeal. You must then sign the form indicating your decision. If you do not sign the form, the grievance process will end. . . .
>
> If you want to appeal, you must fill out a MDCR Inmate Grievance Appeal Form within 2 workdays after you receive the grievance resolution. You will receive the appeal response within 7 workdays. The grievance appeal decision is final.

Inmate Handbook 7, attached as ***Exhibit 2***.

The DSOP also provides an emergency grievance procedure, designating several categories of "emergency complaints/grievances" that require "immediate resolution." DSOP

15-001 § VIII, at 4. These categories include "[e]mergent medical, dental, and/or mental health issues" and "[i]mminent safety issues." *Id.* When a staff member receives an emergency complaint or grievance from an inmate, that staff member shall "immediately" deliver a copy of the grievance to the Inmate Medical Provider (for medical, dental, or mental health grievances) or the Shift Supervisor/Commander (for all other grievances) for resolution. *Id.* § VIII(A)(1). Then, the burden falls to the Facility/Bureau Supervisor or IMP/Director of Patient Care Services to investigate and prepare the written response within seven calendar days. *Id.* § VIII(C)-(D), at 4-5; *see also* Inmate Handbook 7-8 ("Emergency complaints or grievances that will be responded to ***immediately*** include: . . . Immediate medical and/or mental health issues" and "Safety issues . . . ." (emphasis added)).

In short, to exhaust MDCR's available administrative remedies for purposes of satisfying the PLRA, an inmate must timely file a grievance, and then timely appeal the resolution of that grievance. This procedure has been upheld time and again by the Eleventh Circuit and courts in this District disposing of complaints for failing to exhaust. *See, e.g., Myles*, 557 F. App'x at 903; *Bure v. Miami-Dade Corr. Dep't*, 507 F. App'x 904 (11th Cir. 2013); *Wilson v. Greaves*, No. 16-20651, 2016 WL 11643979, at *1 (S.D. Fla. Dec. 30, 2016); *Ordunez v. Miami-Dade Corr. & Rehab. Dep't*, No. 14-23816, 2016 WL 11047148, at *7 (S.D. Fla. Jan. 8, 2016), *report and recommendation adopted*, 2016 WL 11047149 (S.D. Fla. Feb. 22, 2016); *Francis v. Miami-Dade Dep't of Corr.*, No. 07-21817, 2007 WL 3406764, at *1 (S.D. Fla. Nov. 13, 2007).

### B. *The Plaintiffs did not exhaust administrative remedies because grievances were available, and the Plaintiffs didn't file any.*

#### 1. Supreme Court precedent bars one of the Plaintiffs' proffered excuses for not exhausting; the other excuse is equivocal at best.

At step one of *Turner*'s two-step framework, the Plaintiffs concede that they did not complete MDCR's grievance process. They contend, however, that they should be relieved of the obligation to exhausts because MDCR's administrative remedies were "unavailable." Compl. ¶ 105. First, they allege that they "repeatedly asked for grievance forms" but "[j]ail employees denied their requests by explaining that paper grievance forms were unavailable." *Id.* They admit that "a small amount of forms became available on" April 4, the day before the Complaint was filed, but "many" Plaintiffs "were not able to access them, and no one was able to access enough of them to submit a grievance on each issue." *Id.* Second, they allege some number of them were able to file a grievance a day earlier, on April 3, but

"the typical grievance procedure would take too long to result in any changes to [their] confinement that could protect them from imminent bodily injury and death." *Id.*

**a.** The latter excuse is invalid on its face, so the County addresses that one first. The Supreme Court, in its most recent excursion on the issue of PLRA exhaustion, explained that "the only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1858. With that as the jumping-off point, the Court identified three limited circumstances in which a grievance procedure could be deemed "unavailable": (1) where officials are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the jail's procedures are "so confusing that no reasonable prisoner can use them"; and (3) where officials "thwart" inmates from invoking the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The list ends at three; there is no fourth circumstance. *See Pearson v. Taylor*, 665 F. App'x 858, 868 (11th Cir. 2016) (rejecting plaintiff's unavailability arguments because they "do not appear to fall within any of [*Ross*'s] three 'exceptions' to exhaustion"). So, claiming "the typical grievance procedure would take too long," Compl. ¶ 105, is not a valid excuse that obviates the mandatory exhaustion requirement. This excuse sounds awfully close to advocating for a futility exception, which this Circuit's law foreclosed long before *Ross*. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (exhaustion "cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile").

The Plaintiffs' fears of "imminent danger of serious injury or death," Compl. ¶ 106, do not grant them a ticket to sail past exhaustion. Quite the opposite, the Eleventh Circuit has ruled. *See Bracero v. Sec'y, Fla. Dep't of Corr.*, 748 F. App'x 200, 204 (11th Cir. 2018), *cert. denied sub nom. Bracero v. Inch*, 139 S. Ct. 1631 (2019). The plaintiff in *Bracero* argued that his complaint "should not have been dismissed because he alleged imminent danger." *Id.* The court deemed this effort to overcome exhaustion "unavailing": "exhaustion is a prerequisite for any prisoner suit." *Id.* The grievance process was available to the plaintiff and the plaintiff did not follow it, so his complaint was properly dismissed for failing to exhaust administrative remedies. *Id.* "Any prisoner suit" means ***any prisoner suit***—including this one. If a plaintiff's claim that an administrative procedure was not capable of use can't be squared with one of the "three kinds of circumstances" enumerated in *Ross*, then

as far as the PLRA is concerned, it's not worth the paper it's written on.

Both cases the Plaintiffs cite in support of this nonexistent excuse, *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171 (7th Cir. 2010), and *Fuqua v. Ryan*, 890 F.3d 838 (9th Cir. 2018), are inapposite. The Plaintiffs correctly report *Fletcher*'s language that "administrative remedies that offer no possible relief in time to prevent [] imminent danger from becoming an actual harm can't be thought available." 623 F.3d at 1173. Two problems for them with that, though. For one thing, the continued viability of that passage is doubtful post-*Ross*, whose exhaustive list did not include an imminent-danger exception. But even if *Fletcher* survives intact, its actual holding—that the plaintiff failed to exhaust—undermines the Plaintiffs' reliance on it. Granted, the Seventh Circuit recognized an imminent-danger exception, but it explained that that "does not excuse a prisoner from exhausting remedies tailored to imminent dangers." *Id.* at 1175. The plaintiff had such a remedy—an emergency grievance procedure for prisoners with an urgent need of medical attention. *Id.* at 1174. The court saw "no reason to think that the [emergency] grievance procedure would take longer than judicial procedure," so the imminent danger "did not excuse the plaintiff's failure to exhaust." *Id.* at 1175. MDCR too has an emergency grievance procedure (that the Plaintiffs didn't use), *see supra*, at 4-5, so *Fletcher* wouldn't salvage the Plaintiffs' excuse anyway.

The Plaintiffs' reliance on *Fuqua* is based on failing to read until the end of the decision. The Ninth Circuit didn't hold that the administrative procedure was unavailable because "it required 30-day notice but unconstitutional requirement would occur in 72 hours." Compl. ¶ 106 (citing *Fuqua*, 890 F.3d at 848). Its holding wasn't based on the timing at all. Rather, two pages later, in a section titled "**Only Available Remedies Must Be Exhausted**," the court, invoking *Ross*'s second exception, held that the procedure at issue was "precisely the sort of '*essentially unknowable*' procedure that the *Ross* Court had in mind." *Fuqua*, 890 F.3d at 850 (emphasis added).

The Plaintiffs muster no authority to support creation of this excuse. No matter which way you slice it, the first excuse fails to overcome the exhaustion requirement.

**b.** Even accepting as true the Plaintiffs' alternative excuse—that their repeated requests for grievance forms were denied on the grounds that there were no forms available—would not necessarily relieve them of the obligation to exhaust. The Plaintiffs allege, "To the extent a small amount of forms became available on the day before this filing, many

7

Petitioners/Plaintiffs were not able to access them, and no one was able to access enough of them to submit a grievance on each issue." Compl. ¶ 105. This allegation concedes an important point: Some number of Plaintiffs did have access to blank forms on April 4, which would have allowed those Plaintiffs to grieve at least some issues. But the Plaintiffs don't allege that any of them filed a grievance on April 4. All they can do to attempt to justify why that is, is loop back to their defunct "imminent danger" excuse.

To the extent the Plaintiffs claim that some of them were able to file grievances on April 3, that still wouldn't solve their no-exhaustion problem. The PLRA "requires proper exhaustion" of an issue before bringing suit, which "means using all steps that the [facility] holds out, and doing so ***properly***," to allow the facility an opportunity to address the issue on the merits. *Woodford*, 548 U.S. at 90, 93 (emphasis added) (cleaned up). Even the Plaintiffs who allegedly filed grievances on April 3 did not properly use all of MDCR's provided steps. They didn't wait for the facility's response to whatever grievances they filed. And, if that response was a denial, they didn't appeal it. Put simply, no Plaintiff used all the steps MDCR holds out—properly or otherwise—so there is no vicarious exhaustion to impute to the putative class. All Plaintiffs, therefore, have failed to satisfy the exhaustion requirement, so Count I should be dismissed at *Turner* step one.

Charitably, however, if the Court believes that the allegations of denials of requests for grievances for lack of blank grievance forms could lead to a finding that the grievance process was not available under the third circumstance described in *Ross*, *see* 136 S. Ct. at 1859-60, dismissal at step one would not be appropriate.

2. **The County's evidence reveals that the Plaintiffs' convenient, conclusory allegations are not credible.**

Should the Plaintiffs' allegations not entitle the County to dismissal at step one, the Court must proceed to step two, where it resolves credibility issues and makes factual findings based on the evidence. *See Bryant*, 530 F.3d at 1377-78. The County's evidence unequivocally shows that none of the seven Plaintiffs filed a single grievance regarding their conditions of confinement or Metro West's alleged inaction in response to the threat of COVID-19. The Plaintiffs' unsworn allegations are not credible. They failed to start—much less complete—MDCR's established administrative process and necessarily failed to exhaust under the PLRA.

A plaintiff who claims that "prison officials prevent[ed] them from exhausting . . . must have some ***supporting proof*** of [their] assertions." *Kingcade v. Parker*, 949 F. Supp. 2d

8

1232, 1239 (S.D. Fla. 2013) (emphasis added) (cleaned up). Yet the Complaint offers no proof. The Defendants' evidence relating to exhaustion, on the other hand, shows that grievance forms were, in fact, available, but the Plaintiffs never filed any.

First off, the Plaintiffs cannot feign ignorance of the grievance process. Each one signed an Inmate Orientation Statement upon his arrival at Metro West, confirming, among other things, that he received a copy of the Inmate Handbook and that he understood he was to comply with its rules and regulations—including those governing grievances. *See* Inmate Orientation Statements (Composite), attached as ***Exhibit 3***.

Plaintiffs' unsubstantiated claim that there were no grievance forms available is refuted handily by declarations, sworn to under penalty of perjury, from two MDCR employees: Reentry Program Services Bureau Inmate Services Administrator Reynaldo Romero, and Metro West Correctional Counselor Supervisor Terrence Mathews. *See* Declaration of Reynaldo L. Romero, attached as ***Exhibit 4***; Declaration of Terrence Mathews, attached as ***Exhibit 5***. Romero's declaration attaches an Inmate Grievance Report, which shows all grievances filed across MDCR's multiple facilities between the first of the year and April 10, five days after the Plaintiffs filed this suit. Romero Decl. ¶ 4 & Ex. A. As summarized in the table on the next page, this report reveals that in the two weeks before this litigation began (March 22 through April 5), twenty-two Metro West inmates filed a total of twenty-nine grievances—with at least one grievance filed every day except April 4:

| *Date* | *Inmate Name* | *Grievance Type* |
|---|---|---|
| 3/22/2020 | Terrance Byrd | complaint against mental health staff |
| 3/23/2020 | Brandon Pop | personal property |
| 3/23/2020 | Alex Brown | staff complaints |
| 3/24/2020 | Mark Welch | food services |
| 3/25/2020 | Amaury Perez-Gonzalez | emergency grievance for dental care |
| 3/26/2020 | Sosthene Louis | sanitation/cleanliness |
| 3/27/2020 | Nicholas Garcia | staff complaints |
| 3/27/2020 | Enrique Lexte-Vidal | personal property |
| 3/28/2020 | Antoinette March | facility operations |
| 3/28/2020 | Arlene Antoine | facility operations |
| 3/28/2020 | Mark Welch | food services |
| 3/29/2020 | Clinton Bingham | staff complaints |
| 3/30/2020 | Justin Earnshaw | food services |
| 3/31/2020 | Rudolph Gonzalez | personal property |
| 4/1/2020 | Dashera Davis | emergency grievance for sexual abuse/harassment |
| 4/1/2020 | Arlene Antoine | facility operations |

| *Date (cont'd)* | *Inmate Name (cont'd)* | *Grievance Type (cont'd)* |
|---|---|---|
| 4/1/2020 | Carlos Escutary | inmate finance |
| 4/1/2020 | Carlos Escutary | inmate finance |
| 4/1/2020 | Mike Neal | legal |
| 4/1/2020 | Mike Neal | sanitation/cleanliness |
| 4/2/2020 | Tiwa Owonibi | emergency grievance for medical care |
| 4/3/2020 | Luis Montalvan | personal property |
| 4/3/2020 | Sherman Douglas | mail |
| 4/3/2020 | Samuel Thomas | food services |
| 4/3/2020 | Jimmie Evans | sanitation/cleanliness |
| 4/3/2020 | William Earnshaw | facility operations |
| 4/3/2020 | Mike Neal | staff complaints |
| 4/3/2020 | Mike Neal | staff complaints |
| 4/5/2020 | Mike Neal | staff complaints |

*See* Romero Decl. Ex. A., at 15-18. Romero's declaration and this report also show that the Plaintiffs' allegation that some of them "were able to file a grievance on April 3, 2020" (Compl. ¶ 105) lacks merit. He attests that none of the seven Plaintiffs filed a grievance between January 1 and April 10. Romero Decl. ¶ 6.

Next up is Mathews, who declares under penalty of perjury that blank grievance forms are, and always have been, available to inmates at Metro West. Mathews Decl. ¶ 3. He explains that each housing unit at Metro West contains a box of blank grievance forms that are regularly restocked by counselors. *Id.* ¶ 5. Each correctional officer and counselor also carries blank forms that an inmate can ask for at any time. *Id.* ¶ 6. If a counselor has no copies on his or her person and the box is empty, she can print a new blank form to give to an inmate upon request. *Id.* ¶ 7. It is part of Mathews's duties to periodically check the number of blank forms available at the facility and, when supplies are running low, to go to MDCR headquarters to pick up a new batch. *Id.* ¶ 8. As a matter of fact, supplies were recently getting low, so on or around April 3, he brought a box containing approximately **2,000** blank grievance forms from headquarters to Metro West. *Id.* ¶ 9.

These declarations stand in stark contrast to the Plaintiffs' self-serving allegations that they have set forth "no details whatsoever to support," such as when they requested grievance forms or the name of any Metro West official who denied a request. *Teran v. Johns*, No. 17-0009, 2017 WL 4678220, at *4 (S.D. Ga. Oct. 17, 2017), *report and recommendation adopted*, 2017 WL 6028400 (S.D. Ga. Dec. 5, 2017). The court in *Teran* dismissed the plaintiff's complaint for failure to exhaust because he didn't shore up his "bald[] state[ment] that 'prison officials' failed to provide him grievance forms," *id.*—a statement oddly remi-

niscent of the Plaintiffs' "[j]ail employees denied their requests," Compl. ¶ 105. *See also, e.g.*, *Louis-Charles v. Baker*, No. 16-1417, 2018 WL 5728054, at *6 (N.D.N.Y. July 30, 2018) ("[P]laintiff has not introduced evidence that grievance forms were unavailable throughout [the facility], nor has plaintiff specified who informed him that there were no grievances in the cell block or that corrections officers were not permitted to issue the forms absent supervisor approval, or when these statements were made." (cleaned up)), *report and recommendation adopted*, 2018 WL 4299982 (N.D.N.Y. Sept. 10, 2018).

Closer to home, just last month a court in the Middle District of Florida saw right through allegations as transparent as the Plaintiffs'. *See Filmore v. Cooper*, 18-0955, 2020 WL 1275385, at *6 (M.D. Fla. Mar. 17, 2020) ("Plaintiff's contention that he was unable to obtain formal grievance forms is not only conclusory but is not credible."). The plaintiff provided no factual detail explaining the steps he took to obtain grievance forms, "such as who he asked, how many times he asked, or whether he took other measures to obtain the forms." *Id.* And while the court thought it plausible that one or a few employees may have declined to physically hand the plaintiff a grievance form, it found implausible the plaintiff's statements "that absolutely no grievance forms were available throughout the prison," or "that multiple employees would have refused Plaintiff grievance forms given employees are subject to discipline for such conduct." *Id.*

The same results from *Teran* and *Filmore* should obtain here. Every detail those plaintiffs neglected to provide are details the Plaintiffs too have not provided. Further, MDCR counselors, like the employees in *Filmore*, would be subject to discipline for refusing to hand over grievance forms, as Mathews attests. Mathews Decl. ¶¶ 10-11. It defies belief to imply, as the Plaintiffs do, that counselors would be willing to risk discipline and jeopardize the security of their jobs—at a time of rampant unemployment, no less—over something as trivial as handing an inmate a grievance form.

As incredible as the allegations in these cases were, one would have to multiply the incredulity by seven to approach the absurdity of the Plaintiffs' allegations. Without one nonconclusory factual detail, they expect the Court to believe that Metro West employees in three different units thwarted every one of all seven Plaintiffs' attempts to file grievances by refusing them forms because the facility had none available—***plus*** no way to print any new ones. In short, these are nothing more than "bald assertions that attempts at exhaustion were thwarted by jail staff," which courts find "insufficient to overcome evidence of

lack of exhaustion." *Kingcade*, 949 F. Supp. 2d at 1239.

The Plaintiffs' claims of unavailability "readily wither when subjected to the crucible of examination the second *Turner* step requires." *Teran*, 2017 WL 4678220, at *4. In the light of the evidence the County has provided, the Court should make two factual findings. One, the administrative process was fully available to the Plaintiffs. And two, no Plaintiff filed a grievance complaining about COVID-19 or his conditions of confinement prior to the filing of this lawsuit. Those factual findings will lead to one inexorable conclusion: the Plaintiffs failed to exhaust available administrative remedies.

## CONCLUSION

Seven Plaintiffs filed zero grievances and then filed a class action lawsuit in federal court. That is the opposite of what Congress had in mind when it enacted the PLRA. Accordingly, the Court should dismiss Count I of the Complaint for failure to exhaust administrative remedies. And as "[t]here is no question . . . that unexhausted claims cannot be brought in court," *Jones*, 549 U.S. at 211, the dismissal should be with prejudice.

Dated: April 21, 2020.

Respectfully submitted,
Abigail Price-Williams
Miami-Dade County Attorney

By: */s/ Zach Vosseler*
    Zach Vosseler, Fla. Bar. No. 1008856
    zach@miamidade.gov
    Bernard Pastor, Fla. Bar. No. 46582
    pastor@miamidade.gov
    Erica Zaron, Fla. Bar. No. 514489
    zaron@miamidade.gov
    Ezra S. Greenberg, Fla. Bar. No. 85018
    ezrag@miamidade.gov
    Anita Viciana, Fla. Bar. No. 115838
    anita@miamidade.gov
    Jennifer L. Hochstadt, Fla. Bar. No. 56035
    hochsta@miamidade.gov
    *Assistant County Attorneys*

    Stephen P. Clark Center
    111 N.W. First Street, Suite 2810
    Miami, Florida 33128
    (305) 375-5151

    *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On April 21, 2020, I electronically filed this document with the Clerk of Court via CM/ECF and served a copy on all counsel of record via CM/ECF.

*/s/ Zach Vosseler*
Zach Vosseler
Assistant County Attorney
