# Exhibit 18

Case 1:20-cv-21457-KMW Document 80-16 Entered on FLSD Docket 04/24/2020 Page 2 of 14
Case 1:20-cv-21457-KMW Document 1-36 Entered on FLSD Docket 04/05/2020 Page 2 of 4
Case 2:20-cv-00409-JLR-MAT   Document 6   Filed 03/16/20   Page 1 of 3

## Declaration of Dr. Marc Stern

I, Marc Stern, declare as follows:

1. I am a physician, board-specialized in internal medicine, specializing in correctional health care. I most recently served as the Assistant Secretary for Health Care at the Washington State Department of Corrections. I also have considerable familiarity with the immigration detention system. I served for four years as a medical subject matter expert for the Officer of Civil Rights and Civil Liberties, U.S. Department of Homeland Security, and as a medical subject matter expert for one year for the California Attorney General's division responsible for monitoring the conditions of confinement in Immigration and Customs Enforcement (ICE) detention facilities. I have also served as a consultant to Human Rights Watch in their preparation of two reports on health-related conditions of confinement in ICE detention facilities. In those capacities, I have visited and examined more than 20 ICE detention facilities and reviewed hundreds of records, including medical records and detention death reviews of individuals in ICE detention. Attached as Exhibit A is a copy of my curriculum vitae.

2. COVID-19 is a serious disease and has reached pandemic status. At least 132,758 people around the world have received confirmed diagnoses of COVID 19 as of March 13, 2020, including 1,629 people in the United States. At least 4,955 people have died globally as a result of COVID-19 as of March 13, 2020, including 41 in the United States. These numbers will increase, perhaps exponentially.

3. COVID-19 is a novel virus. There is no vaccine for COVID-19, and there is no cure for COVID-19. No one has immunity. The only way to control the virus is to use preventive strategies, including social distancing.

4. The time course of the disease can be very rapid. Individuals can show the first symptoms of infection in as little as two days after exposure and their condition can seriously deteriorate in as little as five days (perhaps sooner) after that.

5. The effects of COVID-19 are very serious, especially for people who are most vulnerable. Vulnerable people include people over the age of 50, and those of any age with underlying health problems such as – but not limited to – weakened immune systems, hypertension, diabetes, blood, lung, kidney, heart, and liver disease, and possibly pregnancy.

6. Vulnerable people who are infected by the COVID-19 virus can experience severe respiratory illness, as well as damage to other major organs. Treatment for serious cases of COVID-19 requires significant advanced support, including ventilator assistance for respiration and intensive care support. An outbreak of COVID-19 could put significant pressure on or exceed the capacity of local health infrastructure.

7. Detention facilities are congregate environments, i.e. places where people live and sleep in close proximity. In such environments, infectious diseases that are transmitted via the air or touch are more likely to spread. This therefore presents an increased danger for the spread of COVID-

19 if and when it is introduced into the facility. To the extent that detainees are housed in close quarters, unable to maintain a six-foot distance from others, and sharing or touching objects used by others, the risks of spread are greatly, if not exponentially, increased as already evidenced by spread of COVID-19 in another congregate environment: nursing homes and cruise ships.

8. Social distancing in ways that are recommended by public health officials can be difficult, if not impossible in detention facilities, placing people at risk, especially when the number of detainees is high.

9. For detainees who are at high risk of serious illness or death should they contract the COVID-19 virus, release from detention is a critically important way to meaningfully mitigate that risk. Additionally, the release of detainees who present a low risk of harm to the community is also an important mitigation strategy as it reduces the total number of detainees in a facility. Combined, this has a number of valuable effects on public health and public safety: it allows for greater social distancing, which reduces the chance of spread if virus is introduced; it allows easier provision of preventive measures such as soap for handwashing, cleaning supplies for surfaces, frequent laundering and showers, etc.; and it helps prevent overloading the work of detention staff such that they can continue to ensure the safety of detainees.

10. The release of detainees, especially those with increased health-related vulnerability, also supports the broader community because carceral and detention settings, regardless of the level of government authorities that oversee them, are integral parts of the community's public health infrastructure. Reducing the spread and severity of infection in a Federal immigration detention center slows, if not reduces, the number of people who will become ill enough to require hospitalization, which in turn reduces the health and economic burden to the local community at large.

11. As a correctional public health expert, I recommend release of eligible individuals from detention, with priority given to the elderly and those with underlying medical conditions most vulnerable to serious illness or death if infected with COVID-19.

12. Conditions related to COVID-19 are changing rapidly and may change between the time I execute this Declaration and when this matter appears before the Court. One of the most worrisome changes would be confirmation of a case of COVID-19 within the detention center, either among staff or detainees. In the event of this occurring, and eligible detainees being quarantined or isolated due to possible exposure to the virus, I recommend that the detainee(s) be tested for the virus if testing is available. Armed with the results of that test if it is available, or in the absence of other instructions from the health authority of the municipality to which they will be returning or the Washington State public health authority, those who can easily return to a home without exposure to the public, should be released to that home for continued quarantine or isolation for the appropriate time period. All others can be released to appropriate housing as directed or arranged in coordination with the relevant health authority.

13. I have reviewed Plaintiffs' complaint and on the basis of the claims presented, conclude that Plaintiffs have underlying medical conditions that increase the risk of serious illness or death if exposed to COVID-19. Due to the risks caused by the congregate environment in immigration

Case 1:20-cv-21457-KMW Document 80-16 Entered on FLSD Docket 04/24/2020 Page 4 of 4
Case 1:20-cv-21457-KMW Document 1-9 Entered on FLSD Docket 04/05/2020 Page 4 of 4
Case 2:20-cv-00409-JLR-MAT Document 6 Filed 03/16/20 Page 3 of 3

detention, compounded by the marked increase in risk conferred by their underlying medical conditions, I recommend their release.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this __15th___ day in March, 2020 in Tumwater, Washington.

_____
Dr. Marc Stern