UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 20-cv-21457-KMW

ANTHONY SWAIN, *et al.*,
      **Plaintiffs**,

v.

DANIEL JUNIOR, *in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department*, and
MIAMI-DADE COUNTY,
      **Defendants**.

_____/

**DEFENDANTS' REPLY[1] IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS COUNT I OF THE COMPLAINT
FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

    The Plaintiffs' argument that their failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a), should be excused because no paper grievance forms were available at Metro West Detention Center is belied by the evidence in the record showing that paper forms have always been available at Metro West. The Plaintiffs raised this argument in their complaint and submitted no new evidence on this point in their response. To find for the Plaintiffs, the Court would first have to reject as incredible the two declarations the Defendants filed with the motion. Romero Decl. [ECF No. 66-4]; Mathews Decl. [ECF No. 66-5]. The Court would *then* have to reject as incredible four additional declarations—already in the record—from MDCR officers who have personal knowledge of the availability of the grievance forms inside the Plaintiffs' own housing units. Johnson Decl. [ECF No. 65-5]; Delancy Decl. [ECF No. 65-6]; Mayo Decl. [ECF No. 65-7]; Almonor Decl. [ECF No. 65-9].

---

[1] The Defendants construe the portion of the Plaintiffs' reply in support of their preliminary injunction motion that is dedicated to rebutting the Defendants' administrative exhaustion arguments as the Plaintiffs' response in opposition to the motion to dismiss. Pls.' Reply 27–32 [ECF No. 85]; *see* Pls.' Motion for Leave to Convene Three-Judge Panel and to Exceed Page Limit 1 [ECF No. 84] (characterizing the document the Plaintiffs were about to file as a "consolidated reply/response").

1

Alternatively, the Plaintiffs contend that MDCR's procedures were "unavailable" because they would take too long to give them all of the relief they request. That ship runs aground on several different shores. First, the Plaintiffs misread Supreme Court precedent, which holds that an administrative procedure is "available" for purposes of the PLRA so long as there is the possibility that it will offer them *some* relief—not all relief or the precise relief they request. Second, as a matter of law they cannot claim that it would have been pointless for them to engage in the grievance process because there is no futility exception to the PLRA. Third, their argument that the process was too lengthy is based on speculation, divined from reading MDCR's grievance procedures, that if the Plaintiffs had filed a grievance (which the evidence establishes they didn't), officials at Metro West *would have* taken the maximum time allowable to respond, and then if they filed an appeal (which they didn't), officials *would have* taken the maximum time allowable to respond. And fourth, the Plaintiffs implore the Court to adopt an "imminent danger" exception—in essence, a reworded futility exception—that no court in this Circuit has adopted, based on an improbable hypothetical in an out-of-circuit case. Dismissal is warranted.

## ARGUMENT

The Court, at the outset, should streamline its determination in two respects. First, it should conclude that the Plaintiffs did not exhaust administrative remedies. It is undisputed that none of them went through every steps of MDCR's procedure (grievance, then appeal). The sole issue for decision is whether the Plaintiffs' failure to exhaust should be excused because MDCR's administrative remedies were not "available." Second, the Court should dispense with step one of *Turner v. Burnside*'s two-step exhaustion analysis. *See* 541 F.3d 1077, 1082–83 (11th Cir. 2008). Accepting the statements in the declarations of Alen Blanco, [ECF No. 80-25] ¶ 18, Bayardo Cruz, [ECF No. 80-27] ¶ 15, and Peter Bernal, [ECF No. 80-29] ¶ 17, as true, the Court would potentially find that MDCR officials prevented them from filing grievances, rendering administrative remedies unavailable.

Now, at step two, the Court must consider all the evidence and resolve credibility issues. *Bryant v. Rich*, 530 F.3d 1368, 1377–78 (11th Cir. 2008). When it does, it should conclude that the Defendants' have shown that MDCR's procedures were, in fact, available to the Plaintiffs.

I.  **MDCR's Grievance Procedure Was Available as a Matter of Fact.**

The Plaintiffs' first argument—that the administrative grievance procedure was "un-

available" because they did not have access to grievance forms—is not supported by the record evidence. Their response briefing leaves almost entirely undisputed declarations from six MDCR employees, some of whom are staffed in the Plaintiffs' housing units, that consistently state that there has never been a shortage of grievance forms at Metro West. It also wholly ignores caselaw from this District and elsewhere concluding that generalized allegations that attempts to file grievances have been thwarted by jail staff are not sufficient to override exhaustion in the absence of supporting proof. The Court will see that the Plaintiffs have no supporting proof, though—just allegations from three of them that unnamed officers on unknown occasions refused to give them grievance forms, and an allegation from one of those three that he filed one grievance on April 3. But the unrefuted MDCR records reflect that none of the seven Plaintiffs filed any grievance on any issue between January 1 and April 10, 2020.

> **A.   The record evidence, nearly all of which goes unrefuted, lies overwhelmingly in the Defendants' favor on any disputed issue of fact.**

The evidence in the record shows that paper grievance forms have always been available at Metro West and, as a result, have always been available to the Plaintiffs. The declaration of correctional counselor supervisor Terrence Mathews establishes that fact on its own. Mathews Decl. ¶ 3. The Plaintiffs proffer no evidence to rebut it. All they have is attorney argument (1) assuming that scores of inmates must have wanted to file grievances in the handful of days before they filed the complaint, (2) assuming that there was such a run on grievances that counselors were unable to keep blank forms in stock; (3) speculating that Mathews is not aware of what's going on in the units of the facility in which he is a supervisor, and (4) obtusely misreading the phrase "running low" to mean "none." Pls. Reply 30–31. The Plaintiffs, of course, elect not to challenge (or acknowledge) Mathews's statement that a counselor can print out a blank form at any time. Mathews Decl. ¶ 7. Nor do they refute administrator Reynaldo Romero's declaration and the exhibit he attached, which together demonstrate (1) that *no* plaintiff filed a grievance between January 1 and April 10, 2020; and (2) that twenty-two Metro West inmates filed twenty-nine grievances in the fourteen days before the complaint was filed. Romero Decl. ¶¶ 4–6 & Exh. A.

Even more unrefuted evidence of the availability of grievance forms can be found in the declarations—provided with the Defendants' response to the preliminary injunction motion—of four MDCR officers with intimate knowledge of the Plaintiffs' housing units. These declarations speak with one voice in describing the availability of paper grievance

forms. First, Officer Beatrice Almonor, who is assigned to Anthony Swain's unit (1D2), attests that MDCR's "grievance process is available to all inmates in Unit 1D2," and "there has been *no shortage of grievance forms in Unit 1D2 at any point in 2020*." Almonor Decl. ¶¶ 3, 12 (emphasis added). Next, Officer Patricia Delancy, who is assigned to Winfred Hill and Peter Bernal's unit (1D3), attests that (1) "[t]here are sufficient grievance forms in Unit 1D3"; (2) neither Bernal nor Hill asked her for a grievance at any point in 2020; (3) if she does not have grievance forms on her person, she "can always get extra forms from the counselors or [her] corporal"; and (4) "[t]here is *no shortage of paper grievance forms in Unit 1D3 and there has never been one at any time during 2020*." Delancy Decl. ¶¶ 3, 6 (emphasis added). Further, Officer Dasmine Mayo, who is assigned to Deondre Willis, Bayardo Cruz, Ronniel Flores, and Alen Blanco's unit (2C2), attests that inmates can request a grievance form at any time from MDCR staff members and that "[g]rievance forms are available in the unit and there has been *no shortage of grievance forms in Unit 2C2 at any point in 2020*." Mayo Decl. ¶ 16. Finally, Corporal Bridgett Johnson, who oversees 1 Delta Wing, attests that (1) "[g]rievance forms are kept in every unit at the officer's desk"; (2) she keeps grievance forms at her own desk; (3) "1 Delta Wing has sufficient grievance forms to be able to provide to any inmate upon request"; (4) "[t]here has been *no shortage of grievance forms in 1 Delta Wing at any point in 2020*"; (5) she has never refused to provide a grievance form to any inmate, nor is she aware of any officer under her command or at Metro West in general refusing to provide grievance forms; and (6) any MDCR employee refusing to provide a grievance form to an inmate would be subject to discipline. Johnson Decl. ¶ 3, 19.

Faced with that wealth of corroborative testimony from those with personal knowledge, the Plaintiffs muster one feeble response: Officer Mayo was out sick from March 25 through April 11. Pls.' Reply 31. They argue that her testimony is not beneficial to the Defendants because she wouldn't know "that there were no grievance forms available to file an emergency grievance in the days before this lawsuit." *Id.* That impliedly acknowledges that she would have known whether there were grievance forms available before March 25—during the first critical weeks of Metro West's response to the COVID-19 pandemic.

The Governor of Florida declared a state of emergency on March 9. Gov'r of Fla., Exec. Order No. 20-52 (Mar. 9, 2020), available at https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-52.pdf. MDCR took two major remedial steps—canceling all visitation and limiting inmate movement—on March 12. Junior Decl. ¶¶ 44, 52 [ECF No.

65-1]. Over the next twenty-one days, instead of filing any grievances about the "unprecedented global pandemic" beginning "to reach the United States and Miami," Pls.' Reply. 31, the Plaintiffs rounded up ten experts, completed seven lengthy declarations, and prepared a class action complaint for filing in federal court. This revelation that the Plaintiffs apparently planned to file grievances only in the days before they filed that complaint—by which time the forms were suddenly unavailable throughout all of Metro West—betrays a critical truth: the Plaintiffs *never intended to see the grievance process through to its conclusion*. They had come to the foregone conclusion that the lawsuit would be filed regardless, in open defiance of the PLRA's policy goals of "eliminat[ing] unwarranted federal-court interference with the administration of prisons" and "'affor[ding] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "strict compliance with [statutory exhaustion requirements] takes on added—and critical importance" when prison officials, who have a "shared desire for a safe and healthy prison environment," engage in "extensive and professional efforts to curtail the virus's spread," as the Defendants have here). It's impossible to know how the grievance process would have played out because the Plaintiffs decided collectively to bypass it.

   **B.   The Plaintiffs ignore, at their own peril, applicable caselaw holding that an inmate alleging that his attempts at exhaustion were thwarted must provide proof to support those allegations.**

The Plaintiffs pay not one word of mind to the caselaw the Defendants cited in their motion standing for the proposition that a plaintiff alleging that prison officials prevented him from exhausting "must have some supporting proof of his assertions," as "bald assertions that attempts at exhaustion were thwarted by jail staff are insufficient." *Kingcade v. Parker*, 949 F. Supp. 2d 1232, 1239 (S.D. Fla. 2013); *see also Filmore v. Cooper*, No. 18-0955, 2020 WL 1275385, at *6 (M.D. Fla. Mar. 17, 2020); *Teran v. Johns*, No. 17-0009, 2017 WL 4678220, at *4 (S.D. Ga. Oct. 17, 2017), *report and recommendation adopted*, 2017 WL 6028400 (S.D. Ga. Dec. 5, 2017).[2] It's eminently clear why: these decisions cut to the heart

---

[2]   This view is shared by courts throughout the Circuit; the Plaintiffs cite not one decision even addressing the issue—let alone coming out the other way. *See, e.g.*, *Williams v. Barrow*, 559 F. App'x 979, 987–88 (11th Cir. 2014) (affirming dismissal of complaint for failure to exhaust where the plaintiff's allegation that he failed to exhaust because of "escalating retaliation" was not supported by evidence of actual threats of retaliation); *Kozuh v. Nichols*, 185 F. App'x 874, 878 (11th Cir. 2006) (affirming dismissal of complaint for

of their only "evidence"—on the whole uncorroborated, nonspecific allegations from three Plaintiffs. Blanco alleges that he "tried to file grievances repeatedly," that he asked "the officers at every shift" for grievance forms but every officer told him to wait, and that he filed one grievance on April 3 after forms were brought to his unit. Blanco Decl. ¶ 18. Cruz claims he attempted to file a grievance on April 1, but "Corrections" said they did not have any forms, and an unnamed corporal said the same. Cruz Decl. ¶ 15. And Bernal states that he has not been able to submit grievances because of the lack of grievance forms in his cell, and that his (also unnamed) counselor, when asked for grievance forms, said "I'm working on it, I'm working on it," but never provided the grievance forms. Bernal Decl. ¶ 17.

Not a one of these allegations is supported by any proof. And besides Blanco's statement that he filed a grievance on April 3, none of the allegations contain any detail at all. *Compare Filmore*, 2020 WL 1275385, at *6 ("Plaintiff does not provide any factual detail explaining the steps he took to obtain formal grievance forms, such as who he asked, how many times he asked, or whether he took other measures to obtain the forms."), *and Teran*, 2017 WL 4678220, at *4 ("[H]e does not state when he requested grievance forms or identify the prison official who denied his request."), *with Minnis v. Jones*, No. 17-20575, 2017

---

failure to exhaust where there was no evidence to support plaintiff's allegations that he was thwarted from bringing his grievances or that the grievance process was unavailable); *Crutchley v. Chambers*, No. 19-0043, 2020 WL 1301633, at *4 (M.D. Ga. Feb. 6, 2020) ("While Plaintiff claims 'several different officers' refused to provide him a grievance form, he does not give the officers' names, the dates these incidents allegedly occurred, or any other specific facts supporting his claims."), *report and recommendation adopted*, 2020 WL 1289171 (M.D. Ga. Mar. 18, 2020); *Hines v. Butts*, No. 18-0456, 2019 WL 7842418, at *5 (M.D. Ga. Oct. 9, 2019) ("No evidence supports Plaintiff's assertion that she was thwarted from accessing the grievance appeals process."), *report and recommendation adopted*, 2019 WL 7208423 (M.D. Ga. Dec. 27, 2019), *appeal dismissed sub nom. Hines v. Warden, Pulaski State Prison*, No. 20-10252, 2020 WL 1951399 (11th Cir. Apr. 1, 2020); *Rodriguez v. Clupper*, No. 17-0387, 2018 WL 3525161, at *3 (M.D. Ga. July 20, 2018) (without evidence to support them, the plaintiff's "allegations that the counselors deliberately hindered his grievance request simply are not credible"); *Moss v. Knox*, No. 16-0010, 2018 WL 1221868, at *3 (M.D. Ga. Feb. 2, 2018) (recommending rejecting plaintiff's claim that he was prevented from filing grievances because he supplied no evidence to support his allegations), *report and recommendation adopted sub nom. Moss v. Blanks*, 2018 WL 1221484 (M.D. Ga. Mar. 8, 2018); *Purvis v. Dukes*, No. 16-0015, 2017 WL 763931, at *3 (S.D. Ga. Jan. 19, 2017) ("Even if a hurdle to exhaustion existed as Purvis claimed in his Complaint, he has shown no evidence—or even cursorily rebutted defendants' evidence—that it rose to the height of unavailability that the Supreme Court contemplated in *Ross*."), *report and recommendation adopted*, 2017 WL 758294 (S.D. Ga. Feb. 27, 2017); *Sanderson v. Marshall*, 10-0878, 2013 WL 4763525, at *6 (M.D. Ala. Sept. 4, 2013) (plaintiff's "self-serving and conclusory" evidence did not establish that he attempted to, but was prevented from, filing a grievance).

WL 9605073, at *6 (S.D. Fla. Nov. 17, 2017) (finding that plaintiff *had* supported his claim of unavailability by providing detailed allegations like describing an interaction with a named warden who tore up a grievance form in front of him, told him it was not possible to grieve certain types of officers, and threatened him with transfer to another named facility if he didn't stop filing grievances), *report and recommendation adopted*, 2018 WL 3054803 (S.D. Fla. June 20, 2018). The Plaintiffs adduce no evidence to support vague, convenient, and self-serving allegations like "officers at every shift" said there were no forms, or "Corrections" said there were no forms, or a "counselor" never provided forms. The one specific allegation—that Blanco filed a grievance on April 3—is belied by unrefuted record evidence, namely, the inmate grievance report attached to Romero's declaration revealing no such grievance being filed, and Romero's own attestation that no Plaintiff filed a grievance between January 1 and April 10. Romero Decl. ¶¶ 4–6 & Exh. A.

Lastly, the Court should find it implausible that multiple Metro West employees would have refused to give all seven Plaintiffs grievance forms for weeks on end, given unrebutted testimony that MDCR employees are subject to discipline for such conduct. *See Filmore*, 2020 WL 1275382, at *6; Mathews Decl. ¶ 11; Johnson Decl. ¶ 19.

Step two of *Turner* asks a court to make "specific findings in order to resolve the disputed factual issues related to exhaustion." 541 F.3d at 1082. The Court should resolve the factual dispute in the Defendants' favor and conclude that grievance forms were available to the Plaintiffs.

## II. MDCR's Grievance Procedure Was Available as a Matter of Law.

### A. The Plaintiffs had the possibility of at least some kind of relief.

The Plaintiffs' alternative argument that "the typical grievance procedure would take too long to result in any changes to Plaintiffs' confinement that could protect them from imminent bodily injury and death," Compl. ¶ 105, raises, in all pertinent respects, the same dispute the Supreme Court long ago resolved in *Booth v. Churner*, 532 U.S. 731 (2001). In that case, the Court held that a prison administrative procedure is "available" under the PLRA as long as it has "authority to take *some* action in response to [an inmate's] complaint," even if it cannot provide "the remedial action an inmate demands." *Id.* at 736 (emphasis added). The Court reaffirmed *Booth*'s holding in *Woodford*: "a prisoner must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." 548 U.S. at 85. And most recently, in *Ross v. Blake*, the Court explained that

REPLY IN SUPPORT OF MOTION TO DISMISS COUNT I FOR FAILURE TO EXHAUST

a grievance procedure is unavailable under a "dead-end exception" only if "officers [are] unable or consistently unwilling to provide *any* relief to aggrieved inmates." 136 S. Ct. 1850, 1859 (2016) (emphasis added). In *Booth*, the relief that could not be granted by the process was money, but the plaintiff was required to exhaust anyway. 532 U.S. at 740–41. Here, swap out "money" for "a jail environment with an opportunity for maximum social distancing," and it becomes clear that that precedent applies, and the Plaintiffs were required to exhaust.

*Booth* and its progeny—both in the Supreme Court and in the Eleventh Circuit, *see Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) ("[T]he modifier 'available' in the PLRA means that inmates must exhaust administrative remedies so long as there is the possibility of at least some kind of relief." (quoting *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004)))—foreclose any effort by the Plaintiffs to override exhaustion here. They do not argue (or, in light of the evidence of MDCR's remedial efforts, cannot *genuinely* argue) that MDCR could not provide them *any* of the relief through the administrative process that they sought in their complaint, such as being given liquid hand soap, paper towels, wipes, hand sanitizer, or disinfecting supplies. Compl. 43–45. The facts on the ground defeat the argument, as MDCR began giving (or giving access to) nearly all of these same items to inmates long before the start of this lawsuit. *E.g.*, Junior Decl. ¶¶ 29, 32; Johnson Decl. ¶¶ 11–12; Almonor Decl. ¶¶ 9, 13; Mayo Decl. ¶ 11; Delancy Decl. ¶¶ 4, 9, 11. The Plaintiffs have to admit, then, that MDCR's procedure would, as a matter of law, afford "the possibility of *some* relief." *Booth*, 532 U.S. at 738.

That's all the PLRA asks of an "available" administrative remedy, so the Plaintiffs' decision not to engage that remedy must lead to a finding that their failure to exhaust is not excused. *See Nellson v. Barnhart*, No. 20-0756, 2020 WL 1890670, at *4 (D. Colo. Apr. 16, 2020) (denying temporary restraining order to plaintiff who failed to exhaust administrative remedies but claimed concerns about COVID-19 excused that failure: "Plaintiff does not argue that he would be able to receive no relief whatsoever through the administrative grievance process but, rather, that the process would not be able to institute all the relief he requests immediately. But *total and immediate relief is not the standard for exhaustion*, 'the possibility of some relief' is." (emphasis added) (quoting *Ross*, 136 S. Ct. at 1859)).

B.   **There is no futility exception to the PLRA.**

The Plaintiffs appear quite taken aback by the suggestion that their argument is essentially a request to create a futility exception to the exhaustion requirement. It's unclear why,

REPLY IN SUPPORT OF MOTION TO DISMISS COUNT I FOR FAILURE TO EXHAUST

given that it's exactly what they advocate for. The Supreme Court has "stress[ed] the point" that it "will not read futility or other exceptions into statutory exhaustion require-ments where Congress has provided otherwise." *Booth*, 532 U.S. at 741 n.6. Congress has provided no such exception in the PLRA's "uncompromising statutory text." *Ross*, 136 S. Ct. at 1857. Futility is not a viable reason to bypass exhaustion, and the Plaintiffs' insistence otherwise does not alter that reality.

Undaunted, the Plaintiffs make the puzzling choice to argue that on-point, precedential Eleventh Circuit caselaw is "irrelevant." Pls.' Reply 29 (citing *Higginbottom v. Carter*, 223 F.3d 1259 (11th Cir. 2000)). In *Higginbottom*, the Eleventh Circuit, ruling that a district court properly dismissed a plaintiff's complaint for fail to exhaust, declared that "the exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile." *Id*. at 1261. The Plaintiffs attempt to cabin *Higginbottom* to its facts but cite no authority supporting their position that the bar on futility exceptions to the PLRA is applicable only in actions brought by inmates who didn't file grievances because they believed they would lose. *See* Pls.' Reply 29.[3] "Futile" means "serving no useful purpose," "completely ineffective." *Futile*, Merriam-Webster (2020), https://www.merriam-webster.com/dictionary/futile. The Plaintiffs' entire suit is built on the claim that MDCR's processes—including its grievance process—are completely ineffective at stemming the risk of the spread of COVID-19, that they would serve no purpose. In other words, that they're futile.

Perhaps the Plaintiffs lash out so forcefully at *Higginbottom* because it paints them into a corner by forbidding the argument that a failure to exhaust can be excused if they can convince a court that MDCR's procedure could not give them all of the relief they wanted when they wanted it. *Higginbottom* is binding precedent with broad application in PLRA cases, as much as the Plaintiffs might wish otherwise. So too is *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), in which the Eleventh Circuit held more generally that a futility exception "do[es] not survive the new mandatory exhaustion requirement of the PLRA." *Id*. at 1325. To hold otherwise, it reasoned, "would impose an enormous loophole in the PLRA, which Congress clearly did not intend." *Id*.

At bottom, the claim that an inmate need not exhaust his administrative remedies because the process would take too long to provide all the relief the inmate wants is a claim for

---

[3] Implicit in that cabining is the concession that the Plaintiffs did not share a subjective belief that, had they filed grievances, they too would have lost.

a judicially created futility exception that is unrecognized by the Supreme Court and expressly prohibited by binding Eleventh Circuit law. It is not a tool in the Plaintiffs' arsenal.

### C. The Plaintiffs' remaining arguments are unpersuasive; COVID-19 does not make remedies unavailable, and there is no "imminent danger" exception that excuses the Plaintiffs' failure to exhaust.

The best way to begin to address the Plaintiffs' final smattering of unavailability arguments is through the recent, and applicable, Fifth Circuit decision that expertly dispatched them. *See Valentine v. Collier*, — F.3d —, 2020 WL 1934431, at *5–7 (5th Cir. Apr. 22, 2020). In *Valentine*, two days after the district court granted the plaintiffs' (inmates in a Texas jail) motion for preliminary injunction against the Texas Department of Criminal Justice (TDCJ) and two of its officials, finding it likely that the plaintiffs could prove an Eighth Amendment violation, the Fifth Circuit stayed the injunction pending appeal, concluding, *inter alia*, that the defendants were likely to show on appeal that the plaintiffs—who had not submitted any grievances prior to filing suit—failed to exhaust under the PLRA. *Id.* at *5–7.

*Valentine* provides this Court with an uncomplicated roadmap to dismissal that dismantles the Plaintiffs' arguments along the way.

*First*, the Fifth Circuit rejected the argument that a grievance process that would take too long to provide relief to the plaintiffs given the circumstances posed by COVID-19 is "unavailable." It explained that "reading a 'special circumstances' exception in the PLRA" because of concerns about the spread of COVID-19 "would undo the PLRA and 'resurrect' its predecessor.'" *Id.* at *6 (quoting *Ross*, 136 S. Ct. at 1858); *see Nellson*, 2020 WL 1890670, at *5 ("[T]he Court does not overlook the risks of COVID-19 at [the facility] or in the prison system generally. But the Court may not alter the mandatory requirements of the PLRA for COVID-19 or any other special circumstance."). This Court should likewise reject the Plaintiffs' indistinguishable argument.

*Second*, the court rejected the argument that TCDJ's process was unavailable because it would be unable to provide relief if TCDJ used the full time allotted under state law to respond to a grievance. *Id.* The district court had not made the predicate finding that TDCJ "*would* take the full time if given the chance," so the argument that it would was unfounded. *Id.* The same unfounded argument appears a staggering number of times over the Plaintiffs' six-page response. *See* Pls.' Reply 27 & n.38, 28, 29 n.39, 30, 31, 32. The Plaintiffs speculate that because MDCR's DSOP instructs officials to provide written responses to an emergency or medical grievance "within seven calendar days," that means officials *will always*

wait seven days to take any action in response to an emergency or medical grievance. They engage in the same speculative reasoning about appeals—because the DSOP instructs officials to provide a written response to an appeal within seven days, that means officials *will always* take seven days to take any action in response to an emergency or medical grievance. By the end of their argument, the Plaintiffs have thoroughly convinced themselves that relief cannot be given to a defendant any earlier than "within 14-16 days." Pls.' Reply 32. But "[s]tatements by counsel in briefs are not evidence," *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980), and, much like the *Valentine* plaintiffs, the Plaintiffs submit no evidence to show that MDCR *would* take the full time if given the chance. If anything, the evidence shows the opposite. *See generally* Defs.' Prelim. Inj. Response 2–10.

*And third*, the court turned its sights on the argument that there is some sort of "imminent danger" exception to exhaustion. The Fifth Circuit neutralized the Plaintiffs' star case on this point, *Fletcher v. Menard Correctional Center*, 623 F.3d 1171 (7th Cir. 2010), a case that, since *Ross*, has never been cited outside the Seventh Circuit for the imminent-danger exception it created—that is, except in the district court order the Fifth Circuit stayed. The Fifth Circuit wisely declined to engage with *Fletcher*'s catastrophic hypothetical about an inmate who was going to die tomorrow and a procedure that prohibited responding to a grievance until two weeks after it was filed. *Valentine*, 2020 WL 1934431, at *7. The hypothetical was irrelevant—as it is irrelevant here—because TDCJ, like MDCR, "faces no legal bar to offering timely relief" and "is empowered to act on a grievance any time *up to*— not *after*, as in *Fletcher*—the statutory limit." *Id.*[4]

---

[4] Courts across the country have refused to recognize this so-called imminent-danger exception, both in the COVID-19 context, *see Nellson*, 2020 WL 1890670, at *4 (declining to adopt *Fletcher* and the exception to excuse the plaintiff's failure to exhaust), and *outside* the COVID-19 context. *See, e.g.*, *Doering v. Kelley*, No. 19-0045, 2019 WL 7500816, at *3 (E.D. Ark. Dec. 18, 2019) (recommending rejecting argument that grievances were unavailable due to allegedly dangerous living conditions; the department of corrections' grievance procedure "includes an 'emergency' or expedited process when a prisoner faces 'a substantial risk of personal injury'" that the plaintiff had not taken advantage of), *report and recommendation adopted*, 2020 WL 90495 (E.D. Ark. Jan. 7, 2020); *Morrow v. Capra*, No. 18-9749, 2019 WL 3716009, at *4 (S.D.N.Y. Aug. 7, 2019) ("Nor does . . . the allegedly 'ongoing and health threatening' nature of plaintiff's injuries, render plaintiff's administrative remedies unavailable."), *appeal dismissed*, No. 19-2905, 2020 WL 1188323 (2d Cir. Feb. 13, 2020); *Coleman v. Washington*, No. 18-13171, 2019 WL 6698063, at *4 (E.D. Mich. Oct. 31, 2019) ("Plaintiff improperly attempts to create an imminent danger exception to Section 1997e(a)."), *report and recommendation adopted sub nom. Coleman v. Romanowski*, 2019 WL 6683853 (E.D. Mich. Dec. 6, 2019); *Brown v. May*, No. 18-3347, 2019 WL 3225621, at *3 (D.S.C. June 27, 2019) ("The [PLRA's] exhaustion requirement

At least one Eleventh Circuit panel has held that there is no imminent-danger exception to exhaustion. The Plaintiffs disregard *Bracero v. Secretary, Florida Department of Corrections*, 748 F. App'x 200 (11th Cir. 2018), *cert. denied sub nom. Bracero v. Inch*, 139 S. Ct. 1631 (2019), the case that held it, as an "unpublished *pro se* prisoner case[] that do[es] not support Defendants' position at all." Pls.' Reply 29. Their handwaving is an anemic effort to distract from *Bracero*'s flat rejection of the same imminent danger exception the Plaintiffs want the Court to create. Like here, the plaintiff in *Bracero* did not comply with the offered administrative grievance procedure. From that point, the plaintiff advanced the Plaintiffs' exact argument—that his failure to exhaust should be excused because his life and safety were in danger. In particular, he claimed that the decision below was "not legally reasonable regarding the issue of exhaustion of remedies" for several reasons, including "*lack of remedy or relief in the face of the danger appellant still face*[*s*]." Br. of Appellant 16, *Bracero v. Sec'y, Fla. Dep't of Corr.*, No. 17-14278 (11th Cir. Mar. 12, 2018) (emphasis added, underlining omitted); *see also id.* at 1, 5 ("Complaint should not be dismissed when inmate allege danger." (*sic.*)). The Eleventh Circuit acknowledged that the argument was made and rejected it:

> *Bracero*'s other efforts *to overcome the exhaustion requirement* are unavailing. He asserts that his complaint should not have been dismissed before granting

---

will not be excused even where the plaintiff alleges he is in imminent danger."), *report and recommendation adopted as modified*, 2019 WL 3219378 (D.S.C. July 17, 2019); *Ramey v. Franco*, No. 16-2107, 2019 WL 699135, at *9 (E.D. Cal. Feb. 20, 2019) ("[P]laintiff's claim that his circumstances warranted an emergency appeal and therefore excused exhaustion is without merit."); *Williams v. Navarro*, No. 18-1964, 2018 WL 5112218, at *4 (S.D. Cal. Oct. 19, 2018) (rejecting inmate's argument that he was exempt from exhaustion due to "imminent danger"; "while 'imminent danger' is a statutory exception to § 1915(g)'s 3-strikes rule, the Court may not read 'exceptions into 42 U.S.C. § 1997e(a)'s statutory exhaustion requirement where Congress has provided otherwise" (cleaned up) (quoting *Booth*, 532 U.S. at 741, n.6)); *Hall v. Ballard*, No. 15-12543, 2018 WL 3709049, at *4 (S.D. W. Va. July 11, 2018) (recommending rejecting the argument that exhaustion was excused "due to his fear of imminent danger, death by [jail] staff" and concluding that plaintiff had not "demonstrated that the administrative remedies were unavailable to him"), *report and recommendation adopted*, 2018 WL 3676946 (S.D. W. Va. Aug. 2, 2018); *accord United States v. Rabadi*, No. 13-0353, 2020 WL 1862640, at *3 (S.D.N.Y. Apr. 14, 2020) ("[T]he vast majority of courts to have considered the issue [of statutory exhaustion under the federal First Step Act, 18 U.S.C. § 3582(c)(1)(A)] have concluded that a failure to satisfy [the statute]'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic." (cleaned up) (collecting seven cases denying motions for compassionate release where the inmate failed to exhaust even though the inmate cited the dangers of the risk of COVID-19 infection)).

injunctive relief because he alleged imminent danger, but *exhaustion is a prerequisite for any prisoner suit*.

*Bracero*, 748 F. App'x at 203 (emphases added). Put simply, the court concluded that the plaintiff's allegation that he faced imminent danger was an unavailing effort to overcome the exhaustion requirement.

The Plaintiffs offer the Court no principled reason to conclude differently. *Fletcher* is just as nonprecedential as *Bracero*, but *Bracero*—a twenty-month-old unanimous opinion by three Eleventh Circuit Judges (W. Pryor, Rosenbaum, Anderson)—is a far more suitable vehicle than a decade-old out-of-circuit decision for indicating how the Eleventh Circuit might treat the question of an imminent-danger exception in a future precedential decision. So too is *Pearson v. Taylor*, 665 F. App'x 858 (11th Cir. 2016), where another panel of three Eleventh Circuit Judges ( Jordan, Rosenbaum, J. Pryor) unanimously concluded that the plaintiff's unavailability arguments "do not appear to fall within any of [*Ross*'s] three 'exceptions' exhaustion." *Id.* at 868. Whether or not *Pearson* has "nothing to do with the question whether the timing of a grievance process can render the remedy 'unavailable,' " as the Plaintiffs claim in their one-sentence treatment of the decision, Pls.' Reply 29, is of no moment. *Pearson* signals the view that the three exceptions in *Ross* are an exhaustive list. That spells doom for the Plaintiffs, of course, because "imminent danger" is not on *Ross*'s list.

## CONCLUSION

In his concurring opinion in *Valentine*, Judge Higginson remarked that the plaintiffs "did not submit any grievance request to prison authorities before filing this lawsuit, and I am not aware of any case, nor do [the plaintiffs] or the district court cite one, in which a prisoner has been deemed compliant with the [PLRA] when there has been no attempt to file a grievance prior to suit in federal court." *Valentine*, 2020 WL 1934431, at *7 (Higginson, J., concurring in the judgment). This Court should not be the first. Under the PLRA, exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the procedure. *Booth*, 532 U.S. at 736; *Johnson*, 418 F.3d at 1156. The remedies a plaintiff must exhaust before filing suit in federal court need not be "speedy," or "effective"—they must only be available. *Nussle*, 534 U.S. at 524. The Court should find against the Plaintiffs at step two of *Turner*, because the record evidence shows that MDCR's administrative process was available to the Plaintiffs, and the Plaintiffs failed to exhaust their administrative remedies. Count I of the Complaint should be dismissed.

Dated: April 27, 2020.

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY

By: */s/ Zach Vosseler*
    ZACH VOSSELER
    Fla. Bar. No. 1008856
    zach@miamidade.gov

    BERNARD PASTOR
    Fla. Bar. No. 46582
    pastor@miamidade.gov

    ERICA ZARON
    Fla. Bar. No. 514489
    zaron@miamidade.gov

    EZRA S. GREENBERG
    Fla. Bar. No. 85018
    ezrag@miamidade.gov

    ANA A. VICIANA
    Fla. Bar. No. 115838
    anita@miamidade.gov

    JENNIFER L. HOCHSTADT
    Fla. Bar. No. 56035
    hochsta@miamidade.gov

    *Assistant County Attorneys*

    Stephen P. Clark Center
    111 N.W. First Street, Suite 2810
    Miami, Florida 33128
    (305) 375-5151

    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

On April 27, 2020, I electronically filed this document with the Clerk of Court via CM/ECF and served a copy on all counsel of record via CM/ECF.

    */s/ Zach Vosseler*
    ZACH VOSSELER
    Assistant County Attorney

REPLY IN SUPPORT OF MOTION TO DISMISS COUNT I FOR FAILURE TO EXHAUST