UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-Civ-21457-WILLIAMS

ANTHONY SWAIN; et al.,

    Plaintiffs,

v.

DANIEL JUNIOR, in his official capacity
as Director of the Miami-Dade Corrections
and Rehabilitation Department; MIAMI-
DADE COUNTY, FLORIDA,

    Defendants.
_____/

## SUPPLEMENTAL DECLARATION OF EDITH WRIGHT

Pursuant to 28 U.S.C. §1746, Edith Wright declares under penalty of perjury as follows:

1. My name is Edith Wright and I am over the age of eighteen. I previously signed a declaration for this case brought by current and former individuals residing at Metro West Detention Center ("MWDC") in which I stated that "together with the CHS and MDCR teams, I continue to review processes and measures in an effort to mitigate against COVID-19, and to protect the correctional patients in the detention facilities. With this in mind, measures and modifications to the aforementioned processes may be pursued in follow-up." Wright Decl. ¶ 17.

2. I am submitting this supplemental declaration to inform the Court of updated processes since the submission of my first declaration and to provide medical information regarding each of the six remaining Plaintiffs that is up to date.

3. My first declaration indicated that CHS recently obtained the resources to commence on-site testing for COVID-19. CHS and MDCR also secured multiple arrangements with various laboratories to expand access to increased testing and results.

1

4. Jackson Health System ("JHS") in conjunction with the CHS team and MDCR has pursued "contact tracing" to identify any potential close contact(s) of confirmed positive case(s).

5. Contact tracing is widely understood to assist in the prevention of the spread of infectious diseases, such as COVID-19. The process entails the identification of individuals who are *asymptomatic* but who may have been in close contact with a COVID-19 positive person. Identification is a key strategy in preventing the spread of COVID-19 because, upon identification of close contacts, asymptomatic individuals who may nonetheless be positive carriers can quarantine and receive monitoring.

6. My understanding is that the CDC guidelines for correctional facilities do not require contact tracing. It is also my understanding that the contact tracing process does not necessarily contemplate testing of asymptomatic individuals who had close contacts, just quarantine. Regardless, the topic of contact tracing was raised by the health professionals at CHS and JHS, in collaboration with MDCR, and the decision was made to not only pursue contact tracing and quarantine, but also the testing of asymptomatic individuals in quarantine.

7. The health professionals at CHS and JHS, as well as MDCR, understood that as a result of testing asymptomatic potential close contacts, there would be a substantial increase in the numbers of inmates who tested positive. The most recent numbers reported to the Court on April 25, 2020 were consistent with this expectation, reflecting the test results from those *asymptomatic* individuals in quarantine at MWDC and identified as having had a potential close contact with a positive case.

8. While the number of positive test results represents a significant increase as compared with prior reporting, it must be emphasized that those individuals identified as potential close contacts and tested on April 19 and 20 pursuant to the contact tracing process were

2

asymptomatic individuals who were only tested because CHS and MDCR elected to pursue contact tracing when the resources became available to do so.

9. As a result of the contact tracing efforts, 398 individuals at MWDC were identified, put in quarantine at MWDC, and then received testing as described below. During quarantine, individuals continue to receive daily temperature checks and COVID-19 screening as well as rounding by medical professionals.

10. From Sunday April 19 through Monday April 20, 2020, CHS nurses, in conjunction with additional nursing staff deployed from JHS, collected testing specimens from 398 *asymptomatic* individuals residing in quarantine at MWDC.

11. Based on test results, on April 25, 2020, MDCR relocated various individuals who had been in quarantine due to their identification as a potential close contact of a positive case. Individuals with negative test results were separated from individuals with positive test results in accordance with CDC guidelines. Individuals with negative test results are in quarantine and will be closely monitored in quarantine for another fourteen (14) days. The same processes for quarantine already described in my prior declaration will continue to apply. Individuals with positive test results will continue to reside at MWDC and are medically isolated as a cohort only with other positive individuals. Individuals with positive test results will continue to receive close monitoring, with twice daily temperature checks as well as a daily medical assessment. Should they develop any symptoms indicating a hospital transfer is in order, such transfer will occur immediately. Positive patients will be seen at a separate clinic at MWDC from non-positive patients, which is open each day.

12. To date, despite an increase in positive tests, there has not been a commensurate increase in symptomatic individuals. The vast majority of individuals tested to date have been asymptomatic.

13. Since the COVID-19 pandemic began, there have been three inmate residents of MWDC hospitalized with COVID-19. All have since returned to MWDC, and there have been no mortalities.

14. Beginning on April 28 through and including April 30, 2020, there will be onsite testing at MWDC for all MDCR staff identified as having worked in the units where positive cases have been identified. This is in addition to the testing which has already been available through other County testing sites and community providers. It is also in addition to the daily screening that all staff go through before entering the facility.

15. Any inmate who is discharged from MWDC will receive instructions advising that in an abundance of caution, and so as to not unknowingly spread COVID-19 to others, they should strictly adhere to a voluntary self-imposed quarantine for fourteen (14) days. The Florida Department of Health will be notified if any inmate is known to be positive upon release and the last known contact and address information will also be provided.

16. Together with the CHS and MDCR teams, I continue to review processes and measures in an effort to mitigate against COVID-19, and to protect the individuals in the detention facilities. With this in mind, measures and modifications to the aforementioned processes may be pursued in follow-up. CHS will continue to provide care to individuals residing at MWDC and will address the COVID-19 pandemic with or without a court order in place. CHS will not withdraw any of the additional protections that have been put been in place to protect and care for inmates as a result of COVID-19 unless it is medically appropriate to do so under the

4

circumstances. JHS will continue to provide additional resources and infectious disease expertise to assist with the measures being taken.

17.  CHS in collaboration with MDCR has undertaken the various measures described above, including contact tracing and testing, in an effort to protect the individuals in MWDC and to flatten the curve of COVID-19 transmission.

18.  To provide the Court with up to date information, I reviewed the Plaintiffs' medical charts on April 26, 2020. I previously reviewed Plaintiffs' declarations. Any claim that Plaintiffs submitted sick calls related to COVID-19 symptoms and were denied prompt treatment is untrue. I specifically reviewed all sick call requests and responses submitted by each named Plaintiff since March 1, 2020.

   a.  Alen Blanco put in sick calls on 3/3, 3/12, and 3/19 variously related to neck and back pain and headache. At the time of his declaration (April 4, 2020), he had not put in any sick calls related to trouble breathing, dry cough, sore throat, or chest pain. On April 7, 2020, he submitted a sick call request for chest pain, was seen the same day, but then denied chest pain to the nurse and had no temperature or COVID-19 symptoms.

   b.  Peter Bernal has two sick calls since March 1, 2020. The first, on March 13, 2020, was to request vaccines and the second, on March 18, 2020, he complained that he had trouble sleeping. He did not put in a sick call for a sore throat in the week prior to filing his declaration as he claims.

   c.  Bayardo Cruz put in a sick call request on April 12 but advised that he had no shortness of breath; he simply wanted a prescription inhaler. He did not present with COVID-19 symptoms or fever. Cruz refused his temperature checks on April 17 and April 21. Furthermore, Cruz did not have a documented medical history of moderate or severe asthma at intake and up to

the time this lawsuit was filed; he was added to the medical database as having asthma on April 24, 2020 and only after submitting asthma complaints that post-dated his declaration.

    d.    Deondre Willis has not made any sick call requests during March or April 2020.

    e.    Ronniel Flores-Martinez submitted a sick call request on March 31 and was seen by a nurse on April 1, but refused evaluation because he was sleeping. His medical records show that he is a diabetic, but he frequently refuses diabetes care, including blood sugar checks and he is also non-compliant with his special diabetic diet.

    f.    Anthony Swain is housed in the medical unit where medical staff and providers are present 24 hours a day, 7 days a weeks. He has not made any complaints of COVID-19 related symptoms (chest pain, cough, fever, etc.) nor have any been documented in his regular evaluations.

    19.    Based on my review of Plaintiffs' medical records, none of the Plaintiffs have had any symptoms consistent with COVID-19. None of the Plaintiffs have been tested for COVID-19 because there have been no confirmed positive cases of COVID-19 in any of their housing units and because none of them have exhibited symptoms consistent with COVID-19. None of Plaintiffs' housing units have been placed on quarantine because there have been no suspected COVID-19 cases in any of their housing units.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___27th___ day of April, 2020.

_____ 4/27/2020
**Director Edith Wright**