## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-Civ-21457-WILLIAMS

ANTHONY SWAIN, *et al.*,

    Plaintiffs,

v.

DANIEL JUNIOR, in his official capacity
as Director of the Miami-Dade Corrections
and Rehabilitation Department; MIAMI-
DADE COUNTY, FLORIDA,

    Defendants.
_____/

### SUPPLEMENTAL DECLARATION OF DIRECTOR DANIEL J. JUNIOR

Pursuant to 28 U.S.C. §1746, Daniel J. Junior, declares under penalty of perjury as follows:

1. My name is Daniel J. Junior and I am over the age of eighteen. This supplements the Declaration that I submitted to the Court on April 21, 2020 [ECF NO. 65-1].

2. The continued goal of Miami-Dade Corrections and Rehabilitation Department ("MDCR"), informed by guidance from the CDC, and medical and public health professionals, remains taking all reasonable measures in its daily efforts to mitigate the spread of COVID-19. MDCR will continue to improve and/or update measures taken as the situation warrants.

3. This Supplemental Declaration summarizes the many steps and procedures implemented at Metro West Detention Center ("MWDC") since April 21, 2020.

4. As the Director of MDCR, I personally believe each and every measure implemented at MWDC and other MDCR facilities to address the COVID-19 pandemic have been reasonable, thoughtful, and proactive to deal with the rapidly-evolving and changing events and developments over the past two months. Each of those measures and procedures have been made

after consultation with, among others, Corrections Health Services (CHS) and other medical and public health professionals.

5. In early March, 2020, MDCR began looking into purchasing plasma air ionizers for installation in the air handler units at its facilities. Plasma Air solutions use bipolar ionization technology to proactively purify indoor air at the source of contamination by producing a natural bio-climate rich in positive and negative oxygen ions. The negative ions contain an extra electron while the positive ions are missing an electron resulting in an unstable condition. In an effort to re-stabilize, these bipolar ions seek out atoms and molecules in the air to trade electrons with, effectively neutralizing and destroying bacteria and virus cells. After identifying a vendor, in early April 2020, MDCR purchased 60 Plasma Air Ionizers, some of which were received on April 14, 2020. Installation at all MDCR facilities commenced on April 17, 2020. MDCR has installed 30 units system wide, and an additional 30 more have been ordered to ensure all housing units at MWDC are equipped with these devices. As of today, these devices have been installed in 9 housing units, both medical clinics, and at the administrative offices at MWDC. The remaining units are scheduled to arrive on April 30, 2020, and the installation will proceed promptly thereafter.

6. Additionally, MDCR has installed body heat cameras at MWDC and other MDCR facilities. These cameras are positioned strategically at key entrance/exit points at MWDC and thermally scan all individuals inside the facilities and immediately display an individual's body temperature. An alarm will sound if someone's temperature is above 100 degrees, and this threshold was adjusted based on recommendations from CHS. This system is fully operational at MWDC: two body heat cameras were installed there on April 22, 2020, both in stairwells leading

to the recreation yards, which all inmates visit for recreation and/or mandatory weekly cleaning and disinfecting of the housing units, and captures the overwhelming majority of inmate traffic.

7. This lawsuit has not affected MDCR's decisions and measures implemented during the past three weeks. Virtually all of the measures taken after April 5, 2020 would have been taken, regardless of the allegations made in this case. The only aspect of the TRO that had not been in place prior to its entry was the Court-ordered use of paper towels and liquid soap. With the exception of these two items, MDCR was already in compliance with each and every provision of the TRO before it was entered. Notwithstanding, MDCR will not discontinue any of the requirements in the TRO in the absence of a court order. In fact, MDCR has voluntarily exceeded what the TRO requires in many respects, including but not limited to, testing of asymptomatic inmates and staff who have been identified as a potential close contact of a positive case, daily monitoring and temperature checks of all inmates in their housing units, quarantining of new arrestees, and the purchase of additional air filtration technology explained above. When additional testing capabilities became available, MDCR collaborated with JHS and CHS in the administration of testing of asymptomatic inmates who had been a potential close contact of a positive case even though we knew it would show an increase in numbers that we would then have to report to the Court. We did this because the safety of inmates and staff is our top priority. MDCR does not require a court order to take reasonable steps to protect inmates in our custody from COVID-19 and will continue to do so even in the absence of a court order.

8. Based on test results, on April 25, 2020, MDCR relocated various individuals who had been in quarantine due to their identification as a potential close contact of a positive case. Prior to movement, the affected housing units were cleaned, sanitized and disinfected. Individuals with negative test results were separated from individuals with positive test results in accordance

with CDC guidelines. Individuals with negative test results are in quarantine, and will be closely monitored in quarantine for another fourteen (14) days. The same processes for quarantine already described will continue to apply. Individuals with positive test results continue to reside at MWDC, and are medically isolated as a cohort with only other positive individuals. Individuals with positive test results will continue to receive close monitoring and should they develop any symptoms indicating a hospital transfer is in order, such will occur immediately. Positive patients will be seen at a separate clinic at MWDC, which is open each day. Individuals with positive results will also receive a new mask daily.

9. Additional measures implemented include MDCR staff participating in a best practices training seminar conducted by Jackson Heath System's infectious control team regarding enhanced sanitizing and cleaning procedures.

10. As of April 20, 2020, all inmates are issued two (2) masks per week, and all inmates who have tested positive for COVID-19 are issued new masks daily. Last week, all staff assigned to interact or supervise with any inmates who have tested positive for COVID-19 were issued face shields.

11. Beginning on April 28, 2020 through and including April 30, 2020, there will be onsite testing at MWDC for all employees identified as having worked in the units where positive cases have been identified. This is in addition to the ongoing testing of staff through County testing sites, first responder testing sites, and community provider site.

12. MDCR will continue to assess measures in response to the COVID-19 pandemic and will continue to update processes as appropriate.

13. Our policies have constantly been updated on a nearly daily basis to be responsive in addressing this dynamic situation. MDCR is concerned that an imposed and predetermined plan

may undermine the flexibility which is needed to swiftly and appropriately respond as new information and resources become available.

14. I am aware that Plaintiffs have submitted several additional declarations from MWDC inmates, many of whom were released from MDCR's custody. In any event, several of the declarations confirm how MDCR has implemented myriad precautionary measures at MWDC. Some claim, anecdotally, that MDCR officers are not following procedures and policies. I am not aware of any such infractions. Nevertheless, as I described in my earlier Declaration, MDCR has thoroughly informed and trained its officers on the procedures, and have additionally deployed our internal auditing team to ensure compliance throughout the facility. Of course, if a particular officer is found to have violated a procedure, MDCR will promptly investigate and, if sustained, take appropriate corrective action.

15. Any inmate who is discharged from MWDC will receive instructions advising that they should voluntarily self-quarantine for fourteen (14) days after release. The Florida Department of Health will be advised if any inmate is known to be positive upon release and they will be provided with the last known contact and address information.

16. The process of reducing the inmate population remains ongoing. In my previous declaration I advised that more than 640 inmates had been released since March 12, 2020 as part of overall population reduction measures being implemented in the state criminal court system. As of yesterday, in total, 894 inmates have been released pursuant to this collaborative process and orders issued by the state criminal courts.

17. These reductions, as of this morning, have brought the population of MWDC down to 1,556. As a function of this ongoing reduction, MWDC is now operating more than 30% below its inmate capacity.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of April, 2020.

_____
DANIEL J. JUNIOR
Director, Miami-Dade Corrections and
Rehabilitation Department