UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-21457-WILLIAMS/TORRES

ANTHONY SWAIN, *et al.*,
        Plaintiffs,

v.

DANIEL JUNIOR, *in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department*, and
MIAMI-DADE COUNTY,
        Defendants.
_____/

**DEFENDANTS' OMNIBUS RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO FILE MOTION TO CONVENE THREE-JUDGE PANEL AND TO RELEASE BAYARDO CRUZ ON BAIL <u>PENDING REVIEW OF THE CLASS ACTION HABEAS PETITION</u>**

Defendants, Miami-Dade Corrections and Rehabilitation Department Director Daniel Junior and Miami-Dade County, hereby respond to Plaintiffs' Motion for Leave to File Motion to Convene Three-Judge Panel (the "Three-Judge Panel Motion") [ECF No. 84] and Motion to Release Bayardo Cruz on Bail Pending Review of the Class Action Habeas Petition (the "Bail Motion") [ECF No. 109]. The Court is without jurisdiction to hear either motion because of the Eleventh Circuit Court's May 5, 2020 order granting a stay pending appeal. Even absent this jurisdictional bar, Eleventh Circuit and Supreme Court authority foreclose the relief sought in both motions. The Court must therefore deny them as a matter of law.

## BACKGROUND

This case has been placed in a materially different posture in the days since Plaintiffs filed the Three-Judge Panel Motion and the Bail Motion. Two weeks ago, Defendants were operating under the mandate of this Court's April 7 temporary restraining order [ECF No. 25, amended by

ECF No. 52], which the Court issued just two days after Plaintiffs filed this lawsuit. Then, on April 29, this Court entered an Order Granting in Part and Denying in Part Plaintiffs' Emergency Motion for a Preliminary Injunction [ECF No. 100]. The Court's preliminary injunction order found that Plaintiffs were likely to succeed on their Eighth Amendment claim. *Id.* at 37-41.

Defendants exercised their right to interlocutory review of the preliminary injunction order and sought a stay pending appeal from the Eleventh Circuit Court of Appeals. On May 5, the Eleventh Circuit stayed this Court's preliminary injunction order, reasoning that Defendants "are likely to prevail on appeal because the district court likely committed errors of law in granting the preliminary injunction." *Swain v. Junior*, — F.3d —, 2020 WL 2161317, at *4 (11th Cir. May 5, 2020). The stay panel found, *inter alia*, that this Court 1) "incorrectly collapsed the subjective and objective components" of deliberate indifference; 2) mischaracterized the increase in infections as "proof that the defendants deliberately disregarded an intolerable risk"; and 3) erroneously allowed "Metro West's inability to 'achieve meaningful social distancing'" to evince "a reckless state of mind." *Id*. The Notice of Appeal and the Eleventh Circuit's stay order divest this Court of jurisdiction to decide the Motions. Even without a jurisdictional bar, the Motions should be denied because the relief they seek is unavailable to Plaintiffs as a matter of law.

## ARGUMENT

**I.      This Court Lacks Jurisdiction to Rule on the Motions Because the Underlying Issues are Currently on Appeal**

"The filing of a notice of appeal is an event of jurisdictional significance." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). It "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id*.; *see also Price v. Dunn*, 139 S. Ct. 1533, 1537-38 (2019) ("There is no question that

the District Court was deprived of jurisdiction to hear the identical claim and award the exact same relief petitioner sought from the Eleventh Circuit.").

Defendants took an interlocutory appeal of the preliminary injunction order pursuant to 28 U.S.C. §1292(a)(1).  At this procedural stage, the Court maintains jurisdiction over the case, but only over matters **_unrelated_** to the order on appeal.  *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003); *see also Dayton Indep. Sch. Dist. v. U.S. Mineral Prod. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) ("When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case.").  The propriety of injunctive relief, including the predicate deliberate indifference findings necessary to grant that relief, is very much at issue on appeal.  Both of the motions now before the Court are bound up (i.e., "related") with the Court's findings on preliminary injunctive relief and the Notice of Appeal therefore divests the Court or jurisdiction.[1]  The Eleventh Circuit's order staying the injunction further limits this Court's power to take any action that would advance the injunctive relief that Plaintiffs seek.  *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011) (observing that a trial court's powers to continue litigation while an injunction order is on appeal are limited when an "appellate court enters an order staying the lower court until the appeal has been completed" (citing 11A Wright & Miller, *Federal Practice and Procedure* § 2962, at 438–39 (2d ed. 1995))).

To illustrate, Plaintiffs' likelihood of success on the merits, including but not limited to a finding of deliberate indifference, is a threshold issue in both Motions: to grant either the release

---

[1] The preliminary injunction order denied Plaintiffs habeas relief.  [ECF No. 100 at 52].  Therefore, before a court could consider Plaintiff Cruz's release, Plaintiffs needed to either cross-appeal on this issue, or file a motion pursuant to Federal Rule of Civil Procedure 62.1 and then seek limited remand on this issue from the appellate court pursuant to Federal Rule of Appellate Procedure 12.1.  Neither has occurred.

3

of Cruz or convene a three-judge panel, the Court *must* make an initial finding that, despite Defendants' efforts to contain and prevent the spread of COVID-19, Defendants are nonetheless deliberately indifferent. This is precisely the question now pending before the Eleventh Circuit. As such, given the current procedural posture, this Court is without jurisdiction to decide either motion because both require consideration of matters directly **_related to the order on appeal_**.

> A. *The Court's Determination as to the Propriety of a Three-Judge Panel Requires a Finding that Defendants were Deliberately Indifferent*

Congress passed the Prison Litigation Reform Act (PLRA) as a means of limiting "the scope of prospective relief that courts may grant in cases challenging prison conditions." *Rowe v. Jones*, 483 F.3d 791, 794 (11th Cir. 2007). Any prospective relief granted in such circumstances "shall extend no further than necessary to correct the violation of the Federal right." *Id.* (quoting 18 U.S.C. § 3626(a)(1)(A)).

Plaintiffs seek to have this Court initiate the obscure and rarely used prisoner release portion of the PLRA. A plaintiff may only seek such relief once "a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order." 18 U.S.C. § 3626 (a)(3)(A)(i). The federal right at issue here, and which forms the basis of Plaintiffs' request for a three-judge panel, relates to the conditions of confinement at Metro West. In order to prove liability on their Eighth Amendment claim, Plaintiffs must establish that the jailer possessed a state of mind equivalent to "deliberate indifference." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).

Given the pendency of the appeal, the Court cannot make such a determination. The Eleventh Circuit's order staying this court's preliminary injunction portends that Defendants are likely to prevail on appeal and that it will likely reverse this Court's preliminary injunction order

4

because of Plaintiffs' failure to establish deliberate indifference. *See Swain*, 2020 WL 2161317, at *5.

Deliberate indifference is thus bound up in the claims that are on appeal and currently stayed. That is indeed the focus of the appeal: for the parties to establish whether Defendants have been deliberately indifferent to Plaintiffs' Eighth Amendment rights. As a result, this Court is necessarily hamstrung on the request for a three-judge panel because it would require a threshold finding of deliberate indifference. *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1065 (11th Cir. 2001) ("The defendants' "notice of appeal divested the district court of jurisdiction to enter an order that directly impacted one of the questions proffered for review."); *Ramirez v. Fla. Dep't of Corr.*, 684 F. App'x 927 (11th Cir. 2017) (affirming district court's dismissal of a prisoner's second habeas petition because the first petition was on appeal and the Eleventh Circuit "and the district court cannot entertain simultaneous challenges to the same conviction."); *cf. LSSI Data Corp. v. Comcast Phone, LLC*, No. 11-1246, 2012 WL 13008726, at *2 (N.D. Ga. Feb. 22, 2012) (holding that there was jurisdiction to require a defendant to answer a complaint while an injunction order was on appeal because answering a complaint "is not the kind of action closely related to the claims on appeal that a district court might be wise to refrain from pending an interlocutory appeal").

> B. *The Cannot Determine Cruz's Request for Bail Unless Defendants Were Deliberately Indifferent to his Constitutional Rights*

Plaintiffs admits that before Cruz can seek bail pending habeas relief from a federal court, he must show that his jailer was deliberately indifferent. [ECF No. 109 at 2]. Filed before the Eleventh Circuit entered its stay, the Bail Motion relied upon the preliminary injunction order's findings on deliberate indifference. *See id.* ("this Court determined that Plaintiffs made a 'clear

showing' on both the subjective and objective components of their Eighth Amendment deliberate indifferent claim").

As with the Three-Judge Panel Motion, the Bail Motion expressly hinges upon deliberate indifference as a threshold matter. And for the very same reason of overlapping substance, the Court has no jurisdiction to decide the Bail Motion while the appeal remains pending.

## II.     A Three-Judge Panel is Unwarranted in this Case

Even if not jurisdictionally barred, the Three-Judge Panel Motion fails because none of the requirements for convening the panel are satisfied here. First, this relief only applies in cases where ***overcrowding*** was the definitive source of constitutional deprivations. 18 U.S.C. § 3626 (a)(3)(E)(i) (permitting a three-judge court to enter a prisoner release order "only if the court finds by clear and convincing evidence that—crowding is the primary cause of the violation of a Federal right"). Metro West, however, continues to function well below capacity. [ECF No. 113] (reflecting Metro West's population on May 4, 2020, as 1,484, which is below 70% capacity).

There are only two reported cases in the country where a three-judge panel was appointed to consider prisoner release under 18 U.S.C. § 3626(a)(3).[2] In the first, *Brown v. Plata*, 563 U.S. 493, 502 (2011), the record of overcrowding and failure of less intrusive measures could not be clearer: the population consistently hovered around 200% design capacity for 11 years, which the Supreme Court described as "exceptional." *Id.* In the second, overcrowding was rampant at two Ohio correctional facilities, with one facility exceeding its capacity by 160 inmates, while the other

---

[2] It appears that in 2010 the Department of Justice successfully moved to convene a three-judge panel to remedy systemic and long-standing overcrowding in the Cook County Jail. *United States v. Cook County*, 761 F. Supp. 2d 794, 796 (N.D. Ill. 2011). However, the district court's reasoning for convening the panel is unknown because there is not a reported decision in the Westlaw database nor an order on the docket in the underlying case that addresses it.

6

was at 160% of its original capacity. *Roberts v. County of Mahoning*, 495 F. Supp. 2d 670, 679-80 (N.D. Ohio 2005).

By contrast, as of April 27, Metro West was operating at 30% below its rated inmate capacity. [ECF No. 92-2 at ¶¶ 16, 17].[3] Definitionally, it is not **overcrowded**. The density at Metro West is by no means comparable to the housing situations in *Plata* and *Roberts*. Our research has not found one case convening a three-judge panel to reduce the population of a facility operating **under capacity**. Indeed, the overwhelming majority of courts have denied appointment of a three-judge panel to remedy prison conditions. *See, e.g.*, *Mays v. Dart*, No. 20-2134, 2020 WL 1987007, at *34 (N.D. Ill. Apr. 27, 2020); *Huerta v. Ewing*, No. 16-0397, 2018 WL 780509, at *2 (S.D. Ind. Feb. 8, 2018); *Gillette v. Prosper*, No. 14-0110, 2016 WL 912195, at *8 (D.V.I. Mar. 4, 2016); *Rigsby v. Arizona*, No. 11-1696, 2013 WL 1283778 (D. Ariz. Mar. 28, 2013).

Given that Metro West continues to function well below its rated inmate capacity, there is neither need nor cause to convene a three-judge panel. Other courts presented with identical requests have found that COVID-19 cases like this one are not suited for the convening of three-judge panels to consider entry of population reduction orders. Indeed, the three-judge panel from *Plata* recently declined to consider a population reduction request when state prisoners sought release due to COVID-19. *Coleman v. Newsom*, No. 90- 0520, 2020 WL 1675775, at *5 (E.D. Cal. Apr. 4, 2020) (declining to modify the prior remedial order entered by the three-judge court because the harm plaintiffs faced was "rooted in a significantly different underlying cause than what was before [them] in the prior three-judge court proceedings"). The outcome was no different

---

[3] On April 21, the Metro West inmate population was 1,644 of its rated inmate capacity of 2,234, or 73%. [ECF No. 65-1 ¶ 17]. By May 1, the population had declined to 1,484, bringing the facility to 66% capacity. [ECF No. 113]. The expectation is that the population will continue to shrink over time as MDCR's criminal justice partners prioritize release of prisoners where possible. [ECF No. 92-2 at ¶ 16].

when just a few weeks later the California inmates raised the matter anew to a single judge. *Plata v. Newsom*, No. 01-1351, 2020 WL 1908776, at *11 (N.D. Cal. Apr. 17, 2020) ("Because the Court has found no constitutional violation, the Court also finds it inappropriate to 'sua sponte request the convening of a three-judge court to determine whether a prisoner release order should be entered.'"); *see also Money v. Pritzker*, No. 20- 2093, 2020 WL 1830660, at *11 (N.D. Ill. Apr. 10, 2020) (characterizing the *Plata* decision as largely irrelevant to the Illinois inmates' request for release during the COVID-19 pandemic). In the absence of any overcrowding, this rarely used remedy should not be deployed here.

Second, the Court may only convene a three-judge court when Defendants have had a "reasonable amount of time to comply with the previous court orders." 18 U.S.C. § 3626(a)(3)(A)(ii) (emphasis added). Plaintiffs claim that Defendants had a reasonable amount of time to comply within the ***eighteen days*** that transpired between the entry of the TRO ([ECF No. 25], entered April 7) and the date the request to convene the panel was formally made ([ECF No. 85], entered April 25). To define what constitutes "reasonable" in this context, it is instructive to examine the facts that preceded the appointment of three-judge panels under § 3626(a)(3).

*Plata* addressed two consolidated cases, one involving the state of California's mentally ill prisoners and the other involving prisoners with serious medical concerns. 563 U.S. at 507. The conditions of that prison system were undeniably shocking, and yet a three-judge panel was not convened until 12 years ***after*** a special master was appointed and entered 70 orders in one case, and 5 years ***after*** the approval of a consent decree in the other. *Id.* at 514-15. The facts in *Roberts* are similar. A three-judge panel was convened more than a year after the district court concluded that the conditions of confinement violated the Eighth Amendment, and after a special master and working group had been appointed and failed to remedy the situation. *Roberts v. County of*

*Mahoning*, 495 F. Supp. 2d 694, 695, 697 (N.D. Ohio 2006).  In light of these examples, 18 days is hardly a "reasonable amount of time."  Even if Defendants had ignored the terms of the TRO entirely, which, of course they did not, convening a three-judge panel on the basis of 18 days of alleged non-compliance would be unprecedented.[4]

Third, the PLRA mandates that a three-judge panel may be convened only after non-compliance with "previous court **order*s*.*" 18 U.S.C. § 3626(a)(3)(A)(ii) (emphasis added).  That multiple orders preceded the convening of three-judge panels in *Plata* and *Roberts* signals adherence to Congress's clear pluralization of the word "order."  Obviously, Congress intended the extreme remedy of release only following repeated acts of non-compliance with lesser mandates.  By stark contrast, Plaintiffs invoke that process based solely on their baseless contention that Defendants did not comply with the TRO.  Even if this Court's findings were not now subject to appellate jurisdiction, Plaintiffs' request to convene a three-judge panel to consider releasing prisoners—predicated upon baseless claims of non-compliance, with only a single order in place for only 18 days—is without precedent and should be denied.

Plaintiffs' last argument highlights the impropriety of their request.  At a time when only the TRO was in place, Plaintiffs argued that a three-judge panel was necessary because "[t]here are no further remedial orders that can be entered." [ECF No. 85 at 20].  Plaintiffs seized on Defendants' argument that a municipal jailer cannot unilaterally reduce the jail population as

---

[4] Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 3] requested a three-judge panel only if the ***preliminary injunction*** failed to remedy the deprivation of federal rights.  *Compare* ECF No. 3-2 (proposed order on TRO without three-judge panel language) *with* ECF No. 3-3 at 3 (proposed order on PI with three-judge panel language).  At that point at least, Plaintiffs appeared to have recognized the impropriety and unprecedented nature of convening a three-judge panel based on a TRO that was entered without adversarial proceedings.  The TRO eventually entered expressly noted that it did not make a finding of wrongdoing on the part of any Defendant because it was entirely based on a one-sided evidentiary record.  ECF No. 25 ¶ 6.

evidence that nothing short of a blanket release of inmates could remedy their perceived constitutional deprivations. Of course, it was only four days later that this Court ordered what it obviously considered to be a number of lesser remedial measures; clearly the Court believed that "less intrusive relief" remained available when Plaintiffs tried to leap ahead and make yet another attempt at wholesale release. 18 U.S.C. § 3626(a)(3)(A)(i). Of course, Defendants dispute that a court order was ever necessary to require them to respond to the COVID-19 pandemic. But even assuming the temporary restraining order was necessary, it would be premature to convene a three-judge panel based on a record spanning 18 days. As *Plata* explained, convening a panel to consider release is not the first stop, but rather the last resort, to remedying prison conditions under the PLRA. 563 U.S. at 514.

### III. Plaintiff Cruz is not Entitled to Release on Bail

This Court's preliminary injunction order found that "Plaintiffs have not shown a likelihood of success on the merits as to their 2241 claim seeking the extraordinary remedy of releasing all medically vulnerable inmates at Metro West because the Eleventh Circuit has held that 'relief of an Eighth Amendment violation does not include release from confinement.'" [ECF No. 100 at 45] (citing *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990)).[5]  Yet,

---

[5] The Court observes in dicta that *Gomez* places the Eleventh Circuit on the minority side of a circuit split about whether an inmate who challenges conditions of confinement can seek release pursuant to a § 2241 habeas petition. [ECF No 100 at 46]. The Court further notes that *Gomez* "may not be as clear cut as Defendants suppose" because the plaintiff there could receive the medical treatment he needed at another facility, thereby implying that release under different circumstances was still possible. *Id.* at 46-47. Despite these off-hand observations, there is no principled reason to suggest that the primary holding in *Gomez*—that inmates challenging the conditions of their confinement may not seek release as a remedy—is no longer good law in this circuit. Ignoring *Gomez* is especially unwarranted given that in a decision that predates it by more than a decade, the former Fifth Circuit rejected, without condition, a prisoner's claim "that he is entitled to release because the treatment accorded him by [] prison officials violated the Eighth Amendment." *Cook v. Hanberry*, 596 F.3d 658, 659-60 (5th Cir. 1979). The court held that "[a]ssuming arguendo that his allegations of mistreatment demonstrate cruel and unusual

Plaintiff Cruz now seeks reconsideration of that order and immediate release.  But his argument in support of release remains the same [ECF No. 109 at 1], with the only "additional" fact being that an inmate housed in a different unit at Metro West passed away on April 29.  *Id.* at 2; [ECF No. 109-3].  However, this development is not new evidence supporting Cruz's case for release. Evidence of numerous inmates testing positive for COVID-19 was already in the record at the time the Court denied release as was evidence of a mortality rate for COVID-19.  The death of an inmate, however tragic, has nothing to do with the central issue of deliberate indifference.  *Swain*, 2020 WL 2161317, at *4 ("resultant harm does not establish a liable state of mind.") (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).  Reconsideration of the Court's decision on release is improper.

Reconsideration requires a moving party to identify "new issues, not merely address issues litigated previously."  *FTC*, No. 18-60379, 2018 WL 6978624, at *1 (S.D. Fla. Oct. 23, 2018) (Moore, J.); *Guevara v. NCL (Bahamas) Ltd.*, No. 15-24294-CIV, 2017 WL 6597980, at *1 (S.D. Fla. May 26, 2017) (denying reconsideration where the plaintiff merely relitigated stale arguments) (Williams, J.).  Only three grounds justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice."  *Id.*; *Offices Togolais des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999), *aff'd*, 228 F.3d 414 (11th Cir. 2000).

None of the reasons for reconsideration exist here.  There has been no intervening change in the law that would justify the Court reversing its decision to deny release.  The only legal change has come in the form of the Eleventh Circuit's stay order, which supports a denial of release.  The

---

punishment, the petitioner ***still would not be entitled to release from prison***." *Id.* at 660 (emphasis added).

Eleventh Circuit's findings, including that Plaintiffs are unlikely to establish deliberate indifference, also confirm that this Court's decision to deny release was proper, and obviously not the kind of "clear error or manifest injustice" in need of correction. Finally, there is no new evidence: the passing of another inmate in another housing fails to add anything to the assessment of Mr. Cruz's renewed request to be released on bail. Motions for reconsideration are not designed as a "platform to relitigate arguments previously considered and rejected." *Sierra Equity Grp., Inc. v. White Oak Equity Partners*, 687 F. Supp. 2d 1322, 1324 (S.D. Fla. 2009). The Court need not entertain this request that it simply change its mind on release.

Lastly, the extreme relief sought is substantively unavailable. Plaintiffs identify two cases that they claim support release on bail: *Gomez* and *Wilson v. Secretary, Department of Corrections*, No. 15-2084, 2016 WL 10891523, at *2 (M.D. Fla. Dec. 15, 2016). Neither supports their argument; indeed, both cases absolutely foreclose bail under the circumstances presented here.

*Gomez* explains that a court may grant bail pending habeas corpus only when: a) there is a "likelihood of success on the merits of a substantial constitutional claim"; and b) "***extraordinary and exceptional***" circumstances exist which makes "the grant of bail necessary to preserve the effectiveness of the habeas relief sought." 899 F.2d at 1125 (emphasis added). Ultimately the Eleventh Circuit **reversed the district court's order granting bail** because release of any kind is not an option for an inmate who brings an Eighth Amendment conditions-of-confinement claim. *Id.* at 1126. The Court reasoned:

> The grant of bail pending consideration of his petition for writ of habeas corpus gave Gomez more relief on a preliminary basis than he would be entitled to if he ultimately prevails on his constitutional claims. Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party.

*Id.* at 1127. Plaintiffs are traveling down a path that is likely to end without release because release is not a viable remedy for a conditions-of-confinement claim in the Eleventh Circuit. Therefore, and in accordance with the holding in *Gomez*, this Court may not grant Plaintiff Cruz release on bail now because it is highly unlikely that he will prevail on his habeas petition and secure release later, when this case concludes.

The district court in *Wilson* also denied an inmate release pending disposition of a habeas petition. 2016 WL 10891523, at *2. The inmate had failed to overcome the "formidable barrier" to release in that he had not shown his case involved "special circumstances" and that there was "a clear and readily evident entitlement to relief on the merits of his habeas claim" that warranted "'special treatment in the interest of justice.'" *Id.* at *2-3 (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964)). Confirming what this Court already established as law in *Gomez*, *Wilson* highlights the misguided nature of Plaintiffs' request.

Release on bail is not only wholly inappropriate because of the stay order, but also because it would create a remedy that does not exist in this Circuit—release based on an Eighth Amendment claim for unconstitutional conditions of confinement. The Eleventh Circuit's stay order eviscerates any realistic argument that Plaintiffs are likely to succeed on the merits of a "substantial constitutional claim." *Gomez*, 899 F.2d at 1125. Nor is Cruz's situation so extraordinary and exceptional that this Court may override state law and grant him bail that he is statutorily unentitled to given his status as a Violent Felony Offender of Special Concern [ECF No. 36 at 9 n.5]. *See Wilson*, 2020 WL 10891523, at *2 ("because a habeas petition challenges a valid, state court judgment, principles of federalism and comity require a federal habeas court to tread lightly before

interfering with a state's execution of a valid sentence by ordering release on bond.").[6] Therefore, even if this Court had jurisdiction over the Bail Motion, it would still have to deny it because Plaintiff Cruz fails to set forth a valid basis for reconsideration and the Court's decision to deny release in its prior order was substantively correct.

## CONCLUSION

The pending appeal, as well as the Eleventh Circuit's stay of this Court's preliminary injunction order, effectively strip this Court of jurisdiction with respect to Plaintiffs' Motions because both require a predicate finding on the very issues on appeal: likelihood of success on the merits, including deliberate indifference by Defendants. Setting aside jurisdiction, the prerequisites for convening a three-judge court are nowhere near satisfied and Plaintiff Cruz's request for bail is prohibited by Circuit precedent. The Court should deny both Motions.

Dated: May 11, 2020.

Respectfully submitted,
ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY

By: /s/ Erica Zaron
Erica Zaron (Fla. Bar No. 0514489)
zaron@miamidade.gov
*Assistant County Attorney*
Stephen P. Clark Center

---

[6] Release is especially unwarranted given that Plaintiff Cruz has not exhausted available state court remedies and has not challenged the constitutionality of the state law that prevents his release on bail in state court. This Court found in its preliminary injunction order that "Plaintiffs have not made a 'clear showing' that they have exhausted their available state court remedies, a necessary prerequisite for injunctive relief on their 2241 claim." [ECF No. 100 at 48]. Apparently anticipating the same reasoning from the Court on the Bail Motion, Plaintiffs make a confusing argument about futility that relies upon authority from the context of exhaustion of ***administrative remedies***. [ECF No. 109 at 3] (citing *Blevins v. Warden, FCI Tallahassee*, No. 17-0443, 2018 WL 8139119, at *2 (N.D. Fla. Oct. 17, 2018) (holding that federal prisoners must exhaust administrative remedies prior seeking habeas relief under § 2241 unless "the attempt to exhaust such remedies would itself be a patently futile course of action.") (cleaned up)), *report and recommendation adopted,* 2018 WL 5809964 (N.D. Fla. Nov. 5, 2018). The separate concepts of state court exhaustion and administrative exhaustion do not have interchangeable exceptions, and therefore Cruz must initiate and complete the state court process before this Court can consider his request for habeas release.

14

111 N.W. First Street, Suite 2810<br>
Miami, Florida 33128<br>
(305) 375-5151<br>
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

On May 11, 2020, I electronically filed this document with the Clerk of Court via CM/ECF and served a copy on all counsel of record via CM/ECF.

<u>/s/ Erica Zaron</u><br>
Erica Zaron<br>
Assistant County Attorney