**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

ANTHONY SWAIN, et al., individually and
on behalf of all others similarly situated,

    Plaintiffs,

        v.

DANIEL JUNIOR, in his official capacity as
Director of the Miami-Dade Corrections and
Rehabilitation Department, et al.,

    Defendants.
_____/

**Case No.: 1:20-cv-21457-KMW**

**EMERGENCY MOTION TO RELEASE PLAINTIFF ANTHONY SWAIN
ON BAIL PENDING REVIEW OF THE CLASS ACTION HABEAS PETITION
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, by and through their undersigned counsel and pursuant to S.D. Fla. L. R. 7.1(d), hereby file this Emergency Motion to Release Plaintiff Anthony Swain On Bail Pending Review of the Class Action Habeas Petition and Incorporated Memorandum Of Law, and in support state:

**INTRODUCTION**

Plaintiffs respectfully request that the Court consider Plaintiff Anthony Swain on an individual basis for immediate release on bail pending the Court's ultimate decision on the class action habeas petition.

As set forth more fully below, Mr. Swain is a wheelchair-bound paraplegic who suffers from cystic myelomalacia and a failing respiratory system. Mr. Swain has now tested positive for COVID-19, having become infected while in Defendants' custody. He is currently hospitalized at Jackson Memorial Hospital but fears his imminent return to one of the "coronavirus cells" at Metro West Detention Center, where experience shows that infected detainees are left untreated, to fend

1

for themselves. Therefore, because Mr. Swain has a viable constitutional claim, this Court should exercise its equitable powers and temporarily release Mr. Swain on bail.

## BACKGROUND

### *Mr. Swain's Efforts to Reduce His Bond Are Ignored by the State Court*

1. Plaintiff Anthony Swain, is a wheelchair-bound paraplegic who suffers from cystic myelomalacia and a failing respiratory system. Swain Decl. ¶ 2, ECF No. 3-4.

2. On April 15, 2020, Mr. Swain, who is currently in the custody of Defendants, filed an emergency motion to reduce his bond with the Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Criminal Division ("State Court Motion"). *See* ECF No. 95-1 ¶ 3; ECF No. 95-2.[1]

3. To date, the State Court has not held a hearing or ruled on the State Court Motion, even after Mr. Swain's attorney filed supporting supplemental documents on April 24, 2020. *See* Swain Second Supp'l Decl. ¶ 14, attached hereto as Exhibit 1.

### *Mr. Swain Contracts COVID-19*

4. On or about May 10, 2020, Mr. Swain was transferred from the Metro West Detention Center ("Metro West"), to Jackson Memorial Hospital due to the fact that he was experiencing shortness of breath, an inability to breathe, and unbearable pain. *See* Swain Second Supp'l Decl. ¶ 2.

5. On May 11, 2020, Mr. Swain was informed that he had tested positive for COVID-19, the . *Id.* ¶ 8.

---

[1] Prior to April 15, 2020, Mr. Swain filed three motions to reduce his bond. These motions, all filed in 2016, resulted in eight hearings, one granted motion, and two denials (in April 2016 and January 2017). Ragsdale Decl. ¶¶ 29-30, ECF No. 36-1.

6. Mr. Swain believes that he became infected with COVID-19 because of the actions and inactions of Defendants. Indeed, since the outbreak of COVID-19 at Metro West, the officers and nurses at Metro West routinely went back and forth between quarantined cells and Mr. Swain's dormitory cell without changing their clothes or gloves. Swain First Supp'l Decl. ¶¶ 3-4, ECF No. 89-1 (Ex. 37-15). And a potentially infected cellmate—someone who had been exposed to the virus, had been tested, but had not yet received his test result—was permitted to remain in general population in Mr. Swain's unit. *id.* ¶¶ 5-6. Moreover, although nurses were provided medical gowns after the cellmate was tested, no detainee was provided protection. *Id*.

### *Defendants Have Been Deliberately Indifferent to the Plight of Mr. Swain and Others Like Him*

7. Mr. Swain began experiencing shortness of breath, a common and serious symptom of COVID-19,[2] prior to being taken to the hospital. *See* Swain Second Supp'l Decl. ¶ 4. He asked multiple times in the last week to be taken to the hospital due to his shortness of breath, but his requests were ignored. *Id*.

8. On Sunday, May 10, he awoke "in unbearable pain and was unable to breathe," but when he informed a nurse of his symptoms, she checked his vitals and told him there was "nothing wrong" with him. *Id*. Nothing more was done to help him. *Id*. When he was again unable to breathe a few hours later, he informed the nurse "there was something wrong" and asked repeatedly to be taken to the hospital. *Id*. ¶ 6. Mr. Swain was sent to the medical unit before finally being transferred to Jackson Memorial Hospital. *Id*. He was tested for COVID-19 when he arrived at Jackson Memorial Hospital. *Id*. ¶¶ 7-8.

---

[2] "Symptoms of Coronavirus," Centers for Disease Control and Prevention (last visited May 3, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.

### *Emergency Nature of Request*

9. Mr. Swain has been informed that he will "soon" be transferred back to Metro West. *See id.* ¶ 10.

10. Mr. Swain is "terrified" of going back to Metro West. *Id.* ¶ 8, 11. This is because when detainees test positive for COVID-19 at Metro West, they are confined to "medical isolation units," also known colloquially as a "coronavirus cells," with others who have also tested positive. *Id.*; *see also* Garcia Decl. ¶¶ 3, 5, ECF No. 109-2.

11. In these "coronavirus cells," there has been no oversight or protection—jail staff have remained in the hallway and have refused to enter the units, even at mealtimes, and will instead push food through the door. Garcia Decl. ¶ 7; *see also* Swain Second Supp'l Decl. ¶ 11.[3]

12. Mr. Swain fears being confined in a "coronavirus cell" because he requires daily assistance from staff, who "help [him] get in and out of bed, help [him] get dressed, put pads on [his] body so that [he] d[oesn't] get wounds, and provide [him] with medication." *See id.* ¶¶ 11-13. His fragile health is dangerously compromised without the care and attention he requires, especially in a cell where he is "repeatedly exposed to other people who have coronavirus." *Id.* ¶¶ 11-13.

---

[3] Charles Hobbs, a man who had been jailed pretrial at Metro West because he could not afford four money bonds of $5,000, ECF No. 109-4, was sent to one of these units earlier this month after "gasping for breath in his bunk" and "shaking violently in his bed." Arrington Decl. ¶¶ 10-12, ECF No. 109-1; Garcia Decl. ¶¶ 3, 5. As detailed in the Motion to Release Plaintiff Bayardo Cruz on Bail as well as the declarations attached to that filing, Mr. Hobbs died after exhibiting severe coronavirus-related symptoms and being repeatedly denied basic care. ECF No. 109; 109-1; 109-2; 109-3. When Mr. Hobbs "was struggling to breathe," detainees attempted to find a guard in the hallway to request urgent medical attention—the corporal they spoke to said it was "not [his] problem" and "walked away." Garcia Decl. ¶¶ 9-10. The next day, when detainees found Mr. Hobbs "lying motionless" on his bed, they pounded on the door to try and grab a guard's attention. *Id.* ¶¶ 11-12. Mr. Hobbs was eventually taken from the unit, and the detainees around him "believe this man died in [their] dorm before [their] eyes." *Id.* ¶¶ 15-16.

### *It is Disproportionately Unfair to Keep Mr. Swain in Detention In Light of the Fact that He Has a Viable Release Plan*

13. Mr. Swain has been detained pretrial since 2016 on non-violent charges, and he remains detained because he cannot afford to pay a total money bond of $645,000 (and he is likewise unable to afford the 10% payment a for-profit bonding company would require for his release). ECF No. 37 at 2.

14. Mr. Swain had never been arrested prior to these charges. *Id*.

15. Mr. Swain would live with his parents in Miami if released. ECF No. 81-2 ¶ 5.

## ARGUMENT

As Plaintiffs have noted, a federal district court "has inherent authority to release an inmate on bail or surety pending the court's decision on a petition for writ of habeas corpus." *See* ECF No. 85 at 21; ECF No. 36 at 10; *Gomez v. United States*, 899 F.2d 1124, 1125 (11th Cir. 1990); *Wilson v. Secretary*, 2016 WL 10891523, at *2 (M.D. Fla. Dec. 15, 2016). This equitable power, which applies to petitioners seeking release post-conviction, *see, e.g., Gomez*, 899 F.2d at 1125, applies with all the more force to a pretrial detainee. Temporary release is appropriate where, as here, the petitioner demonstrates both "a likelihood of success on the merits of a substantial constitutional claim" as well as the presence of "extraordinary and exceptional circumstances." *Gomez*, 899 F.2d at 1125. Mr. Swain satisfies both criteria and merits immediate, temporary release on bail.

### I. Mr. Swain's substantive constitutional claim is likely to succeed

The record before this Court establishes a likelihood of success on the merits of Mr. Swain's substantive constitutional claim. The robust record already before the Court, including Mr. Swain's unique medical vulnerability and experiences at Metro West, amply demonstrate Defendants' deliberate indifference to a serious harm. Mr. Swain's claim is tragically further

5

strengthened by new evidence about Mr. Swain's current condition as well as the mistreatment suffered by detainees in "coronavirus cells"—the harrowing facts about the last few hours and days of Mr. Hobbs's life provide a compelling glimpse of this indifference.

Given all the above, Mr. Swain is likely to succeed on each element of his deliberate indifference claim. *See Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (listing the elements). First, it is unrebutted that this viral pandemic and its resulting disease, COVID-19, pose an objectively intolerable risk of serious harm. Second, Defendants had subjective knowledge of this risk (through government orders requiring preventive measures, CDC guidance directed at jails and correctional facilities, advocacy letters sent to Defendants, and this Court's temporary restraining order, among other sources). Defendants' own communications and announcements emphasize this awareness. *See, e.g*., ECF No. 1-13; ECF No. 1-16; ECF No. 1-17. Third, the evidence demonstrates that Defendants disregarded this significant risk.

Mr. Swain, a wheelchair-bound paraplegic with a fragile spine and compromised respiratory system, was exposed by Defendants to COVID-19 and became infected.[4] He was not transferred to a hospital until a week or more after he began experiencing shortness of breath and repeatedly requested hospital care. Swain Decl. ¶ 2; Swain Second Supp'l Decl. ¶¶ 2, 4. When his symptoms escalated and he was unable to breathe, the nurses and staff responsible for his care did not provide assistance—it was only when he *again* experienced an inability to breathe and repeatedly insisted "there was something wrong" that they finally called a medical emergency. Swain Second Supp'l Decl. ¶¶ 5-6.

---

[4] Mr. Swain was unreasonably exposed to the virus: jail officers and nurses failed to change their clothing or gloves when they traveled from quarantined cells to his dorm, and he was provided no protection or ability to social distance when a potentially-infected cellmate was allowed to remain in general population in his dorm while waiting for his test result. Swain First Supp'l Decl. ¶¶ 3-6.

Now, given that Mr. Swain has tested positive for COVID-19, it is likely that he will be confined in one of the "coronavirus cells" when he is returned to Metro West. Swain Second Supp'l Decl. ¶¶ 10, 11. These cells, which are filled with only infected and vulnerable people who require increased attention and care—have been intentionally abandoned by jail officers and staff. *Id.* ¶ 11; Garcia Decl. ¶ 7. Mr. Swain requires daily assistance given his physical limitations, and his already vulnerable health will be further compromised in a "coronavirus cell." Swain Second Supp'l Decl. ¶¶ 11-13.

Mr. Hobbs paid the price of Defendants' deliberate indifference with his life. Even before he was transferred to the coronavirus cell, he was not provided adequate medical care. He was not taken to the medical clinic when the temperature checks confirmed he had a 100+ fever, and he received no other medical attention for a week while his condition worsened dramatically. Arrington Decl. ¶¶ 5-9. When he "was gasping for breath" and "his eyes were rolling to the back of his head," he was not hospitalized and was instead transferred to a coronavirus cell. *Id.* ¶¶ 10-13; Garcia Decl. ¶¶ 5, 8; Blanco Second Supp'l Decl. ¶ 4, ECF No. 109-3. Once inside that cell, Mr. Hobbs visibly had trouble breathing before laying lifeless in his bed, and yet the detainees around him were forced to shout out to the hallway or pound on the door to seek the attention of staff (which they struggled to obtain). *Id.* ¶¶ 9-13. Some staff explicitly refused to respond to pleas for urgent care. *Id.* ¶ 10.

The failure to give prompt medical treatment to Mr. Hobbs and Mr. Swain is consistent with the numerous declarations submitted by Plaintiffs detailing the persistent and widespread failure to provide prompt medical attention inside Metro West.[5] When viewed against the backdrop

---

[5] *See, e.g.*, Blanco Decl. ¶¶ 4-7, ECF No. 3-6; Flores Decl. ¶ 4, ECF No. 3-9; Hill Decl. ¶ 10, ECF No. 3-5; Bernal Decl. ¶¶ 7-8, ECF No. 3-10; Cruz Decl. ¶ 2, ECF No. 3-8; Stuhlmiller Decl. ¶¶ 32-33, 39, ECF No. 81-5; Goggins Decl. ¶¶ 4-18, 20, ECF No. 81-3; Pla Decl. ¶ 5, ECF No. 81-4.

of all the other evidence submitted by Plaintiffs, *see generally* ECF No. 85 at 3-12 (summarizing evidence), the fact that Mr. Swain contracted the virus because of the actions and inactions of Defendants, Defendants' inadequate response to Mr. Swain's serious COVID-19 related symptoms, and the conditions of the "coronavirus cells" where he will be confined upon his return (as illustrated by the repeated mistreatment suffered by Mr. Hobbs before his death), all collectively demonstrate that Defendants "fail[ed] to take reasonable measures to abate [the undisputed substantial risk]." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Mr. Swain is especially vulnerable in a jail where those infected with COVID-19, rather than being treated, are left unsupervised, unprotected, and without basic care.

Neither the holding in *Gomez* nor prudential requirements of exhaustion defeat the likelihood of success of Mr. Swain's substantive constitutional claim. First, as this Court observed, the holding in *Gomez* that "'relief of an Eighth Amendment violation does not include release from confinement'" is not "as clear cut as Defendants suppose." ECF No. 100 at 45-46 (quoting *Gomez*, 899 F.2d at 1126). The *Gomez* court "left open the question of whether habeas would be available in a context where there was no constitutional manner of continued confinement (*i.e.*, no remedy absent release)," and its holding "strongly implies" that a petitioner is entitled to habeas relief where "no facility [is] able to treat [him] as constitutionally required," ECF No. 100 at 46-47, as is true in this case. As his allegations and the record make clear, Mr. Swain challenges the *fact* of his confinement in a jail that, in the grips of an escalating crisis, was the cause of his becoming infected and now has neither the desire nor the ability to protect his life.

Second, although this Court temporarily stayed its hand with respect to the entire medically vulnerable subclass because of the possibility of state remedies, it was silent as to individual plaintiffs like Mr. Swain who had no effective state court process available. Section 2241's

prudential requirement to exhaust state court remedies does not apply where there is an absence of available state court processes or circumstances exist that render the process ineffective or futile. *See generally* ECF No. 36 at 7-9 (summarizing caselaw); *see also* ECF No. 100 at 48 n.24. As a threshold matter, there is no state process through which Mr. Swain could demand relief from state courts for this violation of their federal constitutional rights. The only available mechanism, a motion for bond reconsideration, is limited to a number of statutory and judicially-set factors and therefore cannot raise federal constitutional claims. *See* ECF No. 36 at 8 & n.3. In any event, the three motions to reconsider bond that Mr. Swain filed before this lawsuit were either denied or could not decrease his bond to an amount he and his family could afford. Moreover, the fourth, an emergency motion filed nearly a month ago based on the changed circumstances in the post-COVID-19 world, has not been scheduled for a hearing or ruled on. Mr. Swain has no remedy because the state court simply refuses to hear his motion. The futility and delay of the state court process renders the process futile and unavailable to Mr. Swain. And as Judge Sayfie testified, Mr. Swain's only recourse would be the extraordinary writ of mandamus, and longstanding precedent states that a person is not required to pursue extraordinary writs to exhaust. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Moreover, courts may also excuse exhaustion "in rare cases where exceptional circumstances of peculiar urgency are shown to exist," *Granberry v. Greer*, 481 U.S. 129, 134 (1987), as is true here. Especially given Mr. Swain's medical vulnerability and current condition, exhaustion should be waived.

Accordingly, Mr. Swain satisfies the first criteria for temporary release on bail.

## II.   The extraordinary and exceptional circumstances of this pandemic at Metro West warrant temporary release

Mr. Swain satisfies the second criteria for release: it is undisputed that the present circumstances are "extraordinary and exceptional." Hospitalized and afraid, Mr. Swain sits on a

9

precipice: returning to Metro West will very likely confine him to a "coronavirus cell" where he will be abandoned by the jail staff responsible for his care. Mr. Swain is uniquely vulnerable, and this Court must act now to protect him from further harm before he is "soon" transferred back to Metro West. Swain Supp'l Decl. ¶ 10.

A few weeks ago, the record demonstrated "the inescapable fact that Metro West is in the crosshairs of this contagion." ECF No. 100 at 40. Tragically, the contagion has landed squarely upon Mr. Swain, who became infected with COVID-19 while in the custody of Defendants, with his State Court Motion all but forgotten by the State Court. Mr. Swain does not deserve to be yet another victim of Defendants' deliberate indifference. Delaying Mr. Swain's release pending full consideration of the habeas petition is simply inhumane.

## CONCLUSION

For all of the reasons set forth herein, Plaintiff, Anthony Swain satisfies both criteria necessary for temporary release on bail pending the Court's ultimate decision on the habeas petition. Accordingly, the Court should grant this motion.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to S.D. Fla. L. R. 7.1(a)(3), the undersigned hereby certifies that on May 13, 2020, counsel for Plaintiffs conferred via text with counsel for Defendants and was informed that Counsel for Defendants did not agree to the relief requested herein.

## CERTIFICATE OF EMERGENCY

Pursuant to S.D. Fla. L. R. 7.1(d)(1), I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical,

non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

Dated: May 13, 2020    Respectfully submitted,

*/s/ Tiffany Yang*
Tiffany Yang, DC Bar. No. 230836
tyang@advancementproject.org
*(Admitted Pro Hac Vice 4/6/2020)*
Thomas B. Harvey, MO Bar. No. 61734
*(Admitted Pro Hac Vice 4/6/2020)*
tharvey@advacementproject.org
ADVANCEMENT PROJECT
1220 L Street NW, Ste 850
Washington, DC 20005
Tel: (202) 728-9557

Maya Ragsdale, Fla. Bar No. 1015395
maya@dreamdefenders.org
DREAM DEFENDERS
6161 NW 9thAve.
Miami, Florida 33127
Tel: 786-309-2217

Meena Jagannath, Fla. Bar No. 102684
meena@communityjusticeproject.com
COMMUNITY JUSTICE PROJECT
3000 Biscayne Blvd. Ste 106
Miami, Florida 33137
Tel: (305) 907-7697

Alec Karakatsanis DC Bar No. 999294
*(Admitted Pro Hac Vice 4/28/2020)*
alec@civilrightscorps.org
Katherine Hubbard, DC Bar No. 1500503
*(Admitted Pro Hac Vice 4/6/2020)*
katherine@civilrightscorps.org
Alexandria Twinem, D.C. Bar No. 1644851
*(Admitted Pro Hac Vice 4/6/2020)*
alexandria@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Ste. 800
Washington, DC 2009

Tel: (202) 894-6126

R. Quinn Smith, Fla. Bar No. 59523
quinn.smith@gstllp.com
Katherine Alena Sanoja, Fla. Bar No. 99137
katherine.sanoja@gstllp.com
GST LLP
1111 Brickell Avenue, Suite 2715
Miami, Florida 33131
Tel: (305) 856-7723

Lida Rodriguez-Taseff, Fla. Bar No. 39111
lida.rodriguez-taseff@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Blvd., Ste 2500
Miami, Florida 33131
Tel.: (305) 423.8525

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 13, 2020 a true and correct copy of this document was electronically filed with the Clerk of the Court U.S. District Court, Southern District of Florida, using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Tiffany Yang*
Tiffany Yang