UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-21457-WILLIAMS/TORRES

ANTHONY SWAIN, *et al.*,

    Plaintiffs,

v.

DANIEL JUNIOR, *in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department*, and
MIAMI-DADE COUNTY,

    Defendants.
_____/

### DEFENDANTS' RESPONSE IN OPPOSITION TO EMERGENCY MOTION TO RELEASE PLAINTIFF ANTHONY SWAIN ON BAIL PENDING REVIEW OF THE CLASS ACTION HABEAS PETITION

Defendants, Miami-Dade Corrections and Rehabilitation Department (MDCR) Director Daniel Junior and Miami-Dade County, respond to Plaintiff Anthony Swain's Emergency Motion for Release under 28 U.S.C. § 2241 [ECF No. 116]. This Court has ordered that Defendants respond to this motion on an expedited basis. *See* [ECF No. 117].

This motion essentially seeks the same relief sought by Plaintiff Bayardo Cruz. *See* [ECF No. 109]. As Defendants explained in their response in opposition to Cruz's motion [ECF No. 115], which is incorporated fully herein, this Court has no jurisdiction to grant Mr. Swain's motion because of the appeal and stay ordered by the Eleventh Circuit Court of Appeals. *See id.* at 1-6. Moreover, this Court has already denied Mr. Swain's request for release and his latest supplemental declaration offers no basis upon which the Court should revisit its prior rulings. In any event, the appropriate forum for Mr. Swain to reassert his request for release lies in state court,

where he has not exhausted the constitutional claim presented in his current motion. *Id.* at 10-14; *see also* [ECF No. 67 at 37; ECF No. 35 at 9-11].

Defendants respectfully object to the Court's having ordered them to respond to this motion in this procedural posture. Nevertheless, having been ordered by this Court to respond to the motion within 24 hours, and without waiving any objections, Defendants proffer the following information relating to Mr. Swain's "medical situation and what treatment he is receiving." [ECF No. 117].

Mr. Swain is currently being held on several felony charges, including RICO/racketeering, conspiracy to traffic in Oxycodone, and conspiracy to traffic illegal drugs (all first degree felonies punishable by up to 30 years); trafficking in a controlled substance (a second degree felony); and 26 counts of unlawful use of a communications device (all third degree felonies). He was arrested on these charges in 2016 and his bond is currently set at $645,000 with a *Nebbia* hold. Notably, the Motion states that "Mr. Swain had never been arrested prior to these charges." [ECF No. 116 at 5 ¶ 14]. This is false, according to the Clerk of the Eleventh Judicial Circuit: the docket in Case No. F-06-010769 reveals that Mr. Swain was arraigned for attempted felony murder on April 25, 2006, and spent approximately one month in custody for that charge.

Mr. Swain has been in MDCR's custody since February 3, 2016. During this time, Corrections Health Services has been successfully caring for Mr. Swain, 43, for the following medical conditions: paraplegia secondary to a spinal cord injury, bladder dysfunction with self-catheterization, history of multiple urinary tract infections, bowel dysfunction, hypertension, hyperlipidemia, and chronic pain. Mr. Swain has filed 70 grievances against MDCR and staff.

As with his past allegations and declarations, Mr. Swain's allegations in the Motion and his supporting declaration are overwhelmingly false, particularly his inaccurate claims that

Defendants are deliberately indifferent and purportedly failed to give him prompt medical treatment. Mr. Swain was <u>not</u> taken to Jackson Memorial Hospital (JMH) for COVID-related symptoms. On May 10, 2020, while housed in the medical housing unit at Metro West, Mr. Swain complained of shortness of breath, tachycardia, and abdominal pain. His vital signs were within normal limits and he was in no apparent distress. The in-house medical provider was notified and Mr. Swain was scheduled for evaluation, but shortly thereafter, he complained of chest pain. As a result, he was immediately taken to Metro West's main medical clinic where he was evaluated by the urgent care provider. Mr. Swain's evaluation revealed that he was in moderate distress with an elevated heart rate and nothing more; significantly, Mr. Swain did not complain of cough, congestion, fever, or chills.

That same day, Mr. Swain was transported to the emergency room at JMH, where he was evaluated and worked up for a urinary tract infection—not COVID-related symptoms. Mr. Swain was ultimately admitted to the hospital for the urinary tract infection. As an admitted patient, Mr. Swain was tested for COVID-19, in accordance with JMH's policy requiring all admitted patients to be tested. On May 11, 2020, his test results came back positive for COVID-19.

While at JMH, Mr. Swain was treated by the Internal Medicine team, and the Infectious Disease team was also consulted regarding his medical care. The Infectious Disease team determined that Mr. Swain would be treated with IV antibiotics for the urinary tract infection based upon his lab results. It was also determined that he had no signs, symptoms or studies, including chest x-ray, that were consistent with COVID-19. In addition, Mr. Swain required no treatment for COVID-19 (i.e., respiratory support or oxygen supplementation). Mr. Swain was discharged from JMH the afternoon of May 13, 2020 and remained stable throughout his three-day hospitalization.

Presently, Mr. Swain is being housed in a single-man cell at TGK's temporary housing unit. There, he will continue to receive IV antibiotics until May 17, 2020. As in Unit 1D2, Metro West's medical housing unit, medical staff is readily available to assist Mr. Swain with any medical issue 24 hours a day. Mr. Swain's vital signs are monitored twice daily and he receives daily infection control screenings by the nursing staff (e.g., vital signs; as well questions such as: Do you have a cough? Shortness of breath? Loss of taste or smell? GI issues?). He is also evaluated daily by the medical provider.

Since his discharge from JMH on May 13, 2020, Mr. Swain remains afebrile and continues to receive his chronic care medical treatment and pain medication regimen. He remains stable and asymptomatic. Medical staff will determine when Mr. Swain can safely be returned to his medical housing unit at Metro West.

In addition to the arguments raised in Defendants' omnibus response and previous habeas brief [ECF Nos. 67, 35], one point warrants emphasizing here. Release is barred under these circumstances because Mr. Swain has not exhausted available state court remedies. Although he claims to have filed four motions seeking a reduction of his bond, *see* [ECF No. 116 at 8-9], three were filed in 2016, before the COVID-19 pandemic, and the fourth was only just filed on April 15, 2020. This date is problematic because it is both after the filing of Mr. Swain's § 2241 petition and before the factual basis underlying his current motion for release arose. [*See* Docket F-16-002243-A]. Plaintiffs characterize the state court system as "futile and unavailable to Mr. Swain[,]" based on the fact that this fourth motion "has not been scheduled for a hearing or ruled on." [ECF No. 116 at 9]. Curiously though, Mr. Swain fails to mention *any* actions he has taken to even attempt to schedule the motion for hearing. And despite submitting declarations on this issue from several defense attorneys on behalf of other plaintiffs [ECF No. 81-6; 81-7; 81-8], Mr.

Swain has failed to provide any evidence regarding the purported futility of the state court process from his own private criminal defense attorney. The record does not indicate that Mr. Swain has even presented, much less exhausted, the constitutional claims that form the basis of his current motion. So Mr. Swain has fallen well-short of the "clear showing" he is required to make that he has exhausted state court remedies. [ECF No. 100 at 47].

Based on the compelling testimony of Judge Nushin Sayfie on the second day of the preliminary injunction hearing, it is undisputed that state court criminal judges are hearing such motions *en masse* on an expedited and daily basis. Mr. Swain's inability to secure the relief he wants—release—under a system that is otherwise functioning does not render the entire process unavailable. Indeed, the release of former Plaintiffs Hill and Bernal through this very state court system confirm that it is both available and working. Mr. Swain must initiate and complete the state court process before this Court can consider his request for habeas release. At that point, Mr. Swain would have to seek *en banc* review in the Eleventh Circuit or certiorari in the Supreme Court to overturn the binding precedents in this Circuit that prohibit inmate release under § 2241 on a conditions of confinement claim. [ECF No. 35; ECF No. 67 at 33-34]; *Matos v. Lopez Vega*, 20-CIV-60784-RAR, 2020 WL 2298775 (S.D. Fla. May 6, 2020).

Dated: May 15, 2020

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY

By: /s/ *Bernard Pastor*
Bernard Pastor (Fla. Bar No. 0046582)
pastor@miamidade.gov
Jennifer L. Hochstadt (Fla. Bar No. 56035)
hochsta@miamidade.gov
*Assistant County Attorneys*
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128
(305) 375-5151

## **CERTIFICATE OF SERVICE**

On May 15, 2020, I electronically filed this document with the Clerk of Court via CM/ECF and served a copy on all counsel of record via CM/ECF.

>*/s/ Bernard Pastor*
>Bernard Pastor
>Assistant County Attorney