```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF Florida
                           MIAMI DIVISION
                      CASE NUMBER 20-CV-21457
```

ANTHONY SWAIN, **et al.**

        Plaintiff**s**

**vs.**

DANIEL JUNIOR, et al.

        Defendant**s**

___

HEARING HELD 4-6-2020
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

___

APPEARANCES:

FOR THE PLAINTIFFS:

Thomas Harvey, Esq.
**Meena Jagannath, Esq.**
**Maya Ragsdale, Esq.**
**Alec Karakatsanis, Esq.**
**Tiffany Yang, Esq.**
**Alexandria Twinem, Esq.**
**Katherine Hubbard, Esq.**

FOR THE DEFENDANTS:

**Bernie Pastor, Esq.**
**Ezra Greenberg, Esq.**
**Anita Viciana, Esq.**

REPORTED BY:    PATRICIA SANDERS, RPR
                United States Court Reporter
                400 North Miami Avenue, Suite 11-3
                Miami, FL  33128
                T: 305.523.5528.
                **Patricia_sanders@flsd.uscourts.gov.**

```
01:01   1             THE COURT:  The Court calls Case No. 20-21457; Swain
01:01   2   et al versus Junior, et al.
01:01   3             Counsel, if you would please state your appearances
01:01   4   for the record; starting with the plaintiffs.
        5             MR. HARVEY:  Good afternoon, Your Honor, Thomas Harvey
        6   on behalf of plaintiffs.
        7             MS. JAGANNATH:  Good afternoon; Meena Jagannath on
        8   behalf of plaintiffs.
        9             MS. RAGSDALE:  Good afternoon; Maya Ragsdale on behalf
       10   of plaintiffs.
       11             (COUNSEL SPEAKING SIMULTANEOUSLY)
       12             THE COURT:  If you could repeat your appearances
       13   please; I could not make that out.
       14             MR. KARAKATSANIS:  Alec Karakatsanis on behalf of
       15   plaintiffs.
       16             THE COURT:  And who was the young woman that was
       17   speaking?
       18             MS. YANG: Tiffany Yang, Your Honor.
       19             THE COURT:  All right. Anyone else on the line for
       20   plaintiffs?
       21             MS. TWINEM:  Yes, Your Honor. Alexandria Twinem also
       22   on behalf of plaintiffs.
       23             MS. HUBBARD:  Katherine Hubbard on behalf of
       24   plaintiffs.
       25             THE COURT:  Good afternoon, counsel.
```

|  |  |
|---|---|
| 01:02 1 | And on behalf of defendants; who do we have on the |
| 01:02 2 | line? |
| 01:02 3 | MR. PASTOR:  Good afternoon, Your Honor, this is |
| 01:02 4 | Bernie Pastor.  Also on the line on behalf of the County is |
| 01:02 5 | Ezra Greenberg and Anita Viciana. |
| 01:02 6 | THE COURT:  Good afternoon.  All right. Before we |
| 7 | begin, I need to lay out some ground rules for how we are going |
| 8 | to proceed here today. |
| 9 | First, this hearing is obviously being held |
| 10 | telephonically; so in that regard if there are members of the |
| 11 | press or public on the line this matter cannot be recorded or |
| 12 | live streamed, and only the lawyers from the parties may |
| 13 | participate. |
| 03:05 14 | Next, and probably almost as important, everyone must |
| 03:05 15 | speak slowly and clearly; and you must speak directly into your |
| 16 | cell phone or whatever device you are using or you will not get |
| 17 | a complete record. |
| 18 | Ms. Sanders has the Court's permission to interrupt |
| 19 | these proceedings if she cannot understand something that one |
| 20 | of the attorneys is saying. |
| 21 | Again, this is being conducted via means of telephone |
| 22 | conference, but if there is ever a record needed of these |
| 23 | proceedings the parties will need to make every effort possible |
| 24 | to conduct themselves in a manner such that a complete and |
| 25 | accurate record can be made. |

```
         1              All right. With those preliminary matters out of the
03:05    2     way let us begin. We are here today on plaintiffs' emergency
03:05    3     motion for temporary restraining order. There are several other
03:06    4     motions, but I need not turn to them immediately.
03:06    5              I have received and reviewed not only the emergency
03:05    6     motion for temporary restraining order and the attachment, but
03:05    7     the complaint and the attachment, so with that I am ready to
03:06    8     proceed.
03:06    9              Oh, yes, I will first ask that only one person per
03:06   10     side present here today.  If there is a particular issue that
03:06   11     another lawyer needs to address then I will allow that.
03:06   12              And of course each time someone else speaks they will
03:06   13     need to identify themselves for the record.
03:06   14              All right. For the record, who will be speaking on
03:06   15     behalf of plaintiff?
03:06   16              MR. HARVEY: Your Honor, this is Thomas Harvey. I will
03:06   17     be speaking here today; but there may be moments where I would
03:06   18     like one of my colleagues to respond based on the nature of the
03:06   19     Court's question.
03:06   20              THE COURT:  My first question, Mr. Harvey, is whether
03:06   21     plaintiffs have had an opportunity to confer with Mr. Pastor or
03:06   22     one of the attorneys for the County?
03:07   23              MR. HARVEY:  Your Honor, we communicated by e-mail,
03:07   24     but were not able to speak on the phone prior to the hearing.
03:07   25              THE COURT:  The reason I asked is -- as I said, I have
```

```
03:07   1   reviewed the pleadings and all of the attachments -- it occurs
03:07   2   to me that there are parts of the requested TRO that are in the
03:07   3   category of things the parties should be able to agree on.
03:07   4        So, here is what I'm thinking of doing -- and let me
03:07   5   ask you -- if I give the parties 24 hours do both sides believe
03:07   6   there are matters they can agree on that are either something
03:08   7   of a consent or which has been demonstrably achieved or
03:08   8   fulfilled and therefore moot?
12:38   9        MR. PASTOR:  Your Honor, this is Bernie Pastor. While
03:08  10   we would welcome a 24 hour period, and we would certainly speak
03:08  11   with opposing counsel, given the nature of these allegations --
03:08  12   let me just say this, the Department has informed us that the
03:08  13   majority of the things alleged in the complaint are factually
03:08  14   inaccurate.
03:08  15        And most if not all of the things the plaintiffs are
12:41  16   alleging that the Department is not doing, they are actually
12:41  17   doing, and have been doing for at least two to three to four
12:42  18   weeks -- especially since the CDC issued their guidelines
03:09  19   regarding prisons and institutions.
03:09  20        And so I am afraid of getting into a situation where
03:09  21   the plaintiffs have not investigated these allegations
03:09  22   sufficiently -- and I just don't think they are going to take
03:09  23   our word for it -- where the Department, for example, says we
03:09  24   have been following these guidelines. So that is the only
03:09  25   caveat.
```

```
03:09   1            THE COURT: All right. Let me turn to the plaintiffs --
03:09   2            MR. PASTOR:  But we can certainly talk.
03:09   3            THE COURT:  Well, that is a start.
03:09   4            MR. PASTOR:  And, Your Honor, I am not sure how much
03:09   5   pre-suit investigation was done when what we are told is being
03:10   6   done by the Department on the ground at Metro West is so vastly
03:10   7   different than the allegations being made.
03:10   8            THE COURT:  Let me say this, I would assume that their
03:10   9   capacity to do an investigation is somewhat hampered or limited
03:10  10   because of the pandemic.
03:10  11            So if it were the case -- I am not suggesting it is --
03:10  12   were I to issue a TRO this afternoon about making certain that
03:10  13   inmates had appropriate hygiene supplies or that the personnel
03:11  14   wear protective masks and gloves when interacting with the
03:11  15   inmates that should not be a problem.
03:11  16            Because one of the temporal conditions of the order
03:11  17   would be that it is limited to the 14 days, or until we have a
03:11  18   preliminary injunction hearing, or until the defendants have
03:11  19   demonstrated they have substantially complied.
03:11  20            Obviously a big concern of the Courts around the
03:11  21   country is assuring ourselves, in a limited amount of time,
03:11  22   that these protocols are being adhered to.
03:11  23            If, in fact, they are then there should be no downside
03:11  24   to a TRO. It would be lifted if you demonstrate everything has
03:12  25   been complied with; as has been indicated to you by the
```

03:12  1  Department.

03:12  2        MR. PASTOR: The problem with that -- and if you are
03:12  3  inclined to do that then we would ask for an expedited or
03:12  4  abbreviated schedule to provide evidence to show this has been
03:12  5  done.

03:12  6        One of things that Your Honor would need to find is
03:12  7  there was deliberate indifference inside the prison, and we
03:12  8  certainly will prove that there is not.  And that is a high
12:58  9  burden -- there is not going to be a substantial likelihood of
03:12  10 success.

03:12  11       And we were going to propose a briefing schedule to
03:12  12 address this with declarations -- and if we need an evidentiary
03:12  13 hearing so be it -- but I think that a TRO would be improper
03:12  14 without giving us an opportunity to respond and provide our own
03:13  15 declarations to show that all these things that the Department
03:13  16 is being accused of are not true.

03:13  17       THE COURT:  I understand.  And while I appreciate your
03:13  18 desire to present, we don't have the luxury of time if we were
03:13  19 going to avoid any type of unchecked outbreak at Metro West, or
03:13  20 flatten the curve.

03:13  21       We need to act within the next week, and so I don't
03:13  22 know if that would be sufficient time to get ready for a
03:13  23 hearing. Obviously I must take the allegations in the complaint
03:14  24 as true in a TRO context.

03:14  25

```
03:14   1          A preliminary injunction hearing would suss this out,
03:14   2   which I am happy to do on an expedited basis if that is doable.
03:14   3          MR. PASTOR:  Your Honor, there is no curve to flatten
03:14   4   yet -- we know of no known cases inside Metro West.
03:14   5          And I would note that this complaint is largely in the
03:14   6   same form, with the same affidavits and declarations, as has
03:14   7   been filed throughout the country.
03:14   8          And in almost every instance other Courts have given
03:14   9   enough time for the parties to respond.  And in most cases --
03:15  10   at least the cases cited in the complaint -- the motion for
03:15  11   injunctive relief was denied.
03:15  12          THE COURT:  Really? I am looking at the Money case out
03:15  13   of Illinois.  Did they come out with a decision recently that I
03:15  14   am not aware of?
03:15  15          I am unaware of any other cases like this one, where
03:15  16   the preliminary injunction has been fully briefed, a hearing
03:15  17   held and denied.
03:15  18          I am just talking about a TRO here.
03:15  19          MR. PASTOR: That is what we are talking about, Your
03:15  20   Honor. For example, they cited to Dawson versus Asher, a case
03:15  21   which was filed in March in the District of Oregon.
03:15  22          And there the TRO was denied, then they moved to
03:16  23   reconsider, they rebriefed it, and now it is pending...
02:22  24          THE COURT REPORTER:  Judge, I can barely understand
02:23  25   what counsel is saying.
```

02:23  1        THE COURT:  Yes, Mr. Pastor, you need to slow down and
02:22  2   try to speak more clearly, and closer to the phone probably,
02:22  3   because you are breaking up.
02:37  4        MR. PASTOR: There is another case, Coreas versus Baum,
02:37  5   filed in the District of Maryland, filed March 24th. The TRO
02:37  6   was denied.
02:37  7        So there are a few cases out there. There is one case
02:37  8   I could not find information on; I don't know if the citation
02:37  9   was wrong or not.
02:37 10        And then the Russell case, which is a case out of the
02:37 11   Southern District of Texas, there was a case initiated March 27
02:38 12   of 2020.  There was a TRO that was filed there, and it is still
02:38 13   pending after two or three weeks.
02:38 14        So we would ask Your Honor to take that approach, to
02:38 15   allow the TRO be briefed on an expedited basis, before taking
02:38 16   this Draconian action in entering a TRO where we are confident
02:38 17   they will not be able to prevail on the merits.
02:38 18        THE COURT:  Well, I have three cases out of New York
02:48 19   where the TRO was granted or at least granted in part -- I am
02:48 20   unfamiliar with the cases that you listed -- but I do have a
02:48 21   full list of those cases where petitioners had asked to be
02:48 22   released. I also have a number of compassionate release cases,
02:49 23   as well as pre-trial release motions.
02:49 24        And I am happy to take a look at those cites; but I
03:18 25   fail to understand how the entry of a TRO would be Draconian if

|||
|---|---|
|03:18  1|it is your position that Metro West is doing everything that|
|03:18  2|the CDC requires and that plaintiffs are asking for in the TRO.|
|03:18  3|           Frankly, the TRO I have fashioned does not mimic the|
|03:18  4|plaintiffs; I have edited it to what I believe is appropriate.|
|03:18  5|And so everything I would ask the institution to do is part of|
|03:18  6|the CDC protocol, which you have stated the institution is|
|03:18  7|already following.|
|03:18  8|           So how the TRO could be Draconian, Mr. Pastor, I do|
|03:19  9|not understand.  It is an assurance to the plaintiffs and to|
|03:19 10|the public, frankly, that these measures are being taken.|
|03:19 11|           You could brief the preliminary injunction, and if I|
|03:19 12|find that Metro West has done all that they possibly can then|
|03:19 13|you will prevail --|
|03:19 14|           MR. PASTOR:  One of the fundamental problems, Your|
|03:20 15|Honor, is the complaint and the request -- that the emergency|
|03:20 16|motion asks for things that go beyond the CDC guidelines.|
|03:20 17|           THE COURT:  All right. Give me an example.|
|03:20 18|           MR. PASTOR: For example, Your Honor, they are asking|
|03:20 19|for every inmate to have hand sanitizer, which is a problem|
|03:20 20|because it has alcohol in it, which could be ingested.|
|03:20 21|           THE COURT:  Let me stop you; because the CDC in their|
|03:20 22|papers on incarceration have acknowledged that ordinarily that|
|03:21 23|would be an issue but not now, so that --|
|02:29 24|           (COUNSEL INTERRUPTS AND SPEAKS OVER THE COURT)|
|02:29 25||

```
02:29   1         THE COURT:  Mr. Pastor, stop.  I understand this is
02:30   2    being done by phone, but the same rules apply just as if you
02:30   3    were in a courtroom.
02:30   4         So, please slow down so that we can understand what
02:30   5    you are saying, and when the Court is still speaking do not
02:30   6    interrupt.
02:32   7         You may proceed.
03:21   8         MR. PASTOR: In any event, what the Department is doing
03:21   9    with the hand soap and access to all of the other things that
03:21  10    is supplied to the inmates...
03:21  11         THE COURT REPORTER:  Judge, I can barely understand
03:01  12    counsel.
03:01  13         THE COURT:  This is not going to work unless you slow
03:01  14    down, try to enunciate, and speak directly into the phone.
03:22  15         All right. If you would give me another example, and
03:22  16    then I will turn to plaintiffs.
03:22  17         MR. PASTOR: Yes, Your Honor.  Another example that is
03:22  18    not feasible is -- they are asking for every single inmate to
03:22  19    have a towel after every shower. It is my understanding they
03:22  20    are all assigned a towel for a week, and they get to use their
03:22  21    own personal one.
03:22  22         THE COURT:  All right. That is why I started off with
03:22  23    saying the parties should speak to each other.  Let's just take
03:22  24    the towel language as an example, that is something the parties
03:22  25    could probably come to some agreement on.
```

03:22  1            Where it could say; reasonable access to showers and
03:22  2   clean laundry.  That I think is appropriate. That should be
03:22  3   language the parties could agree to.
03:23  4            All right. Let me turn to plaintiffs.  Obviously I
03:12  5   have not been to Metro West, and so I have no idea what is
03:12  6   going on over there. You have obviously spoken with your
03:12  7   clients. Do you have any issues sitting down and speaking with
03:12  8   the defendants?
03:13  9            MR. HARVEY:  Your Honor, Thomas Harvey. We are willing
03:23 10   to have a conversation with defendants. We would like to have
03:23 11   an opportunity to discuss our recommendations and to see if
03:23 12   there are some they could agree to, or if there are some they
03:23 13   would not wish to agree to we could perhaps revisit those in a
03:14 14   hearing.
03:14 15            THE COURT:  All right.
03:24 16            MR. HARVEY:  But we would like to have a conversation
03:24 17   as Your Honor suggested, and then perhaps after speaking with
03:24 18   defense counsel we could enter into some sort of consent.
03:24 19            THE COURT:  Mr. Pastor.
03:24 20            MR. PASTOR: We think the Court's suggestion is a good
03:24 21   one. If we had the proposed order we could discuss it and go
03:24 22   through it line by line on some of the things that plaintiffs
03:24 23   are requesting.
03:24 24            THE COURT:  Would it assist the parties if you were to
03:25 25   say work off of a draft I have where I have edited out some of

```
03:25   1   the things I thought would not appropriately be a part of the
03:25   2   TRO, and we can reconvene tomorrow and see where we are in
03:25   3   agreement --
03:25   4           MR. HARVEY:  Your Honor, we are in agreement with
03:25   5   getting together with the opposing counsel to have those
03:31   6   discussions. However, we do believe that time is of the
03:31   7   essence.
03:31   8           So perhaps we could recess and have those discussions
03:31   9   -- I'm not sure if two hours would be enough time -- and then
03:31  10   come back on for a hearing today.
03:26  11           MR. GREENBERG: Your Honor, Ezra Greenberg, I believe
03:26  12   that Mr. Pastor was disconnected.
03:26  13           We were discussing how long we thought it would take
03:35  14   and we do not believe that two hours -- or even getting back on
03:35  15   the line at any point today -- is feasible.
03:27  16           We need time to go over whatever the proposal is with
03:27  17   the jail because of any concerns they might raise.
03:27  18           The other thing that I think needs to be mentioned at
03:27  19   some point -- I saw that a summons was issued today -- we need
03:27  20   to get service so we can be properly in front of Your Honor, so
03:27  21   the Court can actually have jurisdiction to enter this TRO.
03:27  22           This case was filed on Sunday, and we have agreed to
03:27  23   get back to Your Honor tomorrow. Based on what the Court is
03:27  24   saying, or what I think I understand you to say, you are not
03:28  25   making any finding as to liability or that there is deliberate
```

```
03:28   1   indifference, you are accepting the allegations as true for the
03:28   2   time being and trying to put something in place to give the
03:28   3   parties time to brief the preliminary injunction while having
03:28   4   this order in place.
03:28   5           THE COURT:  Yes. But as to service, what do you
03:28   6   suggest?  You have copies of the complaint and the notice, and
03:28   7   I would assume you do not want someone personally delivering
03:28   8   this anywhere -- that is not what you are saying?
03:28   9           MR. GREENBERG: Well, Your Honor, there is a provision
03:28  10   of the County code that prohibits our office from accepting
03:29  11   service, and we legally do not think we are able to waive
03:29  12   service.
03:29  13           Both the Director's office and the Mayor's office -- I
03:29  14   believe either one could be served. The Mayor's office, by the
03:29  15   way is a place for service.  The Director is really only a
03:37  16   superfluous party...
03:37  17           (INAUDIBLE COMMENTS)
03:29  18           The Mayor's Office is open, has been open, and they
03:29  19   will accept service of complaint.
03:29  20           THE COURT:  Do they want people to walk in to their
03:29  21   facility?  Wouldn't they prefer it be e-mailed to them so they
03:29  22   can avoid any issue --
03:29  23           MR. GREENBERG: My understanding is the process servers
03:42  24   have been showing up there and serving whatever complaint or
03:42  25   notices that they have.
```

```
03:42   1         And also, Your Honor, our understanding is that even
03:30   2    though the Courts have suspended some of the rules in terms of
03:46   3    discovery and so forth, that formal services of process has not
03:46   4    been waived, so that still needs to happen.
03:30   5         And the building where the Mayor's office is does have
03:30   6    screening procedures in place there, and so they are screening
03:31   7    people as they come in.
03:31   8         THE COURT:  Well, okay.
03:31   9         MR. HARVEY: Your Honor, this is Thomas Harvey. I have
03:31  10    a suggestion.
03:31  11         THE COURT:  All right.
03:31  12         MR. HARVEY: We have proposed to opposing counsel that
03:31  13    we spend time talking about who the medically vulnerable people
03:31  14    are, and for them to present comments and suggestions.
03:31  15         And if we are not able to get this done within at
03:31  16    least the two hours we would prefer Your Honor enter the TRO,
03:31  17    and the parties can confer about whether it should be modified
03:31  18    tomorrow.
03:32  19         MR. GREENBERG: Your Honor, we would ask that it be the
03:32  20    other way around. I think that two hours, given the amount of
03:32  21    information we are going to be discussing, is probably not a
03:32  22    sufficient amount of time.
03:32  23         We would like to have this evening to talk, and then
03:32  24    appear before Your Honor to see what, if anything, we have been
03:32  25    able to agree on -- as well as to get service effectuated and
```

```
03:32   1   take it from there.
03:32   2            MR. HARVEY: We would object to that. This is a very
03:50   3   serious issue, and so we do not want to waste any unnecessary
03:51   4   time -- again, we have every opportunity to modify it tomorrow.
03:33   5            MR. GREENBERG: As was just stated, Your Honor, we do
03:33   6   need to confer with the Department as to any concerns they may
03:53   7   have. This is a facility with prisoners, so obviously there
03:53   8   could be safety concerns.
03:34   9            MR. PASTOR: Your Honor, this is Bernie Pastor; I am
03:54  10   back on the line again.
03:34  11            THE COURT:  Welcome back.
03:34  12            MR. PASTOR: We do not think this is something that can
03:34  13   be rushed.  We would like to go line by line with opposing
03:34  14   counsel -- I mean, there are hundreds of pages of documents,
03:34  15   and we just received it yesterday.
03:34  16            THE COURT:  Mr. Pastor, here's the issue, I got it
03:34  17   yesterday too, and time is somewhat of an enemy here.
03:34  18            According to what I have read Corrections has known as
03:35  19   early as the 12th of March about the problems that they were
03:35  20   confronting, and so presumably has taken measures, so it should
03:35  21   not be something that you are now just starting to deal with
03:35  22   tonight --
03:35  23            (COUNSEL INTERRUPTS AND SPEAKS OVER THE COURT)
03:35  24            THE COURT:  Stop, Mr. Pastor. My question is very
03:35  25   simple, and that is do you wish to work off of plaintiffs'
```

```
03:35  1   proposed TRO, have discussions, and then we will reconvene
03:35  2   tomorrow at 11 o'clock, and you can tell me if you have had any
03:35  3   agreement?
03:36  4           I am prepared to enter a TRO either today or tomorrow,
03:36  5   but I would like the parties to be able to confer and eliminate
03:36  6   those things that need not be addressed or things that, as you
03:36  7   say, Mr. Pastor are inaccurate.
03:36  8           MR. PASTOR: I'm not sure if Your Honor has a draft
03:36  9   that is available or if the Court's intention was just to enter
03:36 10   the order as is --
03:36 11           THE COURT:  No -- I know I said at least once that I
03:37 12   was not prepared to enter the TRO as proposed, and that I had
03:37 13   already edited and made changes to it.
03:37 14           All right. I am going to recess this matter, and ask
03:37 15   that the parties confer with each other. We will reconvene at
03:37 16   11 o'clock tomorrow unless the parties tell me they would like
03:37 17   more time to continue their discussions.
04:02 18           And I would like for those discussions to include --
04:02 19   because part of my TRO was going to require this -- that Metro
03:38 20   West give up the list of those people who are particularly
03:38 21   vulnerable, according to the CDC, and what is being done to
03:39 22   protect them from Covid 19.
03:39 23           And of course the list would be produced under seal
03:39 24   because it would contain personal medical information.
03:39 25
```

```
04:06   1              All right. Is there anything else before I recess you
04:06   2      to begin your discussions?
04:06   3              MR. PASTOR: Just, Your Honor, if we could perhaps be
03:41   4      able to work off of your draft order so that we can see the
03:41   5      things the Court finds appropriate; and perhaps that would
03:41   6      expedite matters.
03:41   7              THE COURT:  I believe that is what plaintiffs' counsel
03:41   8      was asking as well.
03:41   9              MR. HARVEY: Yes, Your Honor; we would like a copy of
03:41  10      your draft order.
03:41  11              THE COURT:  All right. I will send to the parties then
03:41  12      the Court's edited order.
03:44  13              MR. HARVEY: If I could make one more request -- this
03:44  14      is with regard to the list of medically vulnerable people -- we
03:45  15      would like to have that by tonight so we can start reviewing
03:45  16      it.
03:45  17              That is what we had proposed in our original order,
03:45  18      that within six hours of entry of the TRO they would provide us
03:45  19      with a list so that we could make recommendations for release,
03:45  20      and they would have an opportunity to object, and then we would
03:45  21      set up a hearing shortly thereafter if there were people that
03:45  22      we could not agree on.
03:45  23              THE COURT:  Well, that is not a part of any draft that
03:45  24      I had. I did not anticipate a six hour turn around. That is
03:45  25      something you should discuss this evening in terms of those who
```

```
04:11   1   are Covid vulnerable, and what if any efforts have been made to
03:46   2   segregate the medical information as to these particular
03:46   3   individuals.
03:46   4           Then we can talk about the appropriateness of release
03:46   5   or some other avenue, but we are not there yet.
03:46   6           MR. PASTOR: Your Honor, the State Attorney's Office in
03:46   7   conjunction with the Public Defender's Office has a system
03:46   8   where they have identified those people that are at risk over a
03:46   9   certain age. The Department has submitted the list to them.
03:46  10           Obviously it is the State Criminal Court that would
03:46  11   enter the order that would allow inmates to be released, but
03:46  12   there is a system in place. We can discuss that with opposing
03:46  13   counsel as well.
03:46  14           THE COURT:  The parties have a lot to discuss this
04:14  15   evening, so I am going to adjourn this hearing, and we will
04:14  16   reconvene tomorrow at 11 o'clock.
04:14  17           And if there is agreement by the parties that a little
04:14  18   extra time is needed, if you would just let me my chambers know
04:14  19   and I will give you that time.
04:14  20           All right. I will speak with you all tomorrow at the
04:14  21   earliest at 11 o'clock.
       22                         HEARING CONCLUDED
       23
       24
       25
```

```
 1                           -  -  -

 2                       C E R T I F I C A T E

 3          I hereby certify that the foregoing is an accurate

 4   transcription of proceedings in the above-entitled matter.

 5

 6                                           /S/PATRICIA SANDERS

 7   _____                         _____

 8   DATE FILED                             PATRICIA SANDERS, RPR
```