UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-21457-KMW

ANTHONY SWAIN, *et al.*,

    Plaintiffs,

v.

DANIEL JUNIOR, *et al.*,

    Defendants.

_____/

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION[1]
TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, originally seven[2] inmates currently in the custody of Defendants, have brought suit challenging the conditions of their confinement. Accordingly, their claims are subject to the administrative exhaustion requirements of the Prison Litigation Reform Act ("PLRA"). Plaintiffs, by their own admission, have failed to exhaust their administrative remedies through the process provided for by the Miami-Dade Corrections and Rehabilitation Department ("MDCR").

Realizing this failure mandates dismissal of Count I of their Complaint, Plaintiffs make essentially two arguments in an effort to circumvent the PLRA's exhaustion requirement: First, Plaintiffs ask this Court to find that administrative remedies were "unavailable" to them because they allegedly asked for, but did not receive, grievance forms in the days before they filed a federal class action. Second, Plaintiffs ask this Court to find that administrative remedies were "unavailable" to them because of a claimed "imminent danger exception" that is not recognized in the law (essentially, that the grievance process would take too long). *See generally* Plaintiffs' Opposition to Defendants' Motion to Dismiss Count I of the Complaint ("Response") (DE 119).

---

[1] Plaintiffs filed a separate Response in Opposition to Defendants' Motion to Dismiss (DE 119), despite having already responded to Defendants' arguments regarding exhaustion in their Combined Reply (DE 85) at 27-32.

[2] Three of the seven named plaintiffs—Peter Bernal, Winfred Hill, and Bayardo Cruz—have since been released from MDCR custody. Accordingly, these Plaintiffs' injunctive claims are moot, and they should be dismissed as plaintiffs. *See Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) ("In view of Zatler's subsequent release, we find that his claims for declaratory and injunctive relief are now moot.").

Neither of these arguments is legally or factually sound. The inexorable result is this: Count I of the Complaint, for relief pursuant to 42 U.S.C. section 1983, must be dismissed for Plaintiffs' failure to exhaust available administrative remedies prior to filing suit as required by the PLRA.

## ARGUMENT

**I.     The Record Shows MDCR's Grievance Procedure Was Available as a Matter of Fact**

Plaintiffs' first argument, which claims the administrative grievance process was "unavailable" because they did not have access to grievance forms, is readily belied by the record. Plaintiffs' allegations regarding availability, which lack any real specificity, run afoul of caselaw from this District and elsewhere concluding that generalized allegations that attempts to file grievances have been thwarted by jail staff are not sufficient to override exhaustion in the absence of supporting proof. These allegations are also conclusively refuted by declarations from six MDCR employees, several of whom are staffed to the Plaintiffs' own housing units, which consistently reiterate that there has never been a shortage of grievance forms at Metro West such that inmates could not receive a grievance form upon request, as well as by MDCR administrative records which reflect that *other* inmates in the custody of MDCR filed grievances throughout this time—some inmates even filed more than one during this period—but not one of the seven Plaintiffs filed any grievance on any issue between January 1 and April 10, 2020.

Finally, even crediting Plaintiffs' paltry factual allegations, they essentially concede they had no intention of exhausting prior to filing suit, as their own declarations admit Plaintiffs *began to request* grievance forms on March 31, mere days prior to filing a federal class action lawsuit on April 5. This last point is dispositive. Even accepting Plaintiffs' allegations as true, they are tantamount to an admission that Plaintiffs never genuinely attempted to exhaust administrative remedies prior to suit, and their *post hoc* attempt to claim "unavailability" as a shield must be rejected.

**A.  Grievance Forms Have Always Been Available to All Inmates, Including Plaintiffs**

The evidence in the record shows that paper grievance forms have always been available at Metro West and, as a result, have always been available to the Plaintiffs. The declaration of correctional counselor supervisor Terrence Mathews establishes that fact on its own. *See* Mathews Decl. ¶ 3 (DE 66-5). Plaintiffs cannot rebut this testimony, so they resort to attorney argument—not evidence—which (1) assumes scores of inmates must have wanted to file grievances in the handful of days before they filed the complaint; (2) assumes there was such a run on grievances

that counselors were unable to keep blank forms in stock; (3) speculates Mathews is unaware of what is "actually" happening in the facility he supervises; and (4) obtusely misreads the phrase "running low" to mean "none." *See* Resp. at 14-15 (claiming, without more, that Mathrews's restocking of forms suggested supply had been "deplet[ed]"). Plaintiffs also offer no evidence to rebut Acting Commander Reynaldo Romero's declaration and its exhibit, which together demonstrate (1) that not a single Plaintiff here filed a grievance between January 1 and April 10, 2020; and (2) that twenty-two different Metro West inmates filed twenty-nine grievances in the fourteen days before the complaint was filed—with some inmates even filing more than one grievance during that period, despite the purported unavailability of forms. *See generally* Romero Decl. (DE 66-4).

In addition to the sworn testimony of two supervisors, additional evidence in the record belies Plaintiffs' general claims of unavailability. Specifically, four of the declarations provided with Defendants' response to the motion for a preliminary injunction contain sworn testimony from MDCR officers with knowledge of Plaintiffs' housing units. *See* Johnson Decl. (DE 65-5); Delancy Decl. (DE 65-6); Mayo Decl. (DE 65-7); Almonor Decl. (DE 65-9). These declarations speak with one voice in affirming the availability of paper grievance forms. Every single one of these declarations—submitted by Officer Beatrice Almonor, who is assigned to Anthony Swain's unit (1D2); Officer Patricia Delancy, who is assigned to Winfred Hill and Peter Bernal's unit (1D3); Officer Dasmine Mayo, who is assigned to Deondre Willis, Bayardo Cruz, Ronniel Flores, and Alen Blanco's unit (2C2); and Corporal Bridgett Johnson, who oversees 1 Delta Wing—expressly and unequivocally states, under oath, that there has been ***no shortage of paper grievance forms in any of these units at any point in 2020***. *See* Almonor Decl. ¶¶ 3, 12; Delancy Decl. ¶¶ 3, 6; Mayo Decl. ¶ 16; Johnson Decl. ¶ 19. Corporal Johnson further notes that any MDCR employee refusing to provide a grievance form to an inmate would be subject to discipline. *Id.*

Plaintiffs' vague allegations regarding unavailability simply do not suffice under well-established case law in this Circuit. Courts in this Circuit have repeatedly held that a plaintiff alleging prison officials prevented him from exhausting "must have some supporting proof of his assertions," as "bald assertions that attempts at exhaustion were thwarted by jail staff are insufficient." *Kingcade v. Parker*, 949 F. Supp. 2d 1232, 1239 (S.D. Fla. 2013); *see also Filmore v. Cooper*, No. 18-0955, 2020 WL 1275385, at *6 (M.D. Fla. Mar. 17, 2020); *Crutchley v. Chambers*, No. 19-0043, 2020 WL 1301633, at *4 (M.D. Ga. Feb. 6, 2020) ("While Plaintiff

claims 'several different officers' refused to provide him a grievance form, he does not give the officers' names, the dates these incidents allegedly occurred, or any other specific facts supporting his claims."), *report and recommendation adopted*, 2020 WL 1289171 (M.D. Ga. Mar. 18, 2020); *Teran v. Johns*, No. 17-0009, 2017 WL 4678220, at *4 (S.D. Ga. Oct. 17, 2017), *report and recommendation adopted*, 2017 WL 6028400 (S.D. Ga. Dec. 5, 2017); *Purvis v. Dukes*, No. 16-0015, 2017 WL 763931, at *3 (S.D. Ga. Jan. 19, 2017) ("Even if a hurdle to exhaustion existed as Purvis claimed in his Complaint, he has shown no evidence . . . that it rose to the height of unavailability that the Supreme Court contemplated in *Ross*."), *report and recommendation adopted*, 2017 WL 758294 (S.D. Ga. Feb. 27, 2017).

Nor can Plaintiffs claim ignorance or confusion; even a cursory review of the case law reveals the level of factual detail necessary for a plaintiff to demonstrate that administrative exhaustion was truly unavailable. *Compare Filmore*, 2020 WL 1275385, at *6 ("Plaintiff does not provide any factual detail explaining the steps he took to obtain formal grievance forms, such as who he asked, how many times he asked, or whether he took other measures to obtain the forms."), and *Teran*, 2017 WL 4678220, at *4 ("[H]e does not state when he requested grievance forms or identify the prison official who denied his request."), *with Minnis v. Jones*, No. 17-20575, 2017 WL 9605073, at *6 (S.D. Fla. Nov. 17, 2017) (finding that plaintiff had supported his claim of unavailability by providing detailed allegations like describing an interaction with a named warden who tore up a grievance form in front of him, told him it was not possible to grieve certain types of officers, and threatened him with transfer to another named facility if he didn't stop filing grievances), *report and recommendation adopted*, 2018 WL 3054803 (S.D. Fla. June 20, 2018).

And dismissals for failure to exhaust have been repeatedly affirmed by the Eleventh Circuit, even where the plaintiff alleged unavailability. *See, e.g., Williams v. Barrow*, 559 F. App'x 979, 987–88 (11th Cir. 2014) (affirming dismissal of complaint for failure to exhaust where allegation that plaintiff failed to exhaust because of "escalating retaliation" was not supported by evidence of actual threats of retaliation); *Kozuh v. Nichols*, 185 F. App'x 874, 878 (11th Cir. 2006) (affirming dismissal for failure to exhaust where plaintiff supplied no evidence to support allegations he was thwarted from bringing grievances or that grievance process was unavailable).

As in the plethora of cases cited above, Plaintiffs here adduce no evidence beyond their own claims to support vague, convenient, and self-serving allegations regarding unavailability, and their claims are simply incredible in light of record evidence regarding (1) the availability of

4

forms testified to by six different MDCR employees; (2) the very fact that other inmates were able to file grievances throughout this time, some more than once; and (3) the implications of refusing to provide an inmate with a grievance form—namely, that such an action would subject an MDCR to discipline for such conduct.

Given the above, the factual record does not support crediting Plaintiffs' factual allegations regarding the availability of paper forms in the days before they filed suit, and this Court should reject Plaintiffs' attempt to circumvent the PLRA's exhaustion requirement.

### B. Plaintiffs' Allegations Concede They Never Intended to Exhaust Pre-Suit

Plaintiffs' factual allegations regarding unavailability are sparse and vague, but they do identify, with some specificity, the dates on which they allegedly requested paper grievance forms. Plaintiffs' admission that they only began to attempt to grieve in the four days before filing this case on April 5—complete with a contemporaneously-filed motion for preliminary injunction and supplemented with a number of declarations from both inmates and physicians—on its face demonstrates that Plaintiffs never genuinely attempted to access the grievance process or attempt exhaustion. This point alone is sufficient to justify dismissal.

With their Response, Plaintiffs filed two declarations asserting various allegations in support of Plaintiffs' claims of unavailability. *See* Supp. Blanco Decl. (DE 119-1); Supp. Cruz Decl. (DE 119-2). The problems with these declarations are myriad, but at least three are as follows: First, Cruz no longer has standing to pursue Count 1 of this Complaint in light of his release from custody. Second, Blanco's vague allegations of unavailability fall far short of articulating the level of factual detail that would support crediting his claims of unavailability, not to mention that the few factual allegations in his declaration (such as naming officers from whom he purportedly requested grievance forms (*see* Supp. Blanco Decl. ¶ 6)) conflict with the testimony he gave during the Preliminary Injunction Hearing (*see* Transcript of Hearing Held 4-27-2020 (DE 134) at 28:1-5 ("PLAINTIFFS' COUNSEL: Do you recall the names of the officer you asked for the grievance? BLANCO: Officer Mayo, the 7 to 3 shift; Officer Joseph, 7 to 3 shift; Officer Jackson 11 to 3 shift; Officer Simente the 11 to 3 shift; and Officer Wilkins the 3 to 11 shift."). Third, and perhaps most saliently, the one factual allegation upon which Blanco has never wavered is that he did not request a grievance form for the first time until March 31. It also bears noting that the three other named Plaintiffs still in the custody of MDCR—Anthony Swain, Deondre

5

Willis, and Ronniel Martinez-Flores—did not submit any declarations with Plaintiffs' Response regarding exhaustion. Only Alen Blanco did. And his testimony does not help Plaintiffs.

The Governor of Florida declared a state of emergency on March 9. Gov'r of Fla., Exec. Order No. 20-52 (Mar. 9, 2020), available at https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-52.pdf. Days later, on March 12, MDCR took two major remedial steps: canceling all visitation and limiting inmate movement. Junior Decl. ¶¶ 44, 52 (DE 65-1). Over the next twenty-one days, despite being on notice regarding the existence and spread of COVID-19, Plaintiffs—seven different inmates, all familiar with the grievance process—failed to file a single grievance about what Plaintiffs have labeled an unprecedented global pandemic. They did have the time and foresight, however, to round up ten experts, complete seven lengthy declarations, and prepare a class action complaint and motion for preliminary injunction for filing in federal court. In other words, Plaintiffs accused Defendants of deliberate indifference on April 5 for an issue Plaintiffs themselves evidently discovered on March 31.

This revelation that Plaintiffs apparently planned to file grievances only days before they filed suit—by which time the forms were, according to Plaintiffs, suddenly unavailable throughout all of Metro West—betrays a critical truth: the Plaintiffs never intended to see the grievance process through to its conclusion. *See* Supp. Blanco Decl. ¶¶ 3, 6; *see also* Transcript of Hearing Held 4-27-2020 (DE 134) at 27:18-20 ("BLANCO: The first time I asked for a grievance was March 31st, which I believe was a Tuesday, around the beginning of the 3 o'clock shift.").

In sum, Plaintiffs have only proffered factual detail from one still-incarcerated Plaintiff, Blanco, and his admission—that he began attempting to exhaust ***for the first time on March 31***—reveals Plaintiffs had come to the foregone conclusion that the lawsuit would be filed regardless, in open defiance of the PLRA's policy goals of "eliminat[ing] unwarranted federal-court interference with the administration of prisons" and "'affor[ding] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "strict compliance with [statutory exhaustion requirements] takes on added—and critical importance" when prison officials, who have a "shared desire for a safe and healthy prison environment," engage in "extensive and professional efforts to curtail the virus's spread," as Defendants have

here). Plaintiffs cannot hide behind a claim of purported unavailability where their own testimony reveals they never intended to genuinely pursue exhaustion pre-suit.

## II. Plaintiffs' Legal Arguments Regarding Unavailability—Including Futility or an Imminent Danger Exception—Are Not Valid

Plaintiffs' alternative argument that "the typical grievance procedure would take too long to result in any changes to Plaintiffs' confinement that could protect them from imminent bodily injury and death," Compl. ¶ 105, raises, in all pertinent respects, the same dispute the Supreme Court long ago resolved in *Booth v. Churner*, 532 U.S. 731 (2001). In that case, the Court held that a prison administrative procedure is "available" under the PLRA as long as it has "authority to take some action in response to [an inmate's] complaint," even if it cannot provide "the remedial action an inmate demands." *Id.* at 736 (emphasis added). The Court reaffirmed *Booth*'s holding in *Woodford*: "a prisoner must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." 548 U.S. at 85. And most recently, in *Ross v. Blake*, the Court explained that a grievance procedure is unavailable under a "dead-end exception" only if "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. 1850, 1859 (2016) (emphasis added). In *Booth*, the relief that could not be granted by the process was money, but the plaintiff was required to exhaust anyway. 532 U.S. at 740–41.

*Booth* and its progeny—both in the Supreme Court and in the Eleventh Circuit, *see Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)—foreclose any effort by Plaintiffs to override exhaustion here. They do not argue (or, in light of the evidence of MDCR's remedial efforts, cannot *genuinely* argue) that MDCR could not provide them any of the relief they sought in their complaint, such as being given liquid hand soap, paper towels, wipes, or disinfecting supplies, through the administrative process.[3] *See* Compl. 43-45. The facts on the ground defeat this argument, as MDCR began giving (or giving access to) nearly all of these same items to inmates long before the start of this lawsuit. *See, e.g.*, Junior Decl. ¶¶ 29, 32; Johnson Decl. ¶¶ 11–12; Almonor Decl. ¶¶ 9, 13; Mayo Decl. ¶ 11; Delancy Decl. ¶¶ 4, 9, 11. Plaintiffs have to admit, then,

---

[3] The ONE grievance Plaintiffs do provide, a form filled out by non-party Kellen Stuhlmiller (DE 119-3), on April 3, 2020 no less, when paper forms were allegedly rare and precious, requests the following:
> "I hereby formally request my release from incarceration due to the lack of safety and precautions to prevent COVID19 from infecting me and other inmates."

It seems incredible, but apparently Defendants have to write it out once again: MDCR does not make release decisions. Stuhlmiller's "grievance" to MDCR requesting release is not a meritorious request for relief.

that MDCR's procedure would, as a matter of law, afford "the possibility of some relief." *Booth*, 532 U.S. at 738.

That's all the PLRA asks of an "available" administrative remedy, so Plaintiffs' decision not to engage that remedy must lead to a finding that their failure to exhaust is not excused. *See Nellson v. Barnhart*, No. 20-0756, 2020 WL 1890670, at *4 (D. Colo. Apr. 16, 2020) (denying temporary restraining order to plaintiff who failed to exhaust administrative remedies but claimed concerns about COVID-19 excused that failure: "Plaintiff does not argue that he would be able to receive no relief whatsoever through the administrative grievance process but, rather, that the process would not be able to institute all the relief he requests immediately. But total and immediate relief is not the standard for exhaustion, 'the possibility of some relief' is." (emphasis added) (quoting *Ross*, 136 S. Ct. at 1859)). The Supreme Court has "stress[ed]" that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth*, 532 U.S. at 741 n.6. Congress has provided no such exception in the PLRA's "uncompromising statutory text." *Ross*, 136 S. Ct. at 1857. Futility is not a viable reason to bypass exhaustion, and Plaintiffs' insistence otherwise does not alter that reality.

At bottom, the claim that an inmate need not exhaust his administrative remedies because the process would take too long to provide all the relief the inmate wants is a claim for a judicially created futility exception that is unrecognized by the Supreme Court and expressly prohibited by binding Eleventh Circuit law. It is not a tool in Plaintiffs' arsenal.

Finally, Plaintiffs cannot genuinely distinguish the painfully applicable Fifth Circuit decision in *Valentine v. Collier*, — F.3d —, 2020 WL 1934431 (5th Cir. Apr. 22, 2020), which soundly rejected nearly identical arguments regarding exhaustion and unavailability. In *Valentine*, two days after the district court granted the plaintiffs' (inmates in a Texas jail) motion for preliminary injunction against the Texas Department of Criminal Justice (TDCJ) and two of its officials, finding it likely that the plaintiffs could prove an Eighth Amendment violation, the Fifth Circuit stayed the injunction pending appeal, concluding, *inter alia*, that the defendants were likely to show on appeal that the plaintiffs—who had not submitted any grievances prior to filing suit— failed to exhaust under the PLRA. *Id.* at *5–7. *Valentine* provides this Court with an uncomplicated roadmap to dismissal that dismantles Plaintiffs' arguments here along the way.

The Fifth Circuit rejected the argument that a grievance process that would take too long to provide relief to the plaintiffs given the circumstances posed by COVID-19 is "unavailable." It

8

explained that "reading a 'special circumstances' exception in the PLRA" because of concerns about the spread of COVID-19 "would undo the PLRA and 'resurrect' its predecessor.'" *Id.* at *6 (quoting *Ross*, 136 S. Ct. at 1858); *see also Nellson*, 2020 WL 1890670, at *5 ("[T]he Court does not overlook the risks of COVID-19 at [the facility] or in the prison system generally. But the Court may not alter the mandatory requirements of the PLRA for COVID-19 or any other special circumstance."). Make no mistake: Plaintiffs here are making the same argument. *See* Resp. at 6 ("Defendants' primary argument (that the length of time required to access relief is irrelevant when determining the remedy's availability) is both callous and nonsensical."). As in *Valentine*, this Court should likewise reject Plaintiffs' argument.

*Valentine* also soundly rejected the argument that there is some sort of "imminent danger" exception to exhaustion. The Fifth Circuit neutralized Plaintiffs' star case on this point, *Fletcher v. Menard Correctional Center*, 623 F.3d 1171 (7th Cir. 2010), a case that, since *Ross*, has never been cited outside the Seventh Circuit for the imminent-danger exception it created—that is, except in the district court order stayed by the Fifth Circuit in *Valentine*. The Fifth Circuit wisely declined to engage with *Fletcher*'s catastrophic hypothetical about an inmate who was going to die the next day and a procedure that *prohibited* responding to a grievance until two weeks after it was filed. *Valentine*, 2020 WL 1934431, at *7. The hypothetical was irrelevant—as it is irrelevant here—because TDCJ, like MDCR, "faces no legal bar to offering timely relief" and "is empowered to act on a grievance any time up to—not *after*, as in *Fletcher*—the statutory limit." *Id.*[4]

At least one Eleventh Circuit panel has expressly held that there is no imminent-danger exception to exhaustion. Plaintiffs disregard *Bracero v. Secretary, Florida Department of Corrections*, 748 F. App'x 200 (11th Cir. 2018), *cert. denied sub nom. Bracero v. Inch*, 139 S. Ct. 1631 (2019), as a "single, unpublished decision that fails to support [Defendants'] position." Resp. at 7. But this is an anemic effort to distract from *Bracero*'s flat rejection of the same imminent-danger exception Plaintiffs want the Court to create here. The plaintiff in *Bracero* did not comply with the offered administrative grievance procedure. From that point, the plaintiff advanced the exact argument offered here—that his failure to exhaust should be excused because his life and

---

[4] Plaintiffs' speculation that MDCR would take the entire permissible time to address a grievance and, if necessary, a grievance appeal, is just that: speculation. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980). However, even if this were the case, there is no imminent danger exception recognized in the law, and Plaintiffs' invitation to this Court to create one is a call to error and should be rejected.

9

safety were in danger. In particular, he claimed that the decision below was "not legally reasonable regarding the issue of exhaustion of remedies" for several reasons, including "lack of remedy or relief in the face of the danger appellant still face[s]." Br. of Appellant 16, *Bracero v. Sec'y, Fla. Dep't of Corr.*, No. 17-14278 (11th Cir. Mar. 12, 2018); *see also id.* at 1, 5 ("Complaint should not be dismissed when inmate allege danger." (*sic.*)).

The Eleventh Circuit acknowledged that the argument was made and rejected it:

> Bracero's other efforts to overcome the exhaustion requirement are unavailing. He asserts that his complaint should not have been dismissed before granting injunctive relief because he alleged imminent danger, but exhaustion is a prerequisite for any prisoner suit.

*Bracero*, 748 F. App'x at 203. Put simply, the court concluded that the plaintiff's allegation that he faced imminent danger was an unavailing effort to overcome the exhaustion requirement.

Here, Plaintiffs offer no principled reason to conclude differently. *Bracero*—a 2018 unanimous opinion by three Eleventh Circuit Judges (W. Pryor, Rosenbaum, Anderson)—is a far more suitable vehicle than *Fletcher* for indicating how the Eleventh Circuit might treat the question of an imminent-danger exception in a future precedential decision. So too is *Pearson v. Taylor*, 665 F. App'x 858 (11th Cir. 2016), where another panel of three Eleventh Circuit Judges (Jordan, Rosenbaum, J. Pryor) unanimously concluded that the plaintiff's unavailability arguments "do not appear to fall within any of [*Ross*'s] three 'exceptions' exhaustion." *Id.* at 868. *Pearson*, like *Bracero*, signals the view that the three exceptions in *Ross* are an exhaustive list. That spells doom for Plaintiffs, of course, because "imminent danger" is not on *Ross*'s list.

## **CONCLUSION**

Under the PLRA, exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the procedure. *Booth*, 532 U.S. at 736; *Johnson*, 418 F.3d at 1156. The remedies a plaintiff must exhaust before filing suit in federal court need not be "speedy," or "effective"—they must only be available. *Nussle*, 534 U.S. at 524.

Plaintiffs here have failed to establish either a factual basis or a legal basis for finding that the administrative process was not available to them prior to filing this action. Their admitted failure to exhaust prior to suit is fatal to Count I. Accordingly, Count I of the Complaint must be dismissed.

Dated: May 22, 2020

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida  33128

By: *s/ Anita Viciana*
Anita Viciana
(Fla. Bar No. 115838)
anita@miamidade.gov
Zach Vosseler
(Fla. Bar No. 1008856)
zach@miamidade.gov
Bernard Pastor
(Fla. Bar No 0046582)
pastor@miamidade.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via electronic mail, to the email addresses indicated on CM/ECF.

*s/ Anita Viciana*
Assistant County Attorney